# LAW OFFICE OF JAMES R. LISA, ESQ.

*Attorney At Law*

921 Bergen Avenue, Suite 1001B
Jersey City, New Jersey 07306
Phone: (201) 653-2888
Fax: (201) 653-4888
Email: info@jamesrlisaesq.com

*Original → clerk for scanning + filing*

James R. Lisa, Esq.
Theodore A. Grezlak, III, Esq.
B. Dakota Kuykendall, Esq.

Maximillian A. Novel, Esq.
Kristofher Beralo, Esq.

**RECEIVED**

**DEC 0 5 2017**

AT 8:30 _____ M
WILLIAM T. WALSH CLERK

Magistrate Lois H. Goodman
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 2020
Trenton, New Jersey 08608
Telephone: 609-989-2114

December 4, 2017

**RE: FRIEND OF THE COURT LETTER**, in connection with USA v. RADIN, docket numbers: 17-mj-4519 and 17-cr-494. *Ex turpi causa non oritur actio*, Latin "from a dishonorable cause an action does not arise", is a legal doctrine which states that a plaintiff will be unable to pursue legal remedy if it arises in connection with his own illegal acts. There are no sworn allegations, no credible officers, no probable cause based on sworn allegations, no summons or warrant based on sworn allegations, and these defects cannot be cured in this illegal action against Radin.

Dear Magistrate Goodman:

I write to you today as a Friend of the Court.

I understand that Ms. Radin is being threatened with a bench warrant and to be tried in absentia on December 7, 2017 on a Central Violations ticket.

With respect, these threatened actions against Ms. Radin are without merit.

The facts are as follows.

On August 10, 2017, Ms. Radin was invited to a meeting to take place in the first-floor coffee shop in the Trenton federal district courthouse with Jayson Burg and his criminal defense team.

Ms. Radin was bringing with her irrefutable documentary evidence released by the Department of Justice to show that the federal prosecutors failed to charge my client, Jayson Burg, with a crime and to show that the members of the Court Security Committee were aware of this fact. Those members are: the U.S. Attorney ( Paul Fishman, Acting U.S. Attorney William E. Fitzpatrick ) , the Clerk of Court ( William T. Walsh ), the U.S. Marshal ( Juan Mattos, Jr. ) , and the Chief U.S. District Court Judge ( Jerome B. Simandle, and Jose L. Linares ).

Ms. Radin was prevented from attending this meeting because she was arrested without a warrant, and, not brought without unnecessary delay to a judge in violation of the Federal Rules of Criminal Procedure, Rule 5 (a)(1)(A), Initial Appearance, Appearance Upon an Arrest, and in violation of Ms. Radin's constitutionally-protected and guaranteed rights under the 4th amendment [ protection against unreasonable seizures ], under the 5th amendment [ due process ] and under the 14th amendment [ equal protection ] of the federal constitution.

Rule 5 (a)(1)(A) Initial Appearance, Appearance Upon Arrest, states, in pertinent part:

> " *A person making an arrest within the United States must take the defendant without unnecessary delay before a magistrate judge…*".

The fact that Ms. Radin was arrested without a warrant on August 10, 2017, was corroborated by AUSA R. Joseph Gribko in his November 1, 2017, letter to you, and by Deputy U.S. Marshal Jerry Sanseverino in Newark, New Jersey. The fact that Ms. Radin was not taken without unnecessary delay to a judge for an arrest without a warrant on August 10, 2017, was corroborated by the Supervisor of the Courtroom Deputies, Dan Murphy.

Rule 5(b) states, in pertinent part:

> "*ARREST WITHOUT A WARRANT. If a defendant is arrested without a warrant, a complaint meeting Rule 4(a)'s requirement of probable cause must be promptly filed in the district where the offense was allegedly committed.*"

The U.S. Supreme Court defined "promptly" as to mean within two days.

A Complaint was not filed **"promptly"** , within two days, as corroborated by the Supervisor of the Courtroom Deputies, Dan Murphy.

A summons or a warrant for a criminal defendant to appear in a federal district court must be supported by allegations sworn under oath, see Federal Rules of Criminal Procedure, Rules 3, 4(a), and 58; see also **U.S. v. Herndon, 546 F. Supp 2d 854 ( E.D. Cal 2008 )**.  Ms. Radin provided this case, on point, to you, in a Friend of the Court email to your Courtroom Deputy Ivannya Fitzgerald, explaining that your October 25, 2017 Order threatening Ms. Radin with a bench warrant if she did not appear on November 16, 2017 was unlawful as that Order is not based on sworn allegations in the Violation ticket/statement, the pleading in this case, see docket item #1, in 17-mj-4519, USA v. RADIN.  All your orders are not based on sworn allegations, and lack the jurisdiction of the federal district court: there is no Complaint based on sworn allegations, no probable cause based on sworn allegations, no summons or warrant based on sworn allegations.

The *4th amendment requires that arrest warrants be based  "**upon probable cause, supported by oath or affirmation** ",  not by the mere filing of criminal charges in an unsworn information signed by a prosecutor,* **Gerstein v. Pugh 420 U.S. 103, 117 (1975 )**; ***Kalina v. Fletcher 522 U.S. 118 ( 1997 )***.

See also, **Albrecht v. U.S. 273 U.S. 1 (1927 )**, *this  Court did not  acquire personal jurisdiction over Ms. Radin as she did not appear, and there is no summons to Ms. Radin from the federal district court compelling her appearance.*

The fact that there is no summons from the district court to Ms. Radin was corroborated by the Deputy Clerk of Court.

Accosting Ms. Radin in the first-floor coffee shop on August 10, 2017, "Keith Holland" was in plain clothes, somewhat disheveled looking, did not tell Ms. Radin his name, did not state his business to Ms. Radin when asked, did not produce identification when asked, claimed to be a "Deputy U.S. Marshal" but did not provide his badge number when asked, and did not provide the name and contact information for his supervisor when asked.  The silent presumption that "Holland" is a legitimate Deputy U.S. Marshal is rebutted by "Holland's " failure and refusal to provide a badge number, identification, and contact information for his supervisor when asked.

In the Violation ticket/statement filed in this Court, the pleading, see docket item #1, in 17-mj-4519, the man who arrested Ms. Radin without a warrant, purportedly "Keith Holland"  made no sworn allegations.

"Holland" only made hearsay statements to Colin L. Mitchell, Immigration Federal Protective Service Inspector, (IFPS) badge # 334.   Mitchell was not present during the incident that "Holland" provoked in the first-floor coffee shop, and was not present during the time that "Holland" arrested Ms. Radin without a warrant.  Mitchell encountered Ms. Radin after Ms. Radin was imprisoned behind bars in a jail cell in the basement of the federal courthouse.  Mitchell is an incompetent witness, has no first-hand, personal knowledge of events leading up to "Holland" arresting Ms. Radin without a warrant.  Also, Mitchell made no sworn statements, and even stated that he did not do an investigation, see docket item # 1, in 17-mj-4519.

"Holland's " hearsay statements to Mitchell may be acceptable for a determination of probable cause under an exception provided to police officers, as one officer ( purportedly "Holland" ) telling another officer ( Mitchell ) except for the fact that "Holland" and Mitchell broke the law in not bringing Ms. Radin without unnecessary delay to a judge after "Holland" arrested Ms. Radin without warrant, as they were required to do, on August 10, 2017.  Because "Holland" and Mitchell broke the law on August 10, 2017, they have no credibility on which to base a finding of probable cause, a summons, or an arrest warrant for the August 10, 2017  Central Violations ticket, see **"Hearsay Evidence as a Basis for Prosecution, Arrest, and Search, Indiana Law Journal: Vol 32: Iss. 3, Article 2.**

The Court Security guards, private-contract employees likewise have no credibility.

Lourdes Timberman, purportedly a Deputy U.S. Marshal, badge # 1258, did not identify herself to Ms. Radin on August 10,2017, broke the law in not bringing Ms. Radin without unnecessary delay to a judge as Timberman was required to do on August 10, 2017, after "Holland" arrested Ms. Radin without a warrant. Timberman has no credibility.

" Holland", Mitchell, and Timberman cannot cure the this fatally flawed prosecution against Ms. Radin by making sworn allegations, now, because they cannot go back in time to August 10, 2017 to undo the fact that they broke the law on August 10, 2017, by not bringing Ms. Radin to a judge without unnecessary delay after "Holland" arrested Ms. Radin without a warrant as "Holland", Mitchell, and Timberman were required to do, and by breaking the law "Holland", Mitchell, and Timberman demonstrated irrefutably that they have no credibility.

My client, Jayson Burg, and Ms. Radin were prejudiced ( harmed ), because had "Holland" , Mitchell, or Timberman brought Ms. Radin to judge without unnecessary delay on August 10, 2017, as they were required to do, the case against Burg would have

been terminated in his favor with prejudice on August 10, 2017, based on the irrefutable evidence released by the DOJ that Ms. Radin brought with her, showing that the federal prosecutors failed to charge Burg with a crime, and there would be no case against Ms. Radin.

The federal prosecutors broke the law, too, in not filing a Complaint based on sworn allegations for an arrest without a warrant in the federal district court "promptly", within two days of August 10, 2017, as required by law. Because the federal prosecutors broke the law, they have no credibility, are in criminal contempt of U.S. Supreme Court rulings, notably United States v. Lee, 106 U.S. 196 ( 1882 ). The federal prosecutors are creatures of the law, they are bound by the law, and when they break the law, they engage in felony sedition, 18 USC section 2384, to destroy our government of laws, an irreparable harm. They are the domestic enemy. The enemy within.

**In sum, there are no sworn allegations, no credible officers, no probable cause based on sworn allegations, no summons or warrant based on sworn allegations, and these defects cannot be cured.**

This scheme of breaking the law, and burying the use of unlawful force in a Central Violations ticket scam is seen in Ms. Radin's case, in my client, Jayson Burg's case, in the case of **Criminal defense attorney Marcus Mumford** in Oregon, and in another case that Ms. Radin has identified. Ms. Radin and members of her Independent media producers' union are part of the "Save Marcus Mumford" movement.

By design, this scheme will repeat generating more victims, because of the system that is set up by the Judicial Conference, as was admitted and confessed by AUSA R. Joseph Gribko in his November 1, 2017 letter to you, buried in footnote three on page two. The arrest without a warrant is covered-up by generating a Central Violations ticket on the targeted man or woman. The Central Violations ticket is mailed to Texas. The Central Violations Bureau in Texas is not an Article III court; it is a non-constitutional, non-Article III agency. The ticket is mailed to a U.S. Attorney's office. The U.S. Attorney's Office maintains a secret data-base that those accused, like Ms. Radin, are not permitted to see. The Federal Defenders in New Jersey admitted and confessed that they are not permitted to see this secret data-base. A federal prosecutor, here AUSA Gribko, outside of the Clerk of Court's office, without authority, without jurisdiction, contacts a courtroom deputy, here Magistrate Goodman's Courtroom Deputy, Ivannya Fitzgerald. AUSA Gribko directed Fitzgerald to open a case against Ms. Radin without obtaining a summons from the federal district court, without obtaining jurisdiction, used the federal district courthouse itself, the brick and mortar building itself as a front, as window

dressing, to give the appearance of legitimacy.  Notice to Appear  letters from the Central Violations Bureau ( these are not summons as Notice to Appear letters are not based on a determination of probable cause, and can be ignored as per Moore's Federal Practice ), a phone call from AUSA  Gribko's office by a man who refused to identify himself to Ms. Radin, and an email from AUSA Gribko to Ms. Radin were used in attempts to deceive Ms. Radin into coming to the federal district court, to obtain personal jurisdiction over Mr. Radin in Honest Services fraud as a case was not even opened from August 10, 2017 to October 20, 2017.

The case that was opened, ultimately, 17-mj-4519, as stated in previous paragraphs, is unlawful, lacks the jurisdiction of the Court, lacks credible officers, lacks personal jurisdiction over Ms. Radin as she was not deceived into appearing by dishonest federal prosecutors, is fatally flawed, and cannot be cured.

Again, with respect, should you issue an unlawful bench warrant against Ms. Radin, who is acting within her rights, that bench warrant will be entered into a national FBI data base, as well as other national data bases.  The information in these data bases is required to be up-to-date, true, complete, and accurate.  You will be contaminating a nation-wide FBI data base with false, inaccurate, and misleading information, in effect, turning the FBI into liars, nation-wide.  The FBI cannot lie.

To protect herself, you will compel Ms. Radin to make sworn criminal complaints against you and AUSA Gribko to all law enforcement agencies, police departments, and the Mayors' offices in every city that Ms. Radin visits, travels through, or has business in. Because the doctrine of collective knowledge requires that every law enforcement official that Ms. Radin will be compelled to contact must share knowledge with other law enforcement officials, the unlawful bench warrant against Ms. Radin will be rendered unenforceable, as it should be.  The net effect will be to inflict the crime of barratry on Ms. Radin, to expunge false, misleading, inaccurate information, and to discredit the FBI.

Should you try Ms. Radin in absentia, that conviction will be reversed for want of jurisdiction.   Again, the net effect will be to inflict the crime of barratry on Ms. Radin and to defraud the United States, a crime.

### Rejecting for cause, the Third Circuit's ruling

Please take judicial cognizance and judicial notice that Ms. Radin rejects the ruling of the Third Circuit for cause because Ms. Radin's Supplemental papers were not seen by the three-judge panel, as per Attorney Bob at the Third Circuit and Chief Deputy Clerk

Patricia Dodszuweit.  Ms. Radin's  Supplemental papers were diverted to a Pro Se Staff attorney who held them back, notwithstanding Ms. Radin's rejection of a Pro Se staff attorney who is unidentified, by design, to escape accountability, and who engaged in the unauthorized practice of law by purporting to  "present"  Ms. Radin's case for her.  Pro Se Staff attorneys are assigned to prisoner civil rights cases, 42 USC section 1983, and Habeas Corpus cases.  Ms. Radin's Petition for a Writ of Prohibition for lack of jurisdiction at the Third Circuit falls into neither category.   As the ruling was coming down, Ms. Radin's Supplemental papers were going up, and crossed each other, purportedly.

In addition, Judge Greenaway has a conflict of interest with Ms. Radin which disqualifies Judge Greenaway, 28 USC sections 455 and 144.  Judge Greenaway is a professor at Yeshiva University's law school.  Ms. Radin is suing Yeshiva University and its medical school for federal student loan fraud.  Yeshiva University and its medical school already stipulated to hate crimes, discrimination, and federal student loan fraud against Ms. Radin.  Further, Yeshiva University was found to discriminate against those who are not Orthodox-Jews in the Diane Persky case.  As per the American B.A.R. association, Judge Greenaway cannot sit on the federal bench while, at the same time, working for an organization that discriminates.  As per the American B.A.R. association, Judge Greenaway can resign from Yeshiva University's law school or from the federal bench. The same is true for Magistrate Andrew J.  Peck in the Southern district of New York.

Moreover, the Third Circuit's rational that Ms. Radin should be subjected to further unlawful proceedings, and then, be compelled to un-do those unlawful proceedings by appeal is a restatement of the crime of barratry, and defies reason.  Because the lower district court did not acquire jurisdiction, it cannot transfer jurisdiction to a higher court for an appeal.  Ms. Radin's remedy is through a Petition for a Writ of Prohibition which the Third Circuit must grant her for constitutional violations.  A former federal judge in the Southern district of New York with whom Ms. Radin consulted agreed.

### Rejecting  as void, Chief  U.S. District Court Judge Linares's November 20, 2017 ruling, for fraud upon the Court by a Court officer

Please take judicial cognizance and judicial notice that Ms. Radin rejects for cause federal district Judge Linares's  November 15, 2017 order for fraud upon the Court by a court officer.  Ms. Radin did not make  a  **"motion for a writ of prohibition"**, see ¶ 6.   This statement is misleading.  Ms. Radin made a Petition for a Writ of Prohibition wherein the burden of proof is on the Respondents, notably, you and AUSA  Gribko.   In a Motion the burden of proof is on the moving party, here Ms. Radin. The language used is

deceptive and used to change the burden of proof from the Respondents to Ms. Radin, unlawfully.

In addition to other straw man arguments, Ms. Radin did not ask Judge Linares to start a criminal investigation.  Ms. Radin petitioned the Supervising judge, Linares, such that Ms. Radin could present the facts of criminal wrongdoing to a federal Grand Jury, as in Judge Broderick's 1985 ruling in **In the Matter of  In re Grand Jury Application, 617 F. Supp. 199 ( 1985 ), provided here, for ease of reference.**  In that case a group of crime victims wanted the facts of the crimes against them presented to a federal Grand Jury. They hired a private attorney who made a  "Motion for a Writ of Mandamus" to a Supervising judge.   Again, one does not make a Motion for a Writ; one makes a Petition for a Writ of Mandamus.  The language that was used to characterize Ms. Radin's Petition for a Writ of Prohibition as a  "motion for a writ of prohibition"  tracks the mistake made by this private attorney.   Nevertheless, even with this mistake and even though the statute that this case cited was repealed subsequently, the underlying law, constitutional law, still holds for Ms. Radin.  As per Judge Broderwick, admonishing the U.S. Attorney and granting the Writ:  the U.S. Attorney must prosecute the wrongdoers for constitutional violations and racketeering, as seen in Ms. Radin's case, because we don't sometimes obey our constitution, and sometimes we don't.

Further, Ms. Radin can report crimes and the cover-up of crimes, 18 USC section 4, to any judge or military officer with the expectation that immediate corrective action will be taken.  Chief Judge Linares did not fulfill his obligations and duty by oath to protect Ms. Radin's constitutionally-guaranteed rights of Equal Protection ( 14th amendment ), Due Process ( 5th amendment ), and to be protected from unreasonable seizures and from warrants that are not based on sworn oath or affirmation ( 4th amendment ) and allowed the prosecutors to defraud the United States, a crime.

<u>Note:</u>  Judge Greenaway was Judge Broderwick's law clerk in the Southern district of New York.

### Rejecting  for cause, Judge Thompson's November 15, 2017 order
Please take judicial cognizance and judicial notice that Ms. Radin rejects for cause federal district Judge Thompson's November 15, 2017 order, because it is so vague that it cannot be appealed.  It is not based on Findings of Fact and Conclusions of Law.

Consequently,  Ms. Radin  filed a Notice of Appeal under  the  Collateral Order

doctrine to be made with a Petition for a Writ of Mandamus to compel Judge Thompson to accept and sign Ms. Radin's proposed Findings of Fact and Conclusions of Law.  Further, Judge Thompson did not fulfill her obligation and duty by oath to protect Ms. Radin's constitutionally-guaranteed rights of Equal Protection ( 14th amendment ), Due Process ( 5th amendment ), and to be protected from unreasonable seizures and from warrants that are not based on sworn oath or affirmation   ( 4th amendment ), and allowed the prosecutors to defraud the United States, a crime.

### Rejecting for cause, all your orders, for lack of jurisdiction

Please take judicial cognizance and judicial notice that Ms. Radin rejects for cause all your orders for lack of jurisdiction: **there are no sworn allegations, no credible officers, no probable cause based on sworn allegations, no summons or warrant based on sworn allegations, and these defects cannot be cured.  The jurisdiction of the Court was  not obtained, and personal jurisdiction over Ms. Radin through deception was not obtained, notwithstanding the fact that prosecutors cannot obtain jurisdiction through trickery and Honest services fraud, and the failure and refusal of federal judges up to and including the Third Circuit to protect Ms. Radin's constitutionally-guaranteed rights and the rule of law.**

With righteous indignation,

James Lisa, Esq.

Declaration / Affidavit

in

Support of James R. Lisa, Esq.

Friend of the Court letter

to

Magistrate Goodman

by

Lidya Maria Radin

**DECLARATION/AFFIDAVIT IN SUPPORT OF JAMES R. LISA, ESQ., FRIEND OF THE COURT LETTER TO MAGISTRATE GOODMAN IN CONNECTION WITH SECOND THREAT OF UNLAWFUL ARREST AGAINST LIDYA MARIA RADIN.**

*I, Lidya Maria Radin, a living woman, one of the Posterity of the People, am of full age, am competent and willing to testify, and having personal, first-hand knowledge of the facts stated herein, declare under penalty of perjury that the following is true and correct:*

1. The purpose of this affidavit is to give Magistrate Goodman a **Second Notice of Liability** in connection with her criminal conduct against Me in USA v. RADIN, 17-mj-4519 and 17-cr-494, and in support of a **Criminal Complaint** against **AUSA R. Joseph Gribko** and **Magistrate Goodman.**

2. **<u>Accordingly, I demand federal witness protection.</u>**

3. My **First Notice of Liability** to Magistrate Goodman was provided to her via a Friend of the Court email sent to her Courtroom Deputy Ivannya Fitzgerald on October 25, 2017, provided here for ease of reference.

4. Magistrate Goodman cannot obtain a lawful warrant compelling Me to appear in Trenton federal district court on December 7, 2017, because ( a ) there are <u>no</u> allegations sworn to under penalty of perjury by the so-called arresting officer, "Keith Holland" in a August 10, 2017 federal ticket, and because ( b ) IFPS Inspector Colin L. Mitchell [ badge # 334 ] is an incompetent witness as he was not present during the events leading up to the false arrest and the false imprisonment inflicted on Me by "Keith Holland" on August 10, 2017, and because ( c ) "Keith Holland" , IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards broke the law on August 10, 2017 in not taking Me without unnecessary delay to a judge after "Keith Holland" arrested Me without a warrant on August 10, 2017.

5. Not taking Me without unnecessary delay to a judge after arresting Me without a warrant on August 10, 2017 was in violation of the Federal Rules of Criminal Procedure [ F.R.Crim.P., Rule 5 (a)(1), Initial Appearance, Appearance Upon an Arrest ], acts of Congress, and in violation of my constitutionally-protected and guaranteed rights under the 4th amendment [ protection against unreasonable seizures ] and under the 5th amendment [ due process ] and under the 14th amendment [ equal protection ] of the federal constitution.

6. Because "Keith Holland", IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards broke the law

on August 10, 2017, they have no credibility on which to base a finding of probable cause, a summons, or an arrest warrant for a August 10, 2017  federal ticket.

7.  In breaking the law on August 10, 2017,  "Keith Holland", IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards demonstrated that they have no credibility to support a finding of probable cause for a August 10, 2017 federal ticket.

8.  In breaking the law on August 10, 2017, "Keith Holland", IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards demonstrated that they have no credibility to support a summons to compel my appearance for a August 10, 2017  federal ticket.

9.  In breaking the law on August 10, 2017, "Keith Holland", IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards demonstrated that they have no credibility to support a warrant to compel my appearance for a August 10, 2017  federal ticket.

10. All in all, Assistant United States Attorney  (AUSA) R. Joseph Gribko did not obtain the jurisdiction of the federal district court to prosecute Me.

11. Overall, Magistrate Goodman did not obtain the jurisdiction of the federal district court to issue orders.

12. Magistrate Goodman's orders are void.

13. The fact that I was arrested without a warrant on August 10, 2017, was corroborated by Deputy U.S. Marshal Jerry Sanseverino in Newark, New Jersey.

14. The fact that I was arrested on August 10, 2017, was corroborated by AUSA  R. Joseph Gribko in his November 1, 2017, letter to Magistrate Goodman.

15. The fact that I was not taken without unnecessary delay to a judge for an arrest without a warrant on August 10, 2017, was corroborated by the Supervisor of the Courtroom Deputies, Dan Murphy.

16.  Because  "Keith Holland" ,  IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [  badge # 1258 ], and the Court security guards  broke the law on August 10, 2017, and in breaking the law they demonstrated that they have no credibility, Magistrate Goodman cannot obtain a lawful summons or a lawful warrant from the federal district court compelling my appearance on December 7, 2017.

17. See **U.S. v. Herndon 546 F. Supp. 2d 854 ( E.D. Cal 2008)**, a case, on point.

18. Other salient points are as follows.

19. A man purporting to be "Keith Holland" accosted Me in the first-floor coffee shop at the Trenton federal courthouse on August 10, 2017 just before a scheduled 10 AM meeting with Jayson Burg and his criminal defense team.

20. A man purporting to be "Keith Holland" refused to produce identification and refused to provide his badge number on August 10, 2017, to demonstrate that "Keith Holland" was a Deputy U.S. Marshal.

21. A man purporting to be "Keith Holland" refused to provide Me with the name of his supervisor.

22. A man purporting to be "Keith Holland" was in plain clothes on August 10, 2017 and appeared somewhat disheveled.

23. A man purporting to be "Keith Holland" refused to state his business with Me when he accosted Me in the first-floor coffee shop in the Trenton federal courthouse on August 10, 2017 immediately before a scheduled 10 AM meeting with Jayson Burg and his criminal defense team.

24. I am not obligated to report to "Keith Holland" .

25. "Keith Holland" was in no way associated or connected with Me or my attendance at the August 10, 2017 meeting with Jayson Burg and his criminal defense team at the Trenton federal courthouse.

26. "Keith Holland" had no way of knowing my plans before or after the August 10, 2017 scheduled meeting with Jayson Burg and his criminal defense team at the Trenton federal courthouse.

27. The assertion that I planned on attending a 11 AM hearing in front of Judge Sheridan is false, because my plans were subject to change depending on the outcome of the 10 AM meeting with Jayson Burg and his criminal defense team on August 10, 2017; I could have, for example, concluded my business and left the courthouse after the 10 AM meeting with Jayson Burg and his criminal defense team.

28. I have and had no obligation, duty, wish, or desire to report my plans, activities, or duties to " Keith Holland " and any representations that "Keith Holland" or anyone else made that I do or did are false.

29. "Keith Holland" is not and never was my supervisor, superior, boss, or direct report.

30. A man purporting to be "Keith Holland" made no allegations sworn to under penalty of perjury against Me in connection with a August 10, 2017, federal ticket.

31. A man purporting to be "Keith Holland" made no allegations sworn to under penalty of perjury against Me to support a finding of probable cause in connection with a August 10, 2017 federal ticket.

32. A man purporting to be "Keith Holland" made no allegations sworn to under penalty of perjury against Me to support a lawful summons from the federal district court in connection with a August 10, 2017 federal ticket.

33. A man purporting to be "Keith Holland" made no allegations sworn to under penalty of perjury against Me to support a lawful warrant from the federal district court in connection with a August 10, 2017 federal ticket.

34. On August 10, 2017, IFPS Inspector Colin L. Mitchell [ badge #334 ] was wearing a uniform with a name tag pinned to his uniform with his name and badge number.

35. IFPS Inspector Colin L. Mitchell [ badge # 334 ] was not present during the incident leading up to the arrest without a warrant on August 10, 2017 inflicted upon Me by a man purported to be "Keith Holland".

36. The Government has not provided Me with any information regarding "Keith Holland's " authority to arrest.

37. IFPS Inspector Colin L. Mitchell [ badge # 334 ] was not present during the arrest without a warrant that "Keith Holland" inflicted on Me on August 10, 2017.

38. "Keith Holland's " unsworn allegations to Mitchell are not credible because on August 10, 2017 "Holland" broke the law in not taking Me without unnecessary delay to a judge after "Holland" arrested Me without a warrant.

39. Mitchell is not credible because Mitchell did not take Me without unnecessary delay to a judge after "Holland" arrested Me without a warrant on August 10, 2017.

40. So-called Deputy U.S. Marshal Lourdes Timberman [badge # 1258 ] was not present during the incident leading up to the arrest without a warrant on August 10, 2017.

41. Lourdes Timberman is not credible because Lourdes Timberman did not take Me without unnecessary delay to a judge after "Holland" arrested Me without a warrant on August 10, 2017.

42. Instead Timberman and Mitchell left Me in a jail cell for several hours in the basement of the Trenton courthouse without taking Me without unnecessary delay to a judge after "Holland" arrested Me without a warrant on August 10,2017.

43. On August 10, 2017, so-called Deputy U.S. Marshall Lourdes Timberman refused to identify herself.

44. So-called Deputy U.S. Marshal Lourdes Timberman has never produced identification to Me demonstrating that she is a Deputy U.S. Marshal.

45. Lourdes Timberman merely stated on November 13, 2017, that she was a Deputy U.S. Marshal and that #1258 was her badge number.

46. On the several occasions that Lourdes Timberman accosted Me at the Trenton federal courthouse, she was not wearing a uniform and would not produce her badge or any other identification indicating that Lourdes Timberman was a Deputy U.S. Marshal.

47. I was compelled to turn Lourdes Timberman into the Trenton police department for blocking my access to the Court on November 13, 2017, and for otherwise provoking an incident on November 13, 2017.

48. On November 13, 2017, while I was engaged in service of process with my process server at the Trenton federal courthouse, a Court Security Officer who refused to identify himself stole my cell phone out of my hands, did not give Me a receipt for my phone, kept my phone from Me for over an hour while Lourdes Timberman provoked an incident.

49. Interfering with service of process is a crime.

50. Blocking access to the courts is a crime.

51. Even if "Keith Holland", IFPS Inspector Colin L. Mitchell [ badge # 334 ], Deputy U.S. Marshal Lourdes Timberman [ badge # 1258 ], and the Court security guards swore to allegations under penalty of perjury in connection with a August 10, 2017 federal ticket at this late date, it would not change the fact that they broke the law on August 10, 2017 and in breaking the law showed that they are not credible.

52. In breaking the law on August 10, 2017, "Holland", Mitchell, and Timberman, and the Court security officers demonstrated that they have no credibility such that Magistrate Goodman cannot obtain a summons or a bench warrant to compel my appearance on December 7, 2017.

53. This is, at least, the **Second Notice of Liability** with opportunity to cure that I have provided to Magistrate Goodman.

*Failure to rebut this declaration/affidavit will be evidence in the matter noted above that complainant/victim was injured by loss of rights and government agents' interference and that they exceeded their jurisdiction.*

Lidya Maria Radin                    5-December-2017

C/o Friendly, 203 W. 107th St, #8A
NY, NY 10025, Tel: 516-445-4390

FiRSt   NOTICE   of

Liability

AND

FRiENd   of   the   CouRt

emAil   to   MagistrAtE

GoodmAN

11/26/2017  Gmail - Give this case to Magistrate Goodman, it is key / Oct. 25, Order was not based on sworn allegations/ U.S. v. Herndon 546 F.Supp.2d 854

Case 3:17-mj-04519-TJB   Document 14   Filed 12/05/17   Page 17 of 49 PageID: 311

 **Gmail**

Lidya Radin <radin.lidya2@gmail.com>

---

## Give this case to Magistrate Goodman, it is key / Oct. 25, Order was not based on sworn allegations/ U.S. v. Herndon 546 F.Supp.2d 854

5 messages

---

**Lidya Radin** <radin.lidya2@gmail.com>  Wed, Nov 15, 2017 at 1:36 PM
To: njdnef_linares@njd.uscourts.gov, Ivannya_Fitzgerald@njd.uscourts.gov, lhg_orders@njd.uscourts.gov,
paul.safier@usdoj.gov, "Sanseverino, Jerry (USMS)" <jerry.sanseverino@usdoj.gov>
Cc: joseph.gribko@usdoj.gov, veronica.allende@usdoj.gov, njdnef_wolfson@njd.uscourts.gov,
njdnef_martinotti@njd.uscourts.gov, njdnef_shipp@njd.uscourts.gov, dea_orders@njd.uscourts.gov,
tjb_orders@njd.uscourts.gov, Paula Gloria <rabbitholecentral@earthlink.net>, dean loren <deanloren@gmail.com>, "Lalit K.
Jain" <lkjesq@gmail.com>, george naytowhcowcon <freelectron21@hotmail.com>, JW Grenadier <jwgbkrup@gmail.com>, Jw
Grenadier <psavictim@gmail.com>, marsha.l.grace.mil@mail.mil, smmcstaff@usmc.mil, McCrary GySgt Ryan N
<ryan.mccrary@usmc.mil>, whistleblower@judiciary-rep.senate.gov, karen.argent@ic.fbi.gov, Eric Holder
<askdoj@usdoj.gov>

████████████████████████████████████████████████████████████

   **To:  Courtroom Deputy Ivannya Fitzgerald**, please give this case to Magistrate Lois Goodman, as it explains to
Magistrate Goodman that her October 25, 2017 Order threatening to arrest Me is not based on sworn allegations in the
Violation Ticket, the pleading in this case.  Should you continue to block my communications to Magistrate Goodman,
Ms.Fitzgerald, I can and will lien your property, and my insurance company will hold you accountable,personally.  I remind
you that you refused to put my phone call to Magistrae Goodman through on October 25, 2017, upon request, this case
should have been over on October 25, 2017, and I have your recorded statements.  Again, Scott Kransny is not and has
never been my attorney.  I understand you and federal prosecutor R. Joseph Gribko went behind my back in an attempt
to force this former federal prosectuor, Mr. Kransy on Me.  Please stop.   This email is NOTICE to you.

### Citation:  U.S. v. Herndon 546 F. Supp. 2d 854  ( E.D. Cal 2008 )

# <u>ORDER</u>

JOHN F. MOULDS, United States Magistrate Judge.

Plaintiff's motion for probation revocation came on regularly for hearing October 4,
2007. Joseph M. Cook, Assistant United States Attorney, appeared for plaintiff. Linda
Harter, Assistant Federal Defender, appeared for defendant. The court ordered further
briefing, which has now been submitted. Upon review of the motion and the documents
in support and opposition, upon hearing the arguments of counsel and good cause
appearing therefor, THE COURT FINDS AND ORDERS AS FOLLOWS:

Defendant was convicted of theft of government property, a violation of 18 U.S.C. §
641 and on August 22, 2002, was sentenced to a term of 60 months supervised

probation. On December 22, 2006, the defendant's sentence was modified to allow court probation in lieu of supervised probation. On August 1, 2007, the government filed a probation revocation petition. On August 15, 2007, the defendant was ordered to appear and show cause why probation should not be revoked. On August 22, 2007, defendant's five year probation term expired. On October 4, 2007, the matter was heard and defendant moved to dismiss the petition for lack of jurisdiction. Defendant argued that plaintiff's petition was not under oath or affirmation; thus the order was invalid and could not serve to extend the court's jurisdiction beyond the expiration of defendant's five year probation term.

> The order specifically stated: "Based on the foregoing allegations, and the good cause appearing therefrom, it is hereby ordered that the defendant appear on Wednesday, September 5, 2007, at 11:00 a.m., to show cause why the probation granted on August 22, 2002, and subsequently modified, should not be revoked. [¶] IT IS SO ORDERED." (Id.)

An attempt to modify, extend, or revoke probation must be made within the probationary term. See 18 U.S.C. §§ 3563(c), 3564(d), 3565(a) and (c); see also United States v. Schmidt, 99 F.3d 315, 317-18 (9th Cir. 1996) (noting that revocation after expiration of probation term was proper where summons was issued prior to expiration); United States v. Humphress, 878 F.Supp. 168, 170-71(D.Or. 1994); cf. Freeman, 922 F.2d at 1394-95 (discussing former 18 U.S.C. § 3563(c) and stating that a court "may not revoke a probationary sentence once it has expired.").

> Overruled on other grounds in United States v. Palomba, 182 F.3d 1121, 1123 (9th Cir. 1999).

Title 18 U.S.C. § 3565(c), dealing with delayed revocation of probation, provides:

> (c) Delayed revocation. — The power of the court to revoke a sentence of probation for violation of a condition of probation, and to impose another sentence, extends beyond the expiration of the term of probation for any period reasonably necessary for the adjudication of matters arising before its expiration if, prior to its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

11/26/2017    Gmail - Give this case to Magistrate Goodman, it is key - Oct. 25 Order was not based on sworn allegations U.S. v. Herndon 546 F.Supp.2d 854

Case 3:17-mj-04525-JBS   Document 14   Filed 12/05/17   Page 19 of 49   PageID: 313

Id.

Title 18 U.S.C. § 3583(i), dealing with delayed revocation of supervised release provides:

> (i) Delayed revocation. — The power of the court to revoke a term of supervised release for violation of a condition of supervised release, and to order the defendant to serve a term of imprisonment and, subject to the limitations in subsection (h), a further term of supervised release, extends beyond the expiration of the term of supervised release for any period reasonably necessary for the adjudication of matters arising before its expiration if, before its expiration, a warrant or summons has been issued on the basis of an allegation of such a violation.

Id.

Here, it is clear that no warrant issued and that the August 15, 2007 order was not based on sworn allegations. The question here is whether this court's order of August 15, 2007 may be construed as a summons under the above statutes. This court finds that it cannot.

The statutory provision for warrants or summonses, 18 U.S.C. § 3046, refers to Rules 4 and 9 of the Federal Rules of Criminal Procedure. Rule 4(b) provides for the form for the warrant and summons:

> (1) Warrant. A warrant must:

> (A) contain the defendant's name or, if it is unknown, a name or description by which the defendant can be identified with reasonable certainty;

> (B) describe the offense charged in the complaint;

(C) command that the defendant be arrested and brought without unnecessary delay before a magistrate judge or, if none is reasonably available, before a state or local judicial officer; and

(D) be signed by a judge.

(2) Summons. A summons must be in the same form as a warrant except that it must require the defendant to appear before a magistrate judge at a stated time and place.

Id. Rule 9(b) provides:

(1) Warrant. The warrant must conform to Rule 4(b)(1) except that it must be signed by the clerk and must describe the offense charged in the indictment or information.

(2) Summons. The summons must be in the same form as a warrant except that it must require the defendant to appear before the court at a stated time and place.

Id.

Under common principles of statutory construction, the word "summons" is a term of art distinguishing it from orders issued by judicial officers. The Court of Appeals for the Ninth Circuit has construed 18 U.S.C. § 3583(i) "to mean that not all warrants or summonses will extend the district court's jurisdiction to revoke supervised release." United States v. Vargas-Amaya, 389 F.3d 901(9th Cir. 2004). In Vargas-Amaya, the court held that the district court's jurisdiction to revoke supervised release could be extended beyond the term of supervision, based upon a warrant issued during the term of supervision, but only if the warrant was based on sworn facts.Id. The court declined to express an opinion as to whether the summons must also be based upon sworn facts. Id. at 906 n. 4.

11/26/2017    Gmail - Gigi, this case is Magistrate Goodman, it is item 25 - Order was not based on sworn allegations US v. Hernandez 345 F.Supp.2d 854

Case 3:17-mj-04518-TJB Document 14  Filed 12/05/17   Page 21 of 49 PageID: 315

However, this court finds the reasoning of <u>Vargas-Amaya</u> equally applicable to the summons in this context. Rule 4(a) of the Federal Rules of Criminal Procedure states:

> If the complaint or one or more affidavits filed with the complaint establish probable cause to believe that an offense has been committed and that the defendant committed it, the judge must issue an arrest warrant to an officer authorized to execute it. At the request of an attorney for the government, the judge must issue a summons, instead of a warrant, to a person authorized to serve it. A judge may issue more than one warrant or summons on the same complaint. If a defendant fails to appear in response to a summons, a judge may, and upon request of an attorney for the government must, issue a warrant.

<u>Id.</u> Rule 3 of the Federal Rules of Criminal Procedure requires that the complaint be made under oath. <u>Id.</u> When read together, these rules demonstrate that generally a summons must also be supported by allegations sworn under oath. As noted by defendant, the Ninth Circuit has previously found there was "little distinction between the issuance of a warrant or a summons."<u>United States v. Greenberg</u>, 320 F.2d 467 (9th Cir. 1963) (the requirement that it must appear from the complaint that there is probable cause to believe an offense has been committed and that defendant has committed it, applies whether a warrant or summons is issued); <u>see also Jaben v. United States</u>, 381 U.S. 214, 219 (1965) ("Notice to a criminal defendant is usually achieved by service upon him of the summons or arrest warrant provided for in Rule 4. Neither is appropriate absent a judgment by the [magistrate judge] that the complaint shows probable cause. . . .")

Rule 9 of the Federal Rules of Criminal Procedure also hinges the issuance of a warrant or summons on whether one or more affidavits accompanying the information establish probable cause. <u>Id.</u> "Professor Wright has concluded that since a summons may issue "instead of a warrant," and a warrant may issue only on a sworn information, then a summons may issue only on a sworn information." <u>United States v. Millican</u>, 600 F.2d 273, 276 (5th Cir. 1979), <u>cert. denied</u>, 445 U.S. 915 (1980), quoting 1 Wright, Federal Practice and Procedure, § 151 at 342 (1969). "If a summons could be issued

on an information not supported by oath, and a warrant then issued for failure to appear in response to the summons, the end result would be that defendant could be arrested on warrant though there had never been a showing under oath of probable cause. This is not permissible." Id.

Rule 58 of the Federal Rules of Criminal Procedure also supports this court's conclusion that a summons, like a warrant, must be supported by sworn statements. Id.

> (3) Summons or Warrant. Upon an indictment, or upon a showing by one of the other charging documents specified in Rule 58(b)(1) of probable cause to believe that an offense has been committed and that the defendant has committed it, the court may issue an arrest warrant or, if no warrant is requested by an attorney for the government, a summons. The showing of probable cause must be made under oath or under penalty of perjury, but the affiant need not appear before the court. If the defendant fails to appear before the court in response to a summons, the court may summarily issue a warrant for the defendant's arrest.

Id. This rule specifically requires that the showing of probable cause, supported by facts asserted under oath or penalty of perjury, is required whether a warrant or summons is issued. Id.

Finally, in the Speedy Trial Act context, 18 U.S.C. § 3161(b),courts have held that only a court order based on a complaint supported by probable cause is a "summons" that triggers the thirty day time limit; other documents hailing a defendant into court are not a "summons." See e.g., United States v. Graef, 31 F.3d 362, 364 (6th Cir. 1994) (a violation of notice is not a "summons" under the Speedy Trial Act because it is not issued in conjunction with a "complaint," as defined by Fed.R.Crim.P. 3.)

> Section 3161(b) provides as follows: "Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days." Id.

11/26/2017    Gmail - Give this case to Magistrate Goodman, it is key / Oct. 25, Order was not based on sworn allegations/ U.S.v. Herndon 546 F.Supp.2d 854

Case 3:17-mj-04519-TJB    Document 14    Filed 12/05/17    Page 23 of 49 PageID: 317

There is no reason to invent a new meaning for the word "summons," when applying 18 U.S.C. § 3565(c). This court is required to follow the analysis used by the Ninth Circuit in Vargas-Amaya when it interpreted the parallel statutory section, 18 U.S.C. § 3583(i). Because this court's August 15, 2007 order was not based on probable cause supported by sworn allegations, it was not a "summons" within the meaning of 18 U.S.C. § 3565(c), and therefore this court no longer retains jurisdiction over the petition to revoke probation. Good cause appearing, defendant's motion to dismiss will be granted and the petition to revoke probation will be denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's August 1, 2007 petition to revoke probation is denied.

2. Defendant's October 4, 2007 motion to dismiss is granted.

---

**paulagloria** <rabbitholecentral@earthlink.net>                                                Wed, Nov 15, 2017 at 2:24 PM
Reply-To: paulagloria <rabbitholecentral@earthlink.net>
To: Lidya Radin <radin.lidya2@gmail.com>, njdnef_linares@njd.uscourts.gov, Ivannya_Fitzgerald@njd.uscourts.gov,
lhg_orders@njd.uscourts.gov, paul.safier@usdoj.gov, "Sanseverino,Jerry (USMS)" <jerry.sanseverino@usdoj.gov>
Cc: joseph.gribko@usdoj.gov, veronica.allende@usdoj.gov, njdnef_wolfson@njd.uscourts.gov,
njdnef_martinotti@njd.uscourts.gov, njdnef_shipp@njd.uscourts.gov, dea_orders@njd.uscourts.gov,
tjb_orders@njd.uscourts.gov, Paula Gloria <rabbitholecentral@earthlink.net>, dean loren <deanloren@gmail.com>, "Lalit K.
Jain" <lkjesq@gmail.com>, george naytowhowcon <freelectron21@hotmail.com>, JW Grenadier <jwgbkrup@gmail.com>, Jw
Grenadier <psavictim@gmail.com>, marsha.l.grace.mil@mail.mil, smmcstaff@usmc.mil, McCrary GySgt Ryan N
<ryan.mccrary@usmc.mil>, whistleblower@judiciary-rep.senate.gov, karen.argent@ic.fbi.gov, Eric Holder
<askdoj@usdoj.gov>

Excellent. We will go over this on the FM radio next Monday should the courts and the sociopaths * not be corrected.
Also of interest to our audience is that this case is not available via google controlled search.
Paula
* (and we WILL carefully define this term scientifically)
[Quoted text hidden]
We, The Bartons Reserve All Our Rights to Privacy & Free Speech w/o Limit. Confirmation #164558731 (to Earthlink).
**The Bartons are not Foreign Internet Users & Retain all Rights to Our Intellectual Property.**
                        **NOTICE TO AGENT IS NOTICE TO PRINCIPAL (& vice versa)**
☆Joe and Paula Gloria Barton, 26 Gramercy Park 7H, New York, New York, (despite exile status until City Marshal
Alfred E. Locascio, 13th precinct and Louis Zazzarino stop ignoring lawful judge'™s orders, return stolen property,
including social security number & cell phone (# 646-640-7135) whose missing status casts us in a false light as
fraudsters when **neither of The Bartons are corporations or have any intention to infringe on copyright owned
by the CROWN CORPORATION,** otherwise erroneously understood by most people as "our" legal names.



Third Circuit's
ruling is

Rejected for
Cause

ELD-009-E                                    **NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 17-3347

IN RE: LIDYA MARIA RADIN,
                                        Petitioner

On a Petition for Writ of Prohibition from the
United States District Court for the District of New Jersey
(Related to 3:17-mj-04519)

Submitted Pursuant to Rule 21, Fed. R. App. P.
October 31, 2017
Before: GREENAWAY, JR., RESTREPO and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: November 15, 2017)

OPINION[*]



PER CURIAM

     Petitioner Lidya Maria Radin seeks a writ of prohibition to prevent a petty offense

prosecution in the United States District Court for the District of New Jersey from

proceeding against her. We will deny the petition.

     On August 10, 2017, Radin was issued a "United States District Court Violation

Notice" by a federal law enforcement officer. According to the violation notice, Radin

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

refused to be escorted out of the United States Courthouse in Trenton, New Jersey, after she "became 'disruptive and belligerent' when [a United States Marshal] advised her of the Building Rules and Regulations while on Federal Property." D.N.J. Crim. No. 3:17-mj-04519, ECF No.1.  The notice charged her with disorderly conduct on federal property in violation of 41 C.F.R. § 102-74.390.[1]  Id.  She has been directed to appear before a United States Magistrate Judge on November 16, 2017.

In her petition, Radin seeks an order prohibiting the District Court from proceeding, as well as an order prohibiting the Department of Justice from using public funds to prosecute the case against her.  Relevant here, Radin argues that the District Court lacks jurisdiction over her case because, among other reasons, an indictment was never issued against her, and that the Department of Justice, therefore, is pursuing this prosecution without having taken the necessary steps to acquire or maintain the jurisdiction of the District Court.

Prohibition is a drastic remedy available only in extraordinary cases.  See In re

---

[1] 41 C.F.R. § 102-74.390 states:

> All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that—
> (a) Creates loud or unusual noise or a nuisance;
> (b) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;
> (c) Otherwise impedes or disrupts the performance of official duties by Government employees; or
> (d) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

Diet Drugs Prods. Liab. Litig., 418 F.3d 372, 378 (3d Cir. 2005). A petitioner seeking a writ of prohibition must demonstrate that: "(1) no other adequate means exist to attain the relief [s]he desires, (2) the party's right to issuance of the writ is clear and indisputable, and (3) the writ is appropriate under the circumstances." Hollingsworth v. Perry, 558 U.S. 183, 190 (2010) (internal quotations omitted). A writ of prohibition should not issue where relief may be obtained through an ordinary appeal. In re Chambers Dev. Co., Inc., 148 F.3d 214, 223 (3d Cir. 1998).

Radin has not shown that the issuance of an extraordinary writ is warranted. Because the charged violation constitutes a petty offense,[2] it appears that the case is properly before the Magistrate Judge. See 18 U.S.C. § 3401(a) (indicating that "any United States magistrate judge shall have jurisdiction to try persons accused of, and sentence persons convicted of, misdemeanors committed within that judicial district"); Fed. R. Crim. P. 58(b)(1) (stating that "the trial of a petty offense may [] proceed on a [] violation notice."). And should the Magistrate Judge enter a judgment of conviction or sentence against her, Radin will be afforded the opportunity to appeal to a District Judge, see 18 U.S.C. § 3402; Fed. R. Crim. P. 58(g)(2)(B), and then to appeal any subsequent order issued by a District Judge to this Court, see 28 U.S.C. § 1291; Fed. R. Crim. P.

---

[2] See 41 C.F.R. § 102-74.450 ("A person found guilty of violating any rule or regulation in this subpart … shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both."); 18 U.S.C. § 3559(a)(8) (stating that a crime with a maximum term of imprisonment of 30 days is a Class C misdemeanor); 18 U.S.C. § 19 (defining a petty offense to include a Class C misdemeanor).

58(g)(1); Fed. R. App. P. 4(b).  Accordingly, it appearing that the District Court has

jurisdiction over the petty offense case before it, and that Radin has the ability to

challenge the District Court's jurisdiction through the ordinary appeal process, we will

not prohibit the District Court from proceeding to hear the case, nor will we prohibit the

Department of Justice from using public funds to pursue the case.  See In re Chambers

Dev. Co., Inc., 148 F.3d at 2_.

    Consequently, the petition for a writ of prohibition will be denied.



4

ELD-009-E

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 17-3347
_____

IN RE: IDYA MARIA RADIN,
                                                      Petitioner

_____

On a Petition for Writ of Prohibition from the
United States District Court for the District of New Jersey
(Related to 3:17-mj-04519)

_____

Submitted Pursuant to Rule 21, Fed. R. App. P.
October 31, 2017
Before: GREENAWAY, JR., RESTREPO and GREENBERG, <u>Circuit Judges</u>

_____

JUDGMENT

_____

This cause came to be considered on a petition for writ of prohibition submitted on
October 31, 2017.  On consideration whereof, it is now hereby

ORDERED and ADJUDGED by this Court that the petition for writ of prohibition
be, and the same is, denied.  All of the above in accordance with the opinion of the Court.

                                              ATTEST:

                                              s/ Marcia M. Waldron
                                              Clerk

DATED:      November 15, 2017



A True Copy:

Marcia M. Waldron, Clerk

Chief U.S. District
Court Judge Jose
Linares's Ruling
Is Rejected for
fraud on the Court
by a court officer
= void Ruling

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,　　　　　CASE NO. 17-mj-4519 (LHG)

v.

LIDYA M. RADIN, *(handwritten: Lidya Maria Radin)*

Defendant.

---

UNITED STATES OF AMERICA,　　　　　CRIMINAL NO. 17-494 (AET)

v.　　　　　　　　　　　　　　　　　　**ORDER**

LIDYA M. RADIN, *(handwritten: Lidya Maria Radin)*

Defendant.

*(handwritten stamp: REJECTED FOR CAUSE)*

---

*(handwritten: → sui juris)*

**IT APPEARING THAT:**

1.　This is a criminal matter in which the defendant, Lidya M. Radin, is appearing *pro se*. *(circled, handwritten X)* Specifically, Radin was charged with the petty offense of disorderly conduct on federal property in violation of 41 C.F.R. § 102-74.390 in relation to her behavior at the United States Courthouse in Trenton, New Jersey on August 10, 2017, pursuant to a violation notice issued to her by a federal law enforcement officer. *(See Case No. 17-mj-4519, ECF No. 1.)*

*(handwritten annotations: No evidence — "Keith Holland" did Not produce ID — did Not provide his badge Number — did Not swear under penalty of perjury — No hearsay exception)*

2.　Radin has filed the following requests before me in my capacity as the Chief Judge for the District of New Jersey: (a) to stay the petty offense prosecution, which is pending before Magistrate Judge Goodman in this District; (b) to commence a

*(handwritten annotations: for officers b/c Holland, Mitchell and Timberman broke the law on 8/10/17 = No credibility, violated CONSTITUTIONAL RIGHTS)*

*(handwritten stamp: REJECTED FOR CAUSE)*

*[handwritten: NOPE → See In the Matter of IN RE Grand]*

criminal investigation into the circumstances surrounding her prosecution; and (c) for

*[handwritten: misconstrued / lied / false / inaccurate]*

other miscellaneous relief. (See Case No. 17-mj-4519, ECF No. 4; id., ECF No. 6;

Criminal No. 17-494, ECF No. 4.)

*[handwritten: → Jury application 612 F.Supp 199 (1985 S.D.N.Y.)]*

3. I have thoroughly reviewed all of the papers and assorted correspondence

filed by Radin. I find that all of Radin's requests for relief are not within my authority

to grant as the Chief Judge. Furthermore, I find that those requests would be more

appropriately resolved before the Magistrate Judge assigned to this case, and then

through the appellate process if appropriate.

*[handwritten: → list them, no one knows what you reviewed]*

4. For instance, Radin argues that the Magistrate Judge lacks any authority to

oversee this case (see Case No. 17-mj-4519, ECF No. 4; id., ECF No. 6), but that

argument is without merit and need not be addressed by a Chief Judge. See 18 U.S.C. §

3401(a) (authorizing a United States Magistrate Judge to try a defendant accused of a

federal misdemeanor that has been committed within that judicial district, and to issue a

sentence for any resulting conviction); see also Fed. R. Crim. P. 58(b)(1) (authorizing a

trial for a petty offense that has been charged in a violation notice). The Magistrate

*[handwritten: misconstrued]*

Judge may try this petty offense matter, even without Radin's consent. See United

States v. De Graaff, No. 05-829, 2006 WL 756541, at *1 (D.N.J. Mar. 20, 2006) (holding

that a Magistrate Judge may try a federal petty offense matter without obtaining a

defendant's consent, and that such a defendant is not entitled to a jury trial), aff'd, 242

Fed. App'x 828 (3d Cir. 2007); see also United States v. Nachtigal, 507 U.S. 1, 4–6

(1993) (holding the same).

*[handwritten: → No sworn allegations by credible men or woman / DOJ]*

5. Radin also seeks to initiate a criminal investigation or a criminal

*[handwritten: ↳ misconstrued]*



prosecution against those who are involved in charging her and prosecuting her in this matter. (*See* Crim. No. 17-494, ECF No. 4.) However, Radin's demands here are barred because she is a private citizen with no federal right to compel a criminal investigation or a criminal prosecution, and because initiating an investigation or a prosecution is a function of governmental discretion. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *see also Fuchs v. Mercer County*, 260 Fed. App'x 472, 475 (3d Cir. 2008) (affirming a district court's judgment that dismissed a claim asserted against a district attorney, wherein the plaintiff sought to compel a criminal investigation and prosecution of a police officer).

6.      Furthermore, Radin is not without appellate remedies concerning the orders and judgments that have been, or that will be, issued by the Magistrate Judge in this matter. *See* 18 U.S.C. § 3402 (permitting an aggrieved defendant to appeal from a Magistrate Judge's decision to a District Court judge); Fed. R. Crim. P. 58(g)(2)(B) (authorizing the same); *see also* 28 U.S.C. § 1291 (permitting an aggrieved criminal defendant to appeal from any subsequent orders or judgments entered by a District Court Judge to the Court of Appeals); Fed. R. Crim. P. 58(g)(1) (authorizing the same); Fed. R. App. P. 4(b) (authorizing the same). Indeed, the Third Circuit Court of Appeals has so held in denying the motion for a writ of prohibition that Radin filed in that court. *See In re Radin*, No. 17-3347, 2017 WL 5479494, at *1–2 (3d Cir. Nov. 15, 2017).

7.      It is apparent that Radin is aware of the appellate remedies that are available to her, as she has filed the aforementioned motion in the Third Circuit Court of Appeals, and she has already filed notices of appeal with this District. (*See* Case No.

3

17-mj-4519, ECF No. 5; *id.*, ECF No. 7; Criminal No. 17-494, ECF No. 1; *id.*, ECF No. 3.)

8.      Thus, for good cause appearing, all of Radin's requests for relief that are pending before me are denied.[1]

IT IS THEREFORE, on this ___2nd___ day of November, 2017, **ORDERED** that the defendant's requests for relief (Case No. 17-mj-4519 (LHG), ECF No. 4 and ECF No. 6) are **DENIED**; and it is further

ORDERED that the defendant's request for a criminal investigation or a criminal prosecution (Crim. No. 17-494 (AET), ECF No. 4) is **DENIED**.


JOSE L. LINARES
Chief Judge, United States District Court

_____

[1]      There is no doubt that a violation under 41 C.F.R. § 102-74.39 is a petty offense. *See In re Radin*, 2017 WL 5479494, at *1 (holding the same); *see also United States v. Strong*, 724 F.3d 51, 52 (1st Cir. 2013) (same).

District Court
Judge ANNE E.
Thompson's
ruling is
rejected for
CAUSE

NOT FOR PUBLICATION

**RECEIVED**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

NOV 1 5 2017

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

IN RE LIDYA M. RADIN,

        Petitioner.

Crim. No. 17-0494
(Related to 3:17-mj-04519)

**ORDER**

THOMPSON, U.S.D.J.

    WHEREAS Petitioner Lidya Radin's appeal of Magistrate Judge Lois H. Goodman's order to appear at 3:00 PM on November 16, 2017 (ECF No. 1, Crim. No. 17-0494) does not present a cognizable appeal (see Third Circuit Opinion dated November 15, 2017, Civ. No. 17-3347);

    IT IS on this 15 day of November, 2017,

    ORDERED that Petitioner's appeal is DENIED; and it is further

    ORDERED that Petitioner must appear before the Magistrate Judge as ordered and previously scheduled (ECF No. 3, Magistrate No. 17-4519).

                                        ANNE E. THOMPSON, U.S.D.J.

MAGISTRATE
Lois H. Goodman's
ORDERS
ARE

Rejected for lack
of jurisdiction =
void

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Magistrate No. 17-4519 (LHG) |
| v. | |
| **LIDYA RADIN** | **ORDER** |

THIS MATTER has come before the Court for an initial appearance on a Violation Notice issued against Defendant Lidya Radin ("Defendant"). The initial appearance was scheduled to take place on October 25, 2017, and Defendant was duly notified of that date. She did not appear for the October 25, 2017 hearing but, rather, insisted that she had not received proper notice. The hearing was then adjourned to November 16, 2017 at 3:00 p.m. Defendant was notified of the new date. Defendant again failed to appear on November 16, 2017, despite the fact that the Court waited until 3:15 p.m. lest Defendant was late but still intending to attend. R. Joseph Gribko, Esq., of the United States Attorney's Office for the District of New Jersey, appeared on behalf of the United States of America.

In light of Defendant's failure to appear, the initial appearance on the Violation Notice did not proceed as scheduled. The Court nonetheless went on the record to memorialize Defendant's second failure to appear, to set a date for further proceedings, and to address certain issues relating to Defendant's conduct in this matter.

Specifically, the Court scheduled the trial to commence in this matter at 9:30 a.m. on December 7, 2017. Prior to commencing the trial, the Court will conduct the initial appearance hearing.

The Court also noted for the record that Defendant has been engaging in disruptive communications with court personnel and the United States Attorney's Office. Specifically, the undersigned's chambers, as well as the chambers of several other judges in the District (collectively referred to as "Chambers"), the Clerk's Office, and the United States Attorney's Office have received numerous lengthy telephone calls as well as emails with large attachments from Defendant over the past month. This has been disruptive to the court process. In addition, as a general matter, all submissions to the Court should be made directly to the docket by way of the Clerk's Office, rather than to any judge's chambers or email, so that the record is complete.

The Court is also troubled by the fact that several of Defendant's telephone calls and emails have included both implicit and explicit threats, including threats to file liens against various Court personnel. This has been disruptive to the operation of the Court and must stop for that reason. In addition, the Court cautions Defendant that the filing of a false lien against an officer or employee of the United States who is engaged in official duties is a criminal offense punishable by fines and possible imprisonment for up to ten years. *See* 18 U.S.C. § 1521.

1

For the foregoing reasons, and as stated on the record on November 16, 2017, and for good cause shown,

**IT IS** on this **17**th day of **November, 2017,**

**ORDERED** that trial for this matter before the undersigned will begin December 7, 2017 immediately after the conduct of Defendant's initial appearance on the Violation, which will commence at 9:30 a.m.  In the event Defendant fails to appear, she will be at risk of issuance of a bench warrant for her arrest or trial *in absentia*; and it is further

**ORDERED** that Defendant shall immediately cease and desist telephoning and emailing Chambers and the United States Attorney's Office; any continued calls or emails to Chambers or to the United States Attorney's Office, may subject Defendant to a finding of contempt and possible sanctions, including the potential of both fines and a term of imprisonment; and it is further

**ORDERED** that from this point forward, all of Defendant's communications with Chambers and the United States Attorney's Office shall be submitted in writing.  Those submissions may be submitted to the Clerk's Office by regular mail, overnight mail, or in person. Any telephonic communications with the Clerk's Office shall be made to (609) 989-2065.  Any failure to comply with these instructions may subject Defendant to a finding of contempt and possible sanctions, including the potential of both fines and a term of imprisonment; and it is further

**ORDERED** that, given that Defendant is not represented by counsel, the Clerk's Office shall add Defendant's mailing address and email address to the docket, and shall continue to provide Defendant with notices via both regular mail and email.

LOIS H. GOODMAN
**United States Magistrate Judge**

2

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Magistrate No. 17-4519 (LHG) |
| v. | |
| **LIDYA RADIN** | **ORDER DENYING STAY** |

**THIS MATTER** having been brought before the Court by a Motion to Stay filed by Defendant Lydia Radin [Docket Entry No. 8]; the Motion requesting a stay pending the outcome of an appeal to the Third Circuit Court of Appeals, the Motion failing, however, to indicate that any such appeal had been filed or to set forth any cognizable basis for a stay; and for good cause shown;

**IT IS** on this 17th day of November, 2017,

**ORDERED** that Defendant Lydia Radin's Motion to Stay is hereby DENIED.

**LOIS H. GOODMAN**
**United States Magistrate Judge**

Rejected, no jurisdiction

As per
Judge Broderick's
ruling, Acting U.S.
Attorney William E.
Fitzpatrick must
prosecute the
wrongdoers against
Radin

In Re Grand Jury Application, 617 F. Supp. 199 - Dist. Court, SD New York 1985 - Google Scholar

Case 3:17-mj-04519-TJB   Document 14   Filed 12/05/17   Page 42 of 49 PageID: 336

Web      Images      More...                                                    jacci@hedhifi.com

In Re Grand Jury Application, 617 F. Supp. 199 - Dist. Court, SD New Yo    **Google** Scholar

Read    How cited    Search                                    Highlighting "18 U.S.C. § 3332(a) "   x

**617 F.Supp. 199 (1985)**

## In the Matter of In re GRAND JURY APPLICATION.

### No. 85 Civ. 2235 (VLB).

**United States District Court, S.D. New York.**

April 25, 1985.

200    *200 Neal Schwarzfeld, Schwarzfeld, Ganfer & Shore, New York City, for Bandler & Kass, Robert Sylvor and William J. Werner.

Russell, Piccoli, Phoenix, Ariz., Herbert C. Ross, Jr., Rogers Hoge & Hills, New York City, for plaintiffs.

Susan Harkins, Asst. U.S. Atty., New York City, for U.S. Atty.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiffs, in their complaint and now by motion, seek either a writ of mandamus to compel the United States Attorney to present the "facts" concerning alleged criminal wrongdoing of certain named defendants to the grand jury or for me to request the grand jury to hear testimony by plaintiff's attorney, Mr. Piccoli,

201    concerning that wrongdoing.[1] They base their *201 complaint and motion on **18 U.S.C. § 3332(a)**, which states:

> It shall be the duty of each such grand jury impaneled within any judicial district [special grand juries impanelled pursuant to 18 U.S.C. § 3331] to inquire into offenses against the criminal laws of the United States alleged to have been committed within that district. Such alleged offenses may be brought to the attention of the grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation.

At the outset, I would point out that plaintiffs do not seek to compel the U.S. Attorney to prosecute the named defendants. Rather, they seek to have either the court or the United States Attorney present certain information to the grand jury. This distinction is critical because almost the entirety of the opposition to plaintiffs' motion is based on the mischaracterization by the U.S. Attorney and the other defendants of plaintiffs' motion as one seeking to compel the U.S. Attorney to initiate proceedings against the other defendants.

Thus the U.S. Attorney argues that plaintiffs lack standing to bring this suit

because "a private litigant lacks a sufficiently distinct interest in a criminal prosecution to compel its initiation." Govt.Memo at 7, citing _Linda R.S. v. Richard D._, 410 U.S. 614, 619, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973); _see Leeke v. Timmerman_, 454 U.S. 83, 86-87, 102 S.Ct. 69, 70-71, 70 L.Ed.2d 65 (1981); _Heckler v. Chaney_, ___ U.S. ___, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) and other cases. He argues that because presenting the information to the grand jury might not lead to an indictment, or conviction, or ultimately to an award in the plaintiffs' pending civil action, plaintiffs' interest is too attenuated from the relief sought to justify allowing them to bring the instant action.

"Congress may enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." _Linda R.S. v. Richard D._, 410 U.S. 614, 617 n. 3, 93 S.Ct. 1146, 1148 n. 3, 35 L.Ed.2d 536 (1973). _See Warth v. Seldin_, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975); _Trafficante v. Metropolitan Life Ins. Co._, 409 U.S. 205, 212, 93 S.Ct. 364, 368, 34 L.Ed.2d 415 (1972) (White, J., concurring); _Hardin v. Kentucky Utilities Co._, 390 U.S. 1, 6, 88 S.Ct. 651, 654, 19 L.Ed.2d 787 (1968). When determining whether a plaintiff has standing, I need only examine the complaint to see if the plaintiff has alleged that he has suffered a cognizable injury. _Nash v. Califano_, 613 F.2d 10, 14 (2d Cir.1980). **18 U.S.C. § 3332(a)** creates a duty on the part of the United States Attorney that runs to the plaintiffs, and the breach of that duty gives the plaintiffs standing to seek its enforcement.[2]

The defendants contend that "the decision to prosecute is the exclusive prerogative of the Executive Branch." Govt.Memo at 10, citing _United States v. Nixon_, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); _Nathan v. Smith_, 737 F.2d 1069 *202 (D.C.Cir.1984); _Inmates of Attica Correction Facility v. Rockefeller_, 477 F.2d 375 (2d Cir.1973); _Powell v. Katzenbach_, 359 F.2d 234 (D.C.Cir.1965), _cert. denied_, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966), and other cases. They characterize plaintiffs' complaint and motion as attempts to compel the U.S. Attorney to prosecute the other named defendants, and, relying on the above cited cases, argue that courts have uniformly denied such relief. But no case cited has considered the requirements imposed by **18 U.S.C. § 3332(a)**. The only opinion I have found that even indirectly deals with the issue presented in this case is Judge Bork's concurring opinion in _Nathan v. Smith_, 737 F.2d 1069 (D.C.Cir.1984).

In _Nathan_, the issue was prosecutorial discretion under the Ethics in Government Act, 28 U.S.C. §§ 591 et seq. Section 591(a) provided[3] in relevant part:

> The Attorney General shall conduct an investigation pursuant to the provisions of this chapter whenever the Attorney General receives specific information that any of the persons described in subsection (b) of this section has committed a violation of any Federal criminal law other than a violation constituting a petty offense.

Judge Bork stated:

> It may be thought that neither the relief granted by the district court nor that sought by the plaintiffs falls within the principle of Executive control of decisions to prosecute. The district court ordered the Attorney General to initiate a preliminary investigation; the plaintiffs seek to compel an application for the appointment of an independent counsel. The distinction between these remedies and the [prosecutorial discretion] principle discussed above has no

significance, however. The only purpose of the preliminary investigation under the Ethics Act is to enable a report to the special division of this court about the need or the lack of a need for the appointment of independent counsel. The preliminary investigation is thus the first stage of the prosecutorial process and the district court has undertaken to control that stage.

Plaintiffs would have the district court control the next stage as well ordering the Attorney General to apply to the special division of this court for the appointment of an independent counsel. It is no answer to say that the courts, under either form of relief, would not control the final prosecutorial decision since that would be made by the independent counsel. There are at least two flaws in that reasoning. The first is that the principle of Executive control extends to all phases of the prosecutorial process. *Thus, were this a case about an ordinary prosecution under a federal criminal statute, a plaintiff could not escape the principle discussed by demanding only an order that the Attorney General present facts to a grand jury but leaving the decision whether to sign any indictment to him.* Second, if private plaintiffs have the legal ability to require an investigation of criminal charges, it is difficult to understand by what principle they could be denied a cause of action to compel the independent counsel to prosecute if that counsel had sufficient evidence to do so under the policies of the Department of Justice, which the Act requires him to follow. 28 U.S.C. § 594(f) (1982). If the execution of the laws is lodged by the Constitution in the President, that execution may not be divided up into segments, some of which courts may control and some of which the President's delegate may control. *203 It is all the law enforcement power and it all belongs to the Executive. It may be that answers can be given that avoid or modify these traditional views. No such answers have been offered in this case, however.

203

737 F.2d at 1079 (emphasis added).

Contrary to what Judge Bork stated, Congress has divided the execution of the law into segments, with the presentation of information to the grand jury concerning racketeering violations being an area where the prosecutor's discretion was explicitly removed. Judge Bork himself recognized that judicial opinion was not unanimous on this question. The portion of his concurrence emphasized above is a criticism of the decision of the Fifth Circuit Court of Appeals in *United States v. Cox*, 342 F.2d 167 (5th Cir.1965). In *Cox* a 4-3 majority held that a United States Attorney could not be compelled to sign an indictment returned by the grand jury, and that without his signature the indictment would have no legal effect. 342 F.2d at 172. A different 4-3 majority held, however, that the United States Attorney could be required to assist the grand jury by drafting an indictment in accordance with their wishes, even if he had no intention of signing it if it were voted a true bill. 342 F.2d at 181. *Accord, Report and Recommendation of June 5, 1972 Grand Jury*, 370 F.Supp. 1219 (D.D.C.1974).

In other contexts, courts have acknowledged that prosecutorial discretion is not absolute. In *Powell v. Katzenbach*, 359 F.2d 234, 235 (D.C.Cir.1965), cert. denied, 384 U.S. 906, 86 S.Ct. 1341, 16 L.Ed.2d 359 (1966), the court stated: "[w]e will assume, without deciding, that where Congress has withdrawn all discretion from the prosecutor by special legislation, a court might be empowered to force prosecutions in some circumstances." This term in *Wayte v. United*

*States,* ___ U.S. ___, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), the Supreme Court stated that prosecutorial discretion is not "'unfettered.' Selectivity in the enforcement of criminal laws is ... subject to constitutional constraints." ___ U.S. at ___, 105 S.Ct. at 1531 (quoting *United States v. Batchelder,* 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979)).

Also this term, in *Heckler v. Chaney,* ___ U.S. ___, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985), the Supreme Court equated an agency's refusal to take requested enforcement action with a prosecutor's decision not to prosecute. After reviewing the numerous reasons why judicial review of such decisions was unsuitable the court went on to say:

> Thus, in establishing this presumption [of the unreviewability of agency action] in the APA, Congress did not set agencies free to disregard legislative direction in the statutory scheme that the agency administers. Congress may limit an agency's exercise of enforcement power if it wishes, either by setting substantive priorities, or by otherwise circumscribing an agency's power to discriminate among issues or cases it will pursue.

___ U.S. at ___, 105 S.Ct. at 1657.

Plaintiffs argue that the language of § 3332(a) is clear and unambiguous: "Any such attorney receiving information concerning such an alleged offense from any other person shall, if requested by such other person, inform the grand jury of such alleged offense, the identity of such other person, and such attorney's action or recommendation." They contend that the duty to present the information is mandatory. Defendants contend that use of such mandatory language is common throughout the criminal provisions of the United States Code and has often been held to permit the exercise of prosecutorial discretion. *See Heckler v. Chaney,* ___ U.S. at ___, 105 S.Ct. at 1657; *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 381 (2d Cir.1973) ("The mandatory nature of the word `required' as it appears in [42 U.S.C.] § 1987 is insufficient to evince a broad Congressional purpose to bar the exercise of executive discretion in the prosecution of federal civil rights crimes."). The resolution of this issue lies in an analysis of the legislative history of **18 U.S.C. § 3332(a)**.

204     *204 The forerunner of **18 U.S.C. § 3332(a)** was introduced to the Senate on January 16, 1969 as part of Title I of the Organized Crime Control Act, S.30. The purpose of the Act was to eradicate organized crime. To accomplish this aim S.30 was designed to strengthen and vitalize the various legal tools available to the government in the evidence gathering process. Title I of the Act contained proposed amendments to 18 U.S.C. § 3321 *et seq.* concerning grand juries. The purpose of these amendments was to "strengthen" the "broad powers of inquiry" of grand juries.[4] Statement of Sen. McClellan, Hearings before the Subcommittee on Criminal Laws and Procedures of the Committee on the Judiciary, United States Senate, 91st Cong. at 503 (1969) (hereinafter "Senate Hearings"). As Senator McClellan, one of the bill's co-sponsors, explained:

> The jury would not be limited by the charge of the court but would have the right to pursue any violation of the criminal law within its jurisdiction. Citizens would be accorded the right to contact the jury, through the foreman, regarding any alleged criminal act.

*Id.*

In Re Grand Jury Application, 613 F. Supp. 199, Dist. Court, SD New York 1985 - Google Scholar

Case 3:17-mj-04519-TJB Document 14 Filed 12/05/17 Page 46 of 49 PageID: 340

Section 103(a) of the proposed Act contained the antecedent of **18 U.S.C. § 3332(a)**. It provided in pertinent part:

> Section 3324, title 18, United States Code is amended as follows:
>
> § 3324. Powers and duties
>
> * * * * * *
>
> (b) It shall be the duty of each grand jury impaneled within any judicial district to inquire into each offense against the criminal laws of the United States alleged to have been committed within that district which is brought to the attention of the grand jury by the court or by any person.
>
> (c) No person shall be deprived of opportunity to communicate to the foreman of a grand jury any information concerning any such alleged offense or instance of misconduct.

Senate Hearings at 7.

As Senator McClellan explained during the Hearings before Subcommittee No. 5 of the Committee on the Judiciary of the House of Representatives, Ninety-First Congress, Second Session on S.30 (hereinafter "House Hearings") (1969), Title I of S.30 "guaranteed a measure of independence" to the special grand juries it authorized. House Hearings at 82. When pressed by the chairman of the House committee on the "need for granting special grand juries almost complete autonomy from the Federal district court and the U.S. Attorney," Senator McClellan stated: "Congress has ample grounds for determining that a need exists for creation of special Federal grand juries with substantial independence of the prosecutor and court." House Hearings at 118.

Although not the most controversial aspect of the Act, much comment both pro and con was elicited during the House and Senate hearings concerning the provisions of the bill concerning grand juries. The chairman of the House Committee on the Judiciary stated, "[w]ith reference to Title I[,] ... we have opposition expressed from the Judicial Conference of the United States[,].... the New York County Lawyers Association[,] ... the Association of the Bar of the City of New York[,].... the National Association of Counties—United States Conference of Mayors and the American Civil Liberties Union oppose Title I." House Hearings at 177-78.

Title I had powerful supporters as well. In a memorandum submitted to the Senate committee by then Attorney General John Mitchell, the Justice Department voiced its support of Title I:

205

> *205 Proposed section 3324(b) provides that "It shall be the duty of each grand jury impaneled within any judicial district to inquire into each offense against the criminal laws of the United States alleged to have been committed within the district which is brought to the attention of the grand jury by the court or by any person." This provision is a statutory recognition of existing case law holding that the inquisitorial powers of a grand jury are virtually unlimited and that the grand jury can initiate a case on its own and investigate any alleged violation of Federal law within its jurisdiction. See _Hale v. Henkel_, 201 U.S. 43 [26 S.Ct. 370, 50 L.Ed. 652] (1906); _Blair v. United States_, 250 U.S. 273 [39 S.Ct. 468, 63 L.Ed. 979] (1919);

*United States v. Hartke-Hanks Newspapers,* 254 F.2d 366 (C.A.5), cert. denied, 357 U.S. 938 [78 S.Ct. 1385, 2 L.Ed.2d 1551] (1958); *In Re Grand Jury Investigation (General Motors Corp.),* 32 F.R.D. 175 (S.D.N.Y.), appeal dismissed, 318 F.2d 533 (C.A.2), cert. denied, 375 U.S. 802 [84 S.Ct. 25, 11 L.Ed.2d 37] (1963); *United States v. Smyth,* 104 F.Supp. 283 (N.D.Calif.1952); *United States v. Gray,* [sic[*]] 187 F.Supp. 436 (D.C.D.C.1964). Consequently, we can see no objection to this proposal.

> Section 3324(c) provides that no person shall be deprived of opportunity to communicate to the foreman of a grand jury any information concerning any offense against the criminal laws of the United States alleged to have been committed within the district. Section 1504 of title 18, United States Code, presently makes it an offense for anyone to attempt to influence the action or decision of any grand or petit juror upon any matter pending before it by a written communication. This provision is apparently intended to make it clear that no violation of this section is committed by a person who merely communicates to the foreman of a grand jury any information regarding any offenses against the laws of the United States. This provision could well encourage wider public participation in the fight against organized crime and we, therefore, support it.

Senate Hearings at 366-67.

In response to the many criticisms, the provisions of the proposed Act regarding grand juries were amended. During the House Hearings, Edward L. Wright presented the views of the American Bar Association, which were essentially embodied in the Act in its final form.

> The American Bar Association recommends that the proposed right of a private person be modified to require that information possessed by such person be channelled through the appropriate prosecutor, and further, that the prosecutor be required in all cases to communicate his action or recommendation thereon to the special grand jury.

> In suggesting this amendment, we are mindful of and are fully in accord with the well-established tradition of citizen complaints. We know that criminal justice should and must be everyone's concern, and we favor doing everything proper to encourage greater cooperation by citizens in the war against organized crime. On the other hand, we are equally cognizant that the proper role of the professional prosecutor in the United States has been steadily emerging. It is our belief that the prosecutor should properly be vested with the responsibility of professionally screening allegations of criminal misconduct. At the same time, we recommend that there be built into the process a safeguard that will *require* the prosecutor to give an accounting of his screening.

House Hearings at 541 (emphasis in original).

Analysis of the language of the Act as it was finally enacted indicates that Congress intended the United States Attorney to be the channel through which ordinary citizens conveyed information about organized crime to the grand jury. To argue, as the government does (and as Judge Bork did in [206] *Nathan, supra),* that the prosecutor has total discretion in deciding what information to present to

206

the grand jury flies in the face of the Act's legislative history. The section analysis section of the official legislative history of the bill as it was finally passed contains the following language:

> Section 3332(a) makes it the duty of a special grand jury impaneled within any judicial district to inquire into Federal offenses alleged to have been committed within the district. As amended by the committee, alleged offenses may be brought to the attention of the special grand jury by the court or by any attorney appearing on behalf of the United States for the presentation of evidence. Any such attorney who receives information of an alleged offense from any person must, if requested by the person, inform the grand jury of the alleged offense, the identity of the person who conveyed the information, and his own action or recommendation.

2 U.S.Code Cong. & Adm.News, House Report No. 91-1549, 91st Cong.2d Sess. (1970) 4007 at 4015.

Thus both the language of **18 U.S.C. § 3332(a)** and its legislative history indicate that Congress intended to remove the prosecutor's discretion in deciding whether to present information to the grand jury. He retains discretion with respect to how he acts and what he recommends concerning that information.

**18 U.S.C. § 3332(a)** creates a right in every person to have information known by them concerning organized crime to be presented to the grand jury. It provides two ways for this to occur—either the court may bring it to the grand jury's attention or a United States attorney can. Plaintiffs have requested one or the other form of relief, in the alternative.

In order to grant a request for mandamus a court must find: "(1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and peremptory duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." _Lovallo v. Froehlke_, 468 F.2d 340, 343 (2d Cir.1972), _cert. denied_, 411 U.S. 918, 93 S.Ct. 1555, 36 L.Ed.2d 310 (1973).

Plaintiffs have urged me to request the grand jury to hear their evidence against the defendants. Although a judge may present evidence to a grand jury both under common law, see _O'Bryan v. Chandler_, 352 F.2d 987 (10th Cir.1965), and pursuant to the language of **18 U.S.C. § 3332(a)**, I decline to do so. The legislative history of Section 3332(a) suggests that Congress envisioned the United States Attorney's office as the primary channel of information to the grand jury. In a busy district such as this, moreover, it is the United States Attorney and not the individual district judge who is familiar with, and in fact sets, the schedules of the grand juries which have been impanelled in the district. Any effort by myself to bring plaintiffs' information to the attention of a grand jury would necessarily be channeled through the United States Attorney.

Since the United States Attorney has been requested to present certain information to the grand jury he must do so. I will not relieve him of a duty which Congress has seen fit to impose. **18 U.S.C. § 3332(a)** imposes a "plainly defined and peremptory duty" on the part of the United States Attorney to present the plaintiffs' information concerning the alleged wrongdoing of the other defendants to the grand jury.

When first presented with plaintiffs' information in February, the United States Attorney's Office declined to act. It cited its heavy caseload, the need to conduct

In Re Grand Jury Application, 617 F.Supp. 199, Dist. Court, SD New York 1985 - Google Scholar    Filed 12/05/17   Page 49 of 49 PageID: 343

Case 3:17-mj-04519-TJB   Document 14

its own investigation to satisfy internal policies and the need to obtain the approval of the Justice Department before proceeding, and concluded that the chances of commencing prosecution of the other defendants named herein before the statute of limitations ran in May were almost non-existent. The substantial work already done by plaintiffs' attorneys in preparing this case and the apparent willingness of the alleged victims to come forward and testify should greatly facilitate the investigation *207 of plaintiffs' allegations by the grand jury. Although the statute does not specify in what way the United States Attorney should present information to the grand jury, under the circumstances of this case and in the interests of efficiency and justice, I strongly urge the United States Attorney to allow plaintiffs' attorney, Mr. Piccoli, to appear before the grand jury as a witness. I note, in any event, that this order does not invade the realm of prosecutorial discretion. The statute requires that the information proffered by plaintiffs, and the identity of plaintiffs, be brought to the attention of the grand jury. This order requires no more.

Plaintiffs' request for a writ of mandamus is granted.

SO ORDERED.

[1] Plaintiffs have also included a request that I appoint "a special prosecutor as the Court's own representative for presenting the pertinent details of the criminal wrongdoing of [certain named defendants] to the Grand Jury for its consideration." They cite no statute or case law authorizing such relief but rely instead on the court's "inherent" power. The only statutes dealing with the appointment of special prosecutors by the court (now called "independent counsel") all relate to the Ethics in Government Act, 28 U.S.C. § 591 et seq., which is not relevant to this case. Plaintiffs have not briefed this issue. I do not believe the inherent powers of the court go so far. See Matter of Application for Appointment of Independent Counsel, 596 F.Supp. 1465 (E.D.N.Y.1984). See also Fed.R. Crim.P. 42(b).

[2] Plaintiffs also argue that the Sedima requirement of a prior conviction gives them a direct financial interest in seeking prosecution and therefore, standing. That argument fails because of the unfettered discretion of the government's attorneys in deciding whether to prosecute.

[3] Section 591(a) was amended in 1983 by Pub.L. 97-409 § 4(a)(1), which substituted "information sufficient to constitute grounds to investigate" for "specific information" after "the Attorney General receives." In light of the holding of Nathan where the court relied on the lack of "specific information" to deny mandamus, it seems apparent that the amendment to Section 591(a) was designed to make it clear that the decision to investigate would rest with the Attorney General who would have discretion to decide whether the information received constituted "sufficient ... grounds."

[4] In its final form the Act did not simply amend the United States Code provisions concerning grand juries but created new sections requiring the appointment of special grand juries in all judicial districts with over four million inhabitants. These special grand juries were to be devoted to investigating organized crime. They had all the powers of regular grand juries plus the explicit authorization to issue reports concerning either organized crime conditions in the district or malfeasance in office by a public official.

[*] Editor's note: citation should be 87 F.Supp. 436 (D.D.C.1949).