RECEIVED

Lidya Maria Radin
c/o Friendly
203 W. 107 Street, # 8A
New York, New York 10025
Mobile: 516-445-4390; Email: radin.lidya2@gmail.com

13-April-2018

APR 13 2018

AT 8:30
WILLIAM T. WALSH M
CLERK

ORiginal for
SCANNing + filing

Magistrate Tonianne J. Bongiovanni
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street, Room 6052; courtroom 6E
Trenton, New Jersey 08608
Telephone: 609-989-2040; Email: tjb_orders@njd.uscourts.gov; teresa_weiler@njd.uscourts.gov

**RE:** ( 1 ) Motion to Dismiss/ Motion for Summary Judgment as there are no triable issues of fact, ( 2 ) Motion to Preclude Testimony for the Government's failure and refusal to provide Discovery, & ( 3 ) Motion to Vacate is unopposed, this Court has a ministerial duty to sign the proposed Order, attached, in USA v. Radin, docket no: 17-mj-4519.

Madam:

--I move this Court, not you as you have disqualified yourself by breaking the law in your 4/11/2018 Order, but, this Court for an Order to Dismiss/ Order for Summary Judgment because there are no triable issues of fact.

--The Government sought to charge Me with violating a policy concerning disturbances, 41 C.F.R. sec. 102-74.390:
All persons entering in or on Federal property are prohibited from loitering, exhibiting disorderly conduct or exhibiting other conduct on property that -

(**a**) Creates loud or unusual noise or a nuisance;

(**b**) Unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots;

(**c**) Otherwise impedes or disrupts the performance of official duties by Government employees; or

(**d**) Prevents the general public from obtaining the administrative services provided on the property in a timely manner.

--The Government can seek thirty ( 30 ) days imprisonment; 41 C.F.R. sec. 102-74.450: A person found guilty of violating any rule or regulation in this subpart while on any property under the charge and control of GSA shall be fined under title 18 of the United States Code, imprisoned for not more than 30 days, or both.

--The Federal Rules of Criminal Procedure, Rule 58, apply. Rule 58, Petty Offenses and Other Misdemeanors:
        (a) SCOPE.

(1) *In General.* These rules apply in petty offense and other misdemeanor cases and on appeal to a district judge in a case tried by a magistrate judge, unless this rule provides otherwise.

(2) *Petty Offense Case Without Imprisonment.* In a case involving a petty offense for which no sentence of imprisonment will be imposed, the court may follow any provision of these rules that is not inconsistent with this rule and that the court considers appropriate.

(3) *Definition.* As used in this rule, the term "petty offense for which no sentence of imprisonment will be imposed" means a petty offense for which the court determines that, in the event of conviction, no sentence of imprisonment will be imposed.

--As per Magistrate Bongiovanni's 1/3/2018 Order: "Ms. Radin has already outlined much of the discovery she believes is deficient."

--Again, on February 23, 2108, I made Discovery demands, and informed the federal prosecutors, and Magistrate Bongiovanni, that I am a crime victim in New York.

--Magistrate Bongiovanni delayed until 4/11/ 2018 to respond, intentionally.

--In her 4/11/2018 Order Magistrate Bongiovanni broke the law in not taking Judicial Notice. Taking Judicial Notice is mandatory when requested by a party, Me, Federal Rules of Evidence, Rule 201.  In breaking the law, Magistrate Bongiovanni disqualified herself, lost immunity, obligated herself for damages that she inflicted upon Me and taxpayers, and ousted this Court of jurisdiction.

--Nevertheless, Discovery is now closed.

--Sua sponte, of its own violation, this Court, not Magistrate Bogiovanni who disqualified herself by breaking the law, must Order this case dismissed, must Order Summary Judgment because the Government failed to present a case.  The details are as follows.

**--As to the part of the policy that states, "creates a loud or unusual noise or nuisance",** the Government provided no sworn statements, made no showing of probable cause, made no allegations, provided no audio recordings to show a loud or unusual noise or nuisance.  The videos that the Government provided are irrelevant because they have no audio to demonstrate any loud or unusual noise or nuisance.  Also, they only show events outside the coffee shop located on the first floor of the building.  These videos do not show the incident inside the coffee shop where "Keith Holland" accosted, and physically assaulted Me on August 10, 2017 at about 10:15 AM.  In using violence against Me without cause, "Keith Holland" breached the peace.

--I declare under penalty of perjury that Homeland Security Officer Colin L. Mitchell, admitted and confessed on August 10, 2017, that he had no audio recordings to show that I made a loud, or unusual noise or nuisance. I declare under penalty of perjury that Homeland Security Officer Colin L. Mitchell was not present when "Keith Holland" physically assaulted and accosted Me without cause on August 10, 2017, in the first-floor coffee shop as "Keith Holland" breached the peace.

**--As to the part of the policy that states, "unreasonably obstructs the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways, or parking lots",** the Government provided no sworn statements, made no showing of probable cause, named no

witnesses or made any allegations, provided no evidence that I obstructed the usual use of entrances, foyers, lobbies, corridors, offices, elevators, stairways or parking lots.

**--As to the part of the policy that states, "otherwise impedes or disrupts the performance of official duties by Government employees"** , the Government provided no sworn statements, made no showing of probable cause, named no witnesses or made any allegations, provided no evidence that I otherwise impeded or disrupted the performance of official duties by Government employees.

**--As to the part of the policy that states, "prevents the general public from obtaining the administrative services provided on the property in a timely manner,"** the Government provided no sworn statements, made no showing of probable cause, named no witnesses or made any allegations, provided no evidence that I prevented the general public from obtaining the administrative services provided on the property in a timely manner.

--The warrant used to arrest Me on December 12, 2017, is based on Magistrate Goodman's 10/25/2017 Order to Appear. Magistrate Goodman's Order to Appear was obtained through ex-parte communications between AUSA Gribko and Magistrate Goodman, as was already admitted and confessed. Both the Warrant and the Order to Appear on which the Warrant is based are unlawful as they are both based on ex-parte communications.

--Both AUSA Gribko and Magistrate Goodman failed and refused to place their ex-parte communications on-the-record, so that I could rebut them, in violation of due process. By operation of law, Magistrate Goodman's Order to Appear is void, for violation of due process. The warrant that was used to arrest Me in New York on 12/12/2017 is void as well because that warrant is based on Magistrate Goodman's void Order to Appear which is based on ex-parte communications.

--As Magistrate Bongiovanni admitted and confessed, she "became the presiding judge" on December 12, 2017. Magistrate Bongiovanni's excuse that she was not a participant in those ex-parte communications is irrelevant. Magistrate Bongiovanni enforced Goodman's unlawful Order to Appear, and the unlawful warrant that was based on the unlawful Order to Appear. In doing so, Magistrate Bongiovanni is as guilty as Gribko and Goodman. As Magistrate Bongiovanni revealed Magistrate Goodman signed a warrant to arrest Me on December 7, 2017. By operation of law, Magistrate Goodman's warrant is unlawful, because it is based on an unlawful Order to Appear that was obtained through ex-parte communications between AUSA Gribko and Magistrate Goodman. By enforcing an unlawful Order to Appear and an unlawful warrant, Magistrate Bongiovanni conspired and colluded in Honest services fraud, among other crimes against Me and taxpayers. Because Bongiovanni conspired and colluded in Honest services fraud, and due process violations all her Orders are void. I do not have to obey them. She has no power to enforce; I have no obligation to obey.

--On 12/12/2017 this unlawful warrant was used to take Me by unlawful force to New Jersey. On December 12, 2017 I demanded a probable cause hearing in front of Magistrate Bongiovanni. I did not know, then, nor do I know now, how Bongiovanni became the presiding judge in this case. There are no Orders on the docket removing Goodman and replacing Goodman with Bongiovanni as evidence that the docket sheet is a fraud.

--"Keith Holland" , the man who accosted Me, provoked an incident, and arrested Me without a warrant on August 10, 2017, inside a coffee shop, on the first floor of the federal courthouse, made no statements sworn to under penalty of perjury to support a finding of probable cause, see Statement of Probable Cause.

--Magistrate Bongiovanni's could make no finding of probable cause on 12/12/ 2017, because AUSA Gribko provided no statements sworn to by "Holland" under penalty of perjury.

--Colin L. Mitchell, the Homeland Security Officer, had no first-hand, personal knowledge and could swear to nothing under penalty of perjury.

--AUSA Gribko has made no representation other than that on August 10, 2017, "Keith Holland" provoked an incident, and used violence against Me.

-- "Keith Holland " breached the peace, on August 10, 2017, as admitted and confessed.

--As admitted and confessed, "Keith Holland" breached the peace, used violence against Me, a physically-disabled woman, coming to the courthouse on August 10, 2017, with irrefutable documentary evidence to provide to the Burg criminal defense team that shows that the prosecutor, **AUSA Gribko**, did not provide Brady material ( Brady v. Maryland, 373 U.S. 83 ) to Defendant Burg, an honorably discharged Marine.

--For the sake of argument, even giving "Keith Holland" the benefit of every doubt, being "disruptive" and "belligerent" when accosted and physically assaulted without cause by a so-called peace officer, "Keith Holland " does not rise to the level that would give so-called peace officer "Keith Holland" the authority to arrest Me without a warrant and imprison Me as "Holland" did on August 10, 2017, because I did not breech the peace, see A Treatise on Arrest and False Imprisonment by Charles A. Weisman, provided here for ease of reference. "Keith Holland" breached the peace by using violence against Me. *Take Judicial Notice, Federal Rules of Evidence, Rule 201, mandatory when requested by Me, a party, that "Impudent, abusive or offensive language, addressed to a peace officer does not tend to breach the peace, even though it may provoke the officer to anger" Pavish v. Meyers,* 129 Wash. 605, 225 Pac. 633,634 (1924); *Salem v. Coffey,* 113 Mo. App. 675, 88 S.W. 772 (1905); *People v. Lukowsky,* 94 Misc. 500, 159 N.Y.S. 599 (1916);*Myers v. Collel,* 1 Utah 2d 406, 268 P.2d 432, 434 (1954); **see A Treatise on Arrest and False Imprisonment by Charles A. Weisman, page 29, provided here for ease of reference.**

--Because "Holland" broke the law, "Holland" has no credibility on which to base a finding of probable cause.

## Motion to Preclude testimony for the Government's failure to provide Discovery

--I move this Court, not you as you have disqualified yourself by breaking the law in your 4/11/2018 Order, but, this Court for an Order to Preclude testimony by "Keith Holland" for the Government's refusals to provide Discovery.

--From my February 23, 2018 Discovery demand, page 5, " I demand all documentation in connection with Keith Holland's claim that he is a Deputy U.S. Marshal: his deputization papers,

his badge number and identification, his training in connection with the use of force, the approvals signed off by the Newark U.S. Attorney's office, and the DOJ, the contact information for his direct supervisors. " Magistrate Bongiovanni's handwritten notes that discovery is "denied, evidence to be presented at trial " is evidence of trial by ambush. I have the due process right and am entitled to this discovery material in advance of trial.

--Also, from my February 23, 2018 Discovery demand, page 5, " In connection with prosecutor Gribko's ongoing duty, please have AUSA Gribko identify all individuals having first-hand knowledge of any material fact associated in any way with this case and, with regard to each such man or woman, state what they know about each such fact and how that man or woman came to know each such fact. " Magistrate Bongiovanni's handwritten notes that discovery is "denied, evidence to be presented at trial " is evidence of trial by ambush. I have the due process right and am entitled to this discovery material in advance of trial.

--From page 6 of my February 23, 2018 Discovery demand: " And, I demand access to the secret, electronic data-base at the U.S. Attorney's office in New Jersey and New York in connection with Central Violations Bureau tickets against Me." Magistrate Bongiovanni's handwritten notes that discovery is "denied, evidence to be presented at trial " is evidence of trial by ambush. I have the due process right and am entitled to this discovery material in advance of trial.

--From page 3 of my February 23, 2018 Discovery demand: "Issue # 2:  Take Judicial Notice that there is no summons and no arrest warrant filed in this case that lead to my being brought by force to federal district court in Trenton, New Jersey on 12/12/2017. I demand to see an arrest warrant and the sworn statements on which it is supposed to be based.  There is no arrest warrant filed in this case, and no arrest warrant was provided to Me. "  **The docket sheet, itself is a fraud.**

--From page 3 of my February 23, 2018 Discovery demand: " A mandatory hearing pursuant to taking Judicial Notice of the records of this Court,  Federal Rules of Evidence, Rule 201. In connection with the February 20, 2018 deadline, there is no reason for AUSA Gribko to continue to defraud the United States in this malicious prosecution against Me.  As well as I could, given that I am a crime victim, dispossessed of my home without due process, and in addition to other paperwork, I diligently prepared a **Request to take Judicial Notice of the records in your own court, enclosed,** because the records in this Court show the prosecutor's witnesses have no credibility: Keith Holland, Colin L. Mitchell, and Lourdes Timberman broke the law. Because Holland, Mitchell, and Timberman broke the law, they, and everyone involved in the unwarranted assault on Me on August 10,2017 in your Courthouse, have no credibility. A hearing is mandatory when requested by a party, Me, pursuant to the Federal Rules of Evidence, Rule 201, judicial notice. As I am supposed to do, I contacted my adversary, AUSA Gribko, to obtain a mutually agreeable date for this mandatory hearing.  I regret to report that AUSA Gribko obstructed justice by refusing to provide a hearing date, and transferred my phone call to Special Agent James.   Apparently, Special Agent James tried to threaten Me based on my doing what is required of Me in litigation." Magistrate Bongiovanni's handwritten notes that discovery is "denied, evidence to be presented at trial " is evidence of  trial by ambush. I have the due process right and am entitled to this discovery material in advance of trial.

## ARGUMENT

--The Government must be preclude from offering any evidence, testimony, or argument because it failed and refused to respond to Defendant's legitimate discovery requests in violation of due process, designed to elicit relevant information. The Government has prejudiced Defendant's ability to investigate and counter the Government's false accusations. The Government has offered no substantial reason for its failure to produce. Why would the prosecutor prevent disclosures that would prove the prosecutor's allegations ? Clearly, the prosecutor would only prevent disclosures that would disprove the prosecutor's allegations. There is no doubt that the prosecutor's allegations are false and are being used to force Me into jail because the records that I demanded show the Government's unlawful motive and expose other victims. The Government is engaged in an unlawful S.L.A.P. type suit to silence Me.

In sum, the only witnesses that AUSA Gribko identified is Homeland Security Officer Colin L.Mitchell, and "Keith Holland". Mitchell has no personal, first-hand knowledge, and is an incompetent witness.

The only other witness that AUSA Gribko identified is "Keith Holland" . "Keith Holland" is incompetent, incredible, and breeched the peace by using violence against Me without cause.

I reject Magistrate Bongiovanni's 4/11/2018 Order as a fraud on the Court for a number of misleading statements and because Bongiovanni broke the law, "the Court declines to take Judicial Notice".  This Court, an institution, did not decline to take Judicial Notice. Magistrate Bongiovanni, a living woman, broke the law in refusing to take Judicial Notice, Federal Rules of Evidence, Rule 201, which is mandatory when requested by Me, a party.  AUSA Gribko colluded and conspired in this Honest services fraud.

In connection with Bongiovanni's futile attempts to justify jurisdiction in this case by referencing the Third Circuit's decision in connection with my Writ of Prohibition, take Judicial Notice that Judge Greenaway was a member of the three-judge panel that dismissed my Writ. Take Judicial Notice that Judge Greenaway works and worked for Yeshiva University's law school.  Take Judicial Notice that Yeshiva University stipulated to fraud, federal student loan fraud, discrimination and hate crimes against Me, see trial transcript and stipulations from 2010, already filed in New York State courts, such that Judge Greenaway has a conflict, cannot rule in my case, and that the mandate in connection with the dismissal of my Writ must be recalled. Take Judicial Notice that Yeshiva University was found to discriminate on the basis of religion against those who are not Orthodox Jews like Me and Diane Persky, in the Diane Persky case. Take Judicial Notice that, as per the American B.A.R. association, Judge Greenaway can resign from the federal bench or he can resign from Yeshiva University, but, he cannot continue to work both jobs, because as a federal judge, he cannot be associated with an organization, Yeshiva University, that discriminates. Notwithstanding, by breaking the law herself, Bongiovanni ousted this Court of jurisdiction, irrespective of the Third Circuit.

--Take Judicial Notice, Federal Rules of Evidence, 201, mandatory when requested by Me, a party, of the attached certified transcripts, from the court appearances in New York wherein the Manhattan District Attorney, DA Vance, and his assistants committed a fraud on the court on December 11, 2017. They misrepresented the facts of a wrongful 2010 conviction they obtained against Me to Judge Josh Hanshaft on December 11, 2017. They claimed that that the wrongful 2010 conviction involved Mr. Nzomo, when, in fact, it did not. Take Judicial Notice of the 2010 trial transcript, filed in New York state courts, that shows the wrongful 2010 conviction had

nothing to do with Mr. Nzomo. This fraud on the court in New York was done to make false records, to create yet another layer of fraud, to cover-up the details of federal student loan fraud committed by officials associated with Yeshiva University, and to cover-up, in affirmative acts of fraud, in furtherance of a conspiracy, the stipulations from 2010 wherein officials associated with Yeshiva University stipulated to fraud, discrimination, federal student loan fraud, and hate crimes against Me, and taxpayers.

---Magistrate Bongiovanni delayed until Wednesday, April 11, 2018, to respond to my February 23, 2018, Discovery demands, leaving a mere two business days before Monday, August 16, 2018, the date on which she seeks to impose a trial, by unlawful force.

--Magistrate Bongiovanni's 4/11/2018 Order is void because she broke the law by violating my constitutionally-protected and guaranteed right to due process by refusing to take Judicial Notice when demanded by Me, a party, Federal Rules of Evidence, Rule 201. Magistrate Bongiovanni refused to take Judicial Notice, see top of page 3 of my February 23, 2018 letter/motion wherein she writes in her handwriting "denied, evidence to be presented at trial" and at the bottom of page 3, "denied, evidence to be presented at trial" in connection with my demand that Bongiovanni take Judicial Notice of the records of this Court.

--As a threshold issue, Magistrate Bongiovanni violated my right to due process in connection with taking Judicial Notice, and in ordering a trial and refusing an appropriate adjournment so that she could rush to judgment before I could exercise my right to appeal her void Order to a federal district judge within fourteen days of April 11, 2018, Federal Rules of Criminal Procedure, Rule 58 (g)(2)(A):

> "Interlocutory Appeal. Either party may appeal an order of a magistrate judge to a district judge within 14 days of its entry if a district judge's order could similarly be appealed. The party appealing must file a notice with the clerk specifying the order being appealed and must serve a copy on the adverse party."

This is the heart of Standing Order15-2 which expressly forbids these kind of due process violations in felony cases, and does not expressly exclude misdemeanor cases, as the underlying law is constitutional law and fundamental fairness. There can be no fair trial with Magistrate Bongiovanni and AUSA Gribko. **Accordingly I move this Court to recuse and disqualify Bongiovanni and sanction Gribko.**

**My Motion to Vacate all Magistrate Goodman's Orders is unopposed and must be granted, by operation of law.** Because this Motion went unopposed, my adversary agreed with Me, I won this Motion, and the only duty this Court has is a ministerial duty to sign an Order which is attached.

### Affidavit in Support

1. I declare under penalty of perjury that I am appearing in this case under duress and under threats of violence and that the Government is endangering the welfare of a physically-disabled woman, Me, a felony crime.

2. This Court had no jurisdiction.
3. I committed no crime.
4. This Court is engaged in Human Trafficking against Me, in making Me perform work, namely, compelling Me to litigate under threats of violence and after violence was inflicted upon Me.
5. This Court is engaged in Human Rights violations against Me.
6. I reiterate, repeat, and incorporate herein my statements in connection with this case which I made under penalty of perjury.

Respectfully submitted,

Lidya Radin

**DECLARATION OF SERVICE**

I declare under penalty of perjury that a copy of this filing was mailed to:
Craig Carpenito, U.S. Attorney, U.S. Attonrey's Office, 970 Broad Street
Newark, New Jersey, 07102,Telephone: 973-645-2700; Fax: 973-645-2702.

Lidya Radin   4/13/2018

RECEIVED

APR 13 2018

AT 8:30_____M
WILLIAM T. WALSH
CLERK

Lidya Maria Radin
c/o 203 W. 107th Street, # 8A
New York, New York 10025
Mobile telephone: 516-445-4390; Email: radin.lidya2@gmail.com

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

-------------------------------------------------------------X          Docket: 17-mj-4519

USA,                                                                    **ORDER**

   v.

RADIN

-------------------------------------------------------------X


All Magistrate Goodman's orders in this case are vacated.


Dated:_____


Signed:_____

# A
# TREATISE ON
# ARREST
# AND
# FALSE
# IMPRISONMENT

BY

CHARLES A. WEISMAN

# A TREATISE ON ARREST AND FALSE IMPRISONMENT

*by Charles A. Weisman*

Copyright © Dec., 1993 by C.A. Weisman; 2nd Edition, Dec., 1994; 3rd Edition, Nov., 2004
Published by Weisman Publications • P.O. Box 240844 • Apple Valley, MN 55124

ISBN 1-929205-08-2

PRINTED IN THE UNITED STATES OF AMERICA

# CONTENTS

1. INTRODUCTION ........................................................................... 2

2. DEFINITION OF FALSE IMPRISONMENT ................................... 3
   – What Constitutes False Imprisonment ....................................... 3
   – Length of Time Required ............................................................ 5
   – Damages and Liability ................................................................ 6
   – Malicious Prosecution ................................................................ 7

3. ARREST WITHOUT WARRANT ................................................... 9
   – The Law of the Land .................................................................. 9
   – Summons ................................................................................... 10
   – Complaint .................................................................................. 11
   – Memorandum of Law on Arrest Without Warrant .................... 13

4. BREACH OF THE PEACE & FELONY ARRESTS ........................ 26
   – What is a Breach of the Peace? ................................................ 26
   – Arrests for Breach of the Peace .............................................. 27
   – Threatened Breach of the Peace .............................................. 29
   – Conditions of Felony Arrests ................................................... 31

5. DEFENSES TO UNLAWFUL ARRESTS ...................................... 32
   – Burden Of Proof ....................................................................... 32
   – Good Faith and Probable Cause ............................................... 34
   – Ignorance of Law ..................................................................... 36
   – Guilt of Party Arrested ............................................................ 37
   – Immunity .................................................................................. 38

6. THE USE OF A WARRANT IN ARRESTS .................................. 39
   – Warrant to be in the Possession of the Arresting Officer ...... 39
   – Warrant to be Shown Upon Arrest .......................................... 43
   – Invalid and Unlawful Warrants ................................................ 46

7. BRINGING ARRESTED PERSON BEFORE A MAGISTRATE ...... 49
   – Duty of Officer ......................................................................... 49
   – As a Trespasser Ab Initio ........................................................ 52
   – Detainment is Not a Decision of Arresting Officer ................. 53
   – Arresting and Releasing Without Bringing Before a Magistrate .. 56
   – Defenses ................................................................................... 57

8. DISTORTIONS OF FUNDAMENTAL LAW ................................. 59
   – Due Process Neglected ............................................................ 59
   – Fourth Amendment Argument .................................................. 60
   – Highway Traffic Laws .............................................................. 61
   – Resisting Arrest ....................................................................... 64
   – Handcuffing .............................................................................. 69
   – Post-arrest Booking Procedures (Fingerprinting, etc.) ........... 70
   – Limitations Upon Arrests ......................................................... 72

9. CONCLUSIONS and APPENDIX ........................................... 74, 75

2

1

# INTRODUCTION

This book is about liberty. It is about the lawful and unlawful means by which government acts in depriving an individual of his liberty. History teaches that deprivation of liberty is more often arbitrary and unlawful than it is otherwise. At least this is always the tendency of those who hold executive power. Daniel Webster once stated this problem in these words:

*"The contest for ages has been to rescue liberty from the grasp of the executive power."*

Liberty is taken away or deprived most commonly by arrest and imprisonment. The practice of easy arrests and secret imprisonments has always been an earmark of a despotic executive power. To compound this problem, we have the legislative mills which turn out thousands of new laws every year. The passion of modern legislatures to regulate every facet of the most intimate concerns of every day life is notorious. This would be oppressive enough if administered under the requirements of a warrant or summons. But it becomes doubly intolerable if every zealous officer is authorized to arrest, on sight, every person whom he detects breaking one of these laws. No one can be safe to leave their home or to travel about for fear of being subject to thousands of unknown laws in which he could be instantly arrested for transgressing. One law review writer states the problem as follows:

People no longer live their whole lives in the village in which they were born. They pass freely from place to place, and in transit go through innumerable towns and villages. The risk of being arrested on sight, because one's conduct contravenes some regulation which the wisdom of the local Solons deems necessary, is appalling to any thinking person. It would be impossible to know at what moment one might become amenable to arrest. [1]

A revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of persons and property. The history of our ancestors over the centuries teaches that a people cannot be free where the executive power can arbitrarily arrest or imprison citizens, or ransack at will the properties of the people. The executive power is limited and guided by the 'law of the land,' or 'due process of law.' If it was a restriction upon the King of England, it must be so for every petty officer today.

In many of the treatises on the law pertaining to the rights of citizens, and in many of the older and better court cases, we find the declaration: *"The law is very jealous of the liberty of the citizen."* What law is it that so regards liberty? It is the *Common Law*, and it declares that: *"one who interferes with another's liberty does so at his peril.* [2] This law also prescribes how arrests are to be made, and the restrictions involved.

---

1  *University of Pennsylvania Law Review,* vol. 75, p. 491, April, 1927.

2  *Knight v. Baker,* 117 Ore. 492, 244 Pac. 543, 544 (1926).

2

# DEFINITION OF FALSE IMPRISONMENT

### What Constitutes False Imprisonment

False imprisonment consists of any type of unlawful restraint or interference with the personal liberty of an individual. It basically involves any unlawful violation of the liberty of another. The ancient English legal scholar, Henry de Bracton (1200-1268) tells us that false imprisonment is one of the oldest violation of rights known:

> Forcefully to deprive a man of freedom to go wheresoever he may is clearly a trespass. False imprisonment was indeed one of the first trespasses recognized by the Common Law.[1]

False imprisonment is classified as a tort under the common law, and also as a crime.[2] It has been labeled as a tort, a trespass, an assault, a wrong, a damage, and an injury, giving one cause to bring suit against another for a remedy. Depriving a person of their liberty is legally no different than depriving a person of their property — a theft of liberty is a wrong by which remedy can be had, just as is the case with the theft of property.

False imprisonment is a great offense due to the high regard the law has for liberty. In Chitty's *Practice of the Law* it states:

The infraction of personal liberty has ever been regarded as one of the greatest injuries. The injuries to liberty are principally termed *"false imprisonments,* or *malicious prosecutions."*[3]

Unlawful detention or deprivation of liberty is the basis of an action for the tort of false imprisonment. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention.[4] Thus the only essential elements of the action are: (1) Detention or restraint against one's will; and (2) The unlawfulness of such detention or restraint.[5]

In his *Treatise on the Law of Torts,* Judge Cooley states:

> False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing, by force or threats, an unlawful restraint upon a man's freedom of locomotion.[6]

Blackstone, in his *Commentaries on the Law,* (3 Bl. Comm. 127) states on this matter:

> Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets.[7]

1   *Street's Foundation of Legal Liability,* vol. 1, p. 12, citing: *Bacton's Note Book,* vol. II, p. 314 (1229), pl. 465.

2   *Kroeger v. Passmore,* 36 Mont. 504, '93 Pac. 805, 807 (1908). *McBeath v. Campbell,* 12 S.W.2d 118, 122 (Tex. 1929).

3   Joseph Chitty. Esq., *The Practice of the Law,* vol. I, Chap. II, p. 47, London, 1837.

4   *Hanser v. Bieber,* 271 Mo. 326, 197 S.W. 68, 70 (1917).

5   *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952); *Sinclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E.2d 76, 79 (1940); *Southern Ry. Co. in Kentucky v. Shirley,* 121 Ky. 863, 90 S.W. 597, 599 (1906).

6   Thomas Cooley, *Treatise on the Law of Torts,* vol. 1, 4th Ed. § 109, p. 345; *Meints v. Huntington,* 276 F. 245, 248 (1921).

7   Cited by: *Fox v. McCurnin,* 205 Iowa 752, 218 N.W. 499, 501 (1928); *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952).

4

Thus any type of detainment or confinement of a person, or restriction or deprivation of their liberty or freedom of locomotion, where he is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an "imprisonment." The only question thereafter is whether or not the imprisonment is "false." The word "false" comes from the common law and is synonymous with "unlawful." A false arrest is one means of committing a false imprisonment.

In describing false imprisonment as being the unlawful restraint of the liberty of the citizen, or of the primary right of freedom of locomotion, the Supreme Court of Idaho also stated:

> Imprisonment is any restraint of the personal liberty of another; and prevention of his movements from place to place, or his free action according to his own pleasure and will; * * * it is false imprisonment when this is done without lawful authority. [8]

In reviewing several "text-book" definitions on false imprisonment, the Supreme Court of North Carolina stated:

> False imprisonment is the unlawful and total restraint of the liberty of the person. The imprisonment is false in the sense of being unlawful. The right violated by this tort is 'freedom of locomotion.' It belongs historically to the class of rights known as simple or primary rights. * * * The theory of law is that one interferes with the freedom of locomotion of another at his own peril. [9]

A rather complete description of what does and does not constitute false imprisonment was given by the Supreme Court of Kansas as follows:

> False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person or to his character or reputation; nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention; nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard. [10]

False imprisonment exists not only by words or acts that one *fears* to disregard, but also by such acts and measures that he *cannot* disregard. No fear of disobedience need to exist. If someone causes a situation that makes it impossible for another to exercise their liberty or locomotion, it is a false imprisonment.

False imprisonment is the name of the category for those torts that unlawfully deprive or interfere with the liberty of a person. Under this category, the unlawful arrest is the most common type of wrong committed. Another common way in which a wrong of this nature occurs is by the unlawful detention of a person in a room, jail, or other location. Definitions of false imprisonment usually come from unlawful restraints of this nature:

---

8   *Griffin v. Clark*, 55 Idaho 364, 42 P.(2d) 297, 301 (1935); citing, *Cordell v. Standard Oil Co.*, 131 Kan. 221, 289 P. 472, 473 (1930); *Johnson v. Tompkins*, 13 Fed. Cas. 840, 853, No. 7,416 (1833).

9   *Riley v. Stone*, 174 N.C. 588, 94 S.E. 434, 440 (1917).

10  *Garnier v. Squires*, 62 Kan. 321, 62 Pac. 1005, 1006 (1900); *Kroeger v. Passmore*, 36 Mont. 504, 93 Pac. 805, 807 (1908).

False imprisonment has been well defined to be a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without any legal authority.[11]

The law sets such a high value upon the liberty of the citizen that even an attempt to unlawfully arrest is esteemed a great provocation.[12]  All the authorities agree that an arrest may be made either with or without any physical force or actual touching by the officer.[13]  Thus any illegal restraint of one's personal liberty by the act of another, gives that person a cause of action for false imprisonment against the one causing the illegal restraint.  Prima facie any restraint put by fear or force is unlawful.

False imprisonment is necessarily a wrongful interference with the personal liberty of an individual usually made by an arrest, and physical custody or restraint is not essential to the effectuation of an arrest.  So if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such person is deprived of his liberty, and if the act of the officer is unlawful, it is false imprisonment.  In all cases in which there is no physical touching or seizure, nor any resistance, the intentions of the parties to the transaction are to be considered.  In such a case there must have been intent on the part of one of them to arrest or restrain the other, and intent on the part of such other to submit,

under the belief and impression that submission was necessary.[14]

The following definitions will provide further insight into the nature and elements of false imprisonment:

False imprisonment is the unlawful restraint by one person of the physical liberty of another, and as here used the word "false" seems to be synonymous with unlawful.[15]

Any exercise of force, or expressed or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment.[16]

False imprisonment is the unlawful arrest or detention of a person, without warrant, or by an illegal warrant, or a warrant illegally executed.[17]

Any restraint, however slight, upon another's liberty to come and go as he pleases, constitutes an arrest.[18]

### Length of Time Requirement

The tort or wrong of false imprisonment occurs the instance that one is restrained in the exercise of their liberty.  There is no *unreasonable length of time* for a restraint before the tort can be claimed.

False imprisonment at common law and elsewhere consists in the unlawful detention of the person of another for any

---

11  *Riegel v. Hygrade Seed Co.*, 47 Fed.Supp. 290, 294 (1942).

12  *Giddens v. State*, 154 Ga. 54, 113 S.E. 386, 388 (1922).

13  *McAleer v. Good*, 216 Pa. 473, 65 Atl. 934, 935 (1907).

14  *Johnson v. Norfolk & W. Ry. Co.*, 82 W.Va. 692, 97 S.E. 189, 191 (1918).

15  *Mahan v. Adams*, 144 Md. 355, 124 A. 901, 904 (1924).

16  *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 139 S.E.2d 199, 201 (1964).

17  *Noce v. Ritchie*, 155 S.E. 127, 128 (W.Va. 1930)

18  *Turney v. Rhodes*, 42 Ga.App. 104, 155 S.E. 112 (1930).

6

time, whereby he is deprived of his personal liberty. [19]

Where two people are traveling in a car and stopped by police, and the party not driving is put in the police car and told to wait, the officer doing so is guilty of false imprisonment. Even though the the person was in the police car for less than a minute, it was an arrest, as the officer had no authority for confining him in the car. Even where police officers stop a moving vehicle for a brief detention, it is sufficient to constitute an arrest. [20] Where one is told to stay in their car by an officer, though it be for only ten seconds, it is an arrest. Time duration is not a factor in making an arrest.

> False imprisonment is defined as an act which, directly or indirectly, is a legal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other. [21]

When one is approached by an officer and questioned about his identity and actions, this is only an *accosting*, not an *arrest*. [22]

### Damages and Liability

One who interferes with another's liberty of locomotion does so at his own peril. All who do so without lawful authority can be sued for the trespass upon liberty and loss of time. It thus is a very serious thing to deprive a person of their liberty.

Since false imprisonment is a wrong suffered by a person, that person is entitled to receive a remedy for damages. Not only is a person entitled to receive a remedy for the deprivation of his liberty, but also for any other damages that are a result of that deprivation.

False imprisonment was an indictable offense at common law, and relief by the party aggrieved was obtained by an action for trespass *vi et armis* (with force & arms). [23]

The illegal arrest of a person without a warrant, or under an invalid warrant, entitles him to compensation for the damages sustained by reason of the false or unlawful imprisonment.

> The general rule of damages in cases of false imprisonment is that the person causing a wrongful imprisonment is liable for all the natural and probable consequences thereof. The plaintiff is entitled to recover damages for what the party wrongfully did. * * * In Murphy v. Countiss, 1 Harr. (Del.) 143, in an action for trespass, assault and battery, and false imprisonment, the court held that the plaintiff could recover, not merely for the time the constable was bringing him to jail, but for the whole period of his imprisonment. And in Mandeville v. Guernsey, 51 Barb (N.Y.) 99, the court said: "The arrest being wrongful, the defendant is liable for all the injurious consequences to the plaintiff which resulted directly from the wrongful act." [24]

Unlawful interference with or injuries to the liberty of a citizen is a violation of his natural, inherent and absolute rights, which damage results as a legal consequence. [25]

19 *Sinclair Refining Co. v. Meek*, 62 Ga.App. 850, 10 S.E. 76, 79 (1940), citing: 3 Bl. Com. 127; 12 *Amer. & Eng. Ency. of Law*, 721; 19 Cyc. 319.

20 5 *American Jurisprudence*, 2d, "Arrest," § 1, p. 696.

21 *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 92 (1952).

22 Cornish v. State, 215 Md. 64, 137 Atl.2d 170, 173 (1957).

23 *Meints v. Huntington*, 276 Fed. 245, 249 (1921), citing: 3 Blackstone, Com. 127, 4 Blackstone, Com. 218.

24 *Knickerbocker Steamboat Co. v. Cusack*, 172 Fed. 358, 360-61 (1905).

25 *Meints v. Huntington*, 276 Fed. 245, 248 (1921), citing: *Adler v. Fenton*, 24 How (65 U.S.) 407, 410 (1860).

A false imprisonment generally includes an assault and battery, and always, at least, a technical assault.[26]   An unlawful arrest, imprisonment and prosecution of a person can cause that person many damages, including bodily pain, great physical inconvenience and discomfort, loss of time, mental suffering, injury to reputation, distress or anguish, humiliation of mind, shame, public ridicule, invidious publicity, and public disgrace. Some of these damages overlap to some degree but all can and have been claimed in false imprisonment suits.

Upon the subject of damages, the law specifies two kinds of damages or divides them into two classes. There are what are called "actual damages," then there are what are called "punitive damages."

Actual damages are such compensation for the injury as would follow from the nature and character of the act. They are the damages for wrongs received and injuries done when none were intended. In a false imprisonment they could include the pain and suffering which the average citizen would be supposed to suffer under such circumstances. They further can include the physical discomfort and sense of shame, wrong and outrage. These are also called compensatory damages as they compensate the injured party for the actual injuries sustained, and no more.

Punitive damages are those that grow out of the wantonness or atrocity, or aggravated by the act. They are the injuries and sufferings that were intended, or occurred through malice, carelessness or negligence amounting to a wrong so reckless and wanton as to be without excuse.[27]   These are also called exemplary damages.

Anyone who assists or participates in an unlawful arrest or imprisonment is equally liable for the damage caused. Thus where a man was illegally arrested by a police officer, and was placed in a patrol wagon in which he was taken to the central station, it was held that the two officers in charge of the patrol wagon were liable, along with the arresting officer, for false imprisonment.[28]

## Malicious Prosecution

In many cases of imprisonment or wrongful arrests, there has often been a misunderstanding made between the charges of false imprisonment and that of malicious prosecution. While both may often involve a restraint of one's liberty, the two charges are not interchangeable or synonymous.

There is a fundamental difference between these two charges. They are made up of different elements, enforced by different forms of action, are governed by different rules of pleading, evidence, and damages, and are subject to different defenses.[29]   One description of malicious prosecution is as follows:

> Malicious prosecution is an action ex delicto for the recovery of damages which have proximately resulted to person, property, or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and

26   *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 139 S.E.2d 199, 201 (1964). It has been said that, "An illegal arrest is an assault and battery," *State v. Robinson*, 145 Me. 77, 72 A.(2d) 260, 262 (1950).

27   *Ross v. Leggett*, 61 Mich. 445, 28 N.W. 695, 697 (1886).

28   *Cook v. Hastings*, 150 Mich. 289, 114 N.W. 71, 72 (1907).

29   *Snyder v. Thompson*, 134 Iowa 725, 112 N.W. 239, 241 (1907); 35 C.J.S., False Imprisonment, § 4, p. 625.

8

with malice. In an action of this type the burden rests upon the plaintiff (the one bringing the suit) to establish each and all of the following propositions before being entitled to recover, to wit: (1) He was prosecuted in a criminal proceeding or civil suit; (2) Defendant instigated such prosecution; (3) The prosecution terminated favorable to the accused; (4) Defendant acted without probable cause; (5) Defendant acted with malice; and (6) Damages that were caused.[30]

In Indiana a case arose where a man sued several officers for unlawfully arresting and imprisoning him in the county jail, and without any charge preferred against him. The defendants insisted his complaint was bad as it did not allege that the imprisonment was malicious and without probable cause. The State Supreme Court rejected this claim:

> There is a marked distinction between malicious prosecution and false imprisonment. If the imprisonment is under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution. If it has been extra-judicial, without legal process, it is false imprisonment.[31]

An arrest or imprisonment can be malicious or false, but not both. In a case of malicious prosecution the arrest or detention is procured from malicious motives and without probable cause, but was done under lawful process; whereas in false imprisonment the detention is without proper legal authority.[32] One may be legally arrested for some alleged reason, but done maliciously. If he is found to be not guilty he then has a case for malicious prosecution but not false imprisonment. If the arrest is not pursuant to legal forms of the law, then whether he is guilty or not he has a case for false imprisonment but not malicious prosecution. If this is done with malice it would add punitive damages to the suit.

In describing the distinction between these two charges, the Supreme Court of Oregon stated that foundation of the cause of action for false imprisonment is the right which even a guilty man has to be protected against any unlawful restraint of his personal liberty; while a malicious prosecution case is founded upon the right of an innocent man to be compensated in damages for any injury he may sustain when a groundless charge is brought against him, even though such charge may be presented and prosecuted in accordance with the strictest forms of law.[33]

In other words, the want of authority is an essential element in an action for false imprisonment. Whereas malice and want of probable cause are the essentials in an action for malicious prosecution.[34]

Somewhat different to the wrong of malicious prosecution is the charge of abuse of process, which is the misuse of legal process for an ulterior purpose, in which malice or ill will may also be a factor.

The term malicious arrest is used in some cases instead of malicious prosecution, but the latter is broader in scope.

---

30  *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 91 (1952); *Cox v. Caskio*. 96 So.2d 872, 874 (1957).

31  *Colter v. Lower and Others*, 35 Ind. 285, 286-87, 9 Am. Rep. 755 (1871).

32  *Stallings v. Foster*, 119 Cal.App.2d 614, 259 P.2d 1006, 1009 (1953).

33  *State v. Williams*, 45 Ore. 314, 77 Pac. 965, 969, (1904).

34  *Roberts v. Thomas*, 135 Ky. 63, 121 S.W. 961, 962 (1909).

# 3

# ARREST WITHOUT WARRANT

### The Law of the Land

The authority to arrest without warrant was rather limited and well defined at common law — a law which has been made part of our constitutional law in the due process provisions. The common law rule on arrests is based on experience and common sense.

As a general rule at common law, an arrest could not be made without a warrant. Thus the right to arrest a person without a warrant is an exception to the general rule. This simple rule was expressed by Justice Carpenter, in delivering an opinion for the Supreme Court of Michigan, as follows:

> The law governing this case is elementary. Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon or is about to commit a felony, a police officer has no authority to arrest without a warrant.[1]

The objective in this law was to have a balance between preserving liberty and preserving the peace. Those who committed the most heinous crimes, that being felonies, were a threat to the safety of society and could be summarily deprived of their liberty by arrest. Those committing a breach of the peace could also be summarily arrested, not for apprehension as a criminal, but to preserve the peace. But for other offenses, summary arrests had to yield to the liberty of the citizen. The liberty of citizens is too sacred to be left to the arbitrary will of men.

Every one knows what felonies are. The most common felonies are murder, rape, kidnaping, sodomy, armed robbery, abortion, pedophilia, treason, and arson. A breach of the peace is also obvious and well known. Therefore everyone's liberty was safe since all knew for what reason they could or could not be arrested. But where is the safety in one's liberty if they are to be subject to every ordinance or law that legislative bodies may choose to enact? or if the law on arrests can be changed by statutes?

By the due process clause, the common law governs what the law on arrest is in this land, and where it exists the most statutes can be is declaratory of the common law. If there is no direct language in the constitution directing what procedure or process is to be followed, the common law is to be the due process of law followed, not a legislative statute or city ordinance. Officers who do not abide by this law are trespassers and are guilty of false imprisonment.

The following is some material to help the citizen in protecting his liberty from unlawful encroachment by executive officers. First, to initiate a suit against one who unlawfully deprives you of your liberty, there is an example of a "Summons" and a "Complaint" which need to be served upon the defendant and the court. There is also a "Memorandum of Law" on the subject of *Arrest Without Warrant* which is legal proof of the law that has existed for hundreds of years on this matter.

---

1   *Cook v. Hastings*, 150 Mich. 289, 114 N.W. 71, 72 (1907).

10

**STATE OF MINNESOTA**                              **DISTRICT COURT**

**COUNTY OF HENNEPIN**                    **FOURTH JUDICIAL DISTRICT**

| | | |
|---|---|---|
| Charles A. Weisman, | ) | Court File No. _____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **SUMMONS** |
| Mark L. Fahning, | ) | |
| Defendant. | ) | |
| | ) | |

TO:  Defendant above-named:

YOU ARE HEREBY SUMMONED and required to serve upon the Plaintiff an Answer to the Complaint which is herewith served upon you within twenty (20) days after service of this Summons upon you, exclusive of the day of such service. If you fail to do so, Judgment by Default will be taken against you for the relief requested in the Complaint.

Dated:  August 23, 1993

Charles A. Weisman,
Plaintiff
11751 W. River Hills Dr. #107D
Burnsville, Minnesota

STATE OF MINNESOTA                                    **DISTRICT COURT**

COUNTY OF HENNEPIN                               **FOURTH JUDICIAL DISTRICT**

| | |
|---|---|
| Charles A. Weisman, )<br>     Plaintiff, )<br> )<br>   vs. )<br> )<br>Mark. L. Fahning, )<br>    Defendant. )<br>               ) | Court File No. _____<br><br><br>**COMPLAINT** |

Plaintiff for his complaint against Defendant states and alleges:

1. On September 30, 1992, Plaintiff was traveling in his automobile on a public highway called I-35W, between Richfield and Minneapolis, going northbound when stopped by the Defendant acting as a Highway Patrolman, an employee of the State of Minnesota.

2. The Defendant asked Plaintiff to see his "driver's license." The Plaintiff explained that he is not a licensee under any board or commission and is not required to be a licensee. The Defendant insisted that Plaintiff must have the said license.

3. The Defendant then arrested, searched, and handcuffed the Plaintiff, without warrant, and over his objections that Defendant's acts were in violation of Plaintiff's rights and the constitutional provisions of due process of law.

4. The Defendant gave no specific charges to the Plaintiff for his being stopped or for the arrest, nor did he advise him of his rights, as shown in the Defendant's "field report," which contained only traffic misdemeanor charges. A copy of this report and an official "complaint" was received by Plaintiff two months after the arrest.

5. The Defendant brought the Plaintiff to the Hennepin County Jail where the Defendant knew that the Plaintiff would be subject to "booking," which included fingerprinting, photographing, and confinement for an indefinite period of time, and possibly be subject to other types of assaults and batteries.

6. Further, the Plaintiff, by his own admission, made no attempt to bring the Defendant before a magistrate or judge, when he had full opportunity to do so, being that the arrest occurred about 10:15 AM on a Wednesday.

7. The defendant, acting on his own accord, and without warrant or court order, had the Plaintiff's automobile towed to an impound lot, and put it on a "hold" order.

12

## COUNT I
## FALSE IMPRISONMENT

8. Plaintiff re-alleges paragraphs 1 through 7.

9. On September 30, 1992, the Defendant, without warrant or due process of law (Minn. Const., Art. 1, Sec. 7), unlawfully arrested the Plaintiff, and acting contrary to law, did falsely imprison the Plaintiff, depriving him of his liberty.

10. As a result of the Defendant's false imprisonment of the Plaintiff, the Plaintiff had his right to liberty violated, suffered mental anguish, a loss of time and wages in his work, and a discredit in his reputation by his failure to attend a scheduled meeting.

## COUNT II
## FALSE IMPRISONMENT

11. Plaintiff re-alleges paragraphs 1 through 7.

12. The defendant, upon arresting Plaintiff, brought him to the county jail for the purpose of booking and detaining him, and, by his own admission, made no attempt to bring the Plaintiff before a proper Judge or Court as is required by due process.

13. The acts of the Defendant in deciding how to deal with the Plaintiff after his arrest, and failing to take him to a Judge or Court to so decide, constitute false imprisonment by the Defendant under the law of the land (Minn. Const., Art. 1, Sec. 2).

## COUNT III
## ASSAULT AND BATTERY

14. Plaintiff re-alleges paragraphs 1 through 7.

15. Due to the unlawful acts of the Defendant, the Plaintiff suffered a series of assaults and batteries upon his person, including arrest, handcuffing, imprisonment, physically searched, forced fingerprinting and booking procedures, and harassment.

THEREFORE, Plaintiff demands Judgment against Defendant, as his liability appears, in the sum of Ten Thousand Dollars ($10,000), together with the costs and disbursements.

Dated:  June 24, 1993

Charles A. Weisman,
Plaintiff
11751 W. River Hills Dr. #107D
Burnsville, Minnesota

STATE OF MINNESOTA                            **DISTRICT COURT**

COUNTY OF HENNEPIN                            **4th JUDICIAL DISTRICT**

| | |
|---|---|
| Charles A. Weisman, | Case No. 93-12184 |
| Plaintiff, | |
| | |
| vs. | MEMORANDUM OF LAW |
| | ON ARREST WITHOUT |
| Mark L. Fahning, | WARRANT |
| Defendant. | |
| | |

COMES NOW THE PLAINTIFF, Charles A. Weisman, a free citizen of the State of Minnesota, who respectfully presents and submits this memorandum as evidence and proof of the prevailing and controlling law regarding the matter now before the Court.

### ARGUMENTS & STATEMENTS OF LAW

The Defendant claims that his arrest of the Plaintiff without warrant for the violation of two "traffic laws" was lawful. Defendant claims that he is authorized by statute to make arrests for any violation of laws of the state whether they are a misdemeanor or a felony when committed in his presence.

The facts of this case lead to the conclusion of law that the Defendant did not have any lawful authority to arrest the Plaintiff. The Defendant had no warrant for the arrest of the Plaintiff, and he alleges that he only saw Plaintiff commit a misdemeanor, i.e., a traffic violation. There was no claim of a felony committed or of a breach of peace committed. At common law, and under the provisions of Due Process of Law, such an arrest without a warrant can not be made. Since the arrest deprived the Plaintiff of his liberty by an act not pursuant to due process of law, the arrest is unlawful. Due Process is not determined by the legislature.

> It is manifest it was not left to the legislative power to exact any process which might be devised. The [due process] article is a restraint on the legislative as well as on the executive and judicial powers of government, and cannot be so construed as to leave

At <u>common law</u>, as a general rule, an arrest could not be made without warrant for an offense less than felony, except for a breach of the peace. 3 *Cyc.* 880; *State v. Sims*, 16 S.C. 486.

The fact that the Defendant believed that the Plaintiff committed a misdemeanor and had charged him with a violation of the traffic law, did not authorize him to arrest the Plaintiff. In a New York case, the State Supreme Court held that a city alderman or justice of the peace could not, at common law, arrest or cause an arrest for a misdemeanor not amounting to a breach of the peace, without warrant, though happening in his presence. The Supreme Court, in the case of *Butolph v. Blust*, 5 Lansing's Rep. 84, 86 (1871) stated:

> At common law an arrest could not be made of a person charged with a misdemeanor except on warrant of a magistrate, unless it involved a breach of the peace, in which case the offender might be arrested by any person present at its commission. (1 Chitty, Criminal Law, 15; *Carpenter v. Mills*, 29 How. Pr. R. 473).

In the very well reasoned and authoritative case of *Ex parte Rhodes*, 202 Ala. 68, 79 So. 462, 464 (1918), the Supreme Court of Alabama related the due process provision to the act of arrests. It asserted that, "any seizure or arrest of a citizen is not reasonable, or 'due process,' merely because a Legislature has attempted to authorize it. These phrases are limitations upon the power of the Legislature, as well as upon that of the other departments of government, or their officers." In determining what was 'due process' regarding arrests the Court stated:

> It must not be forgotten that there can be <u>no arrest without due process of law</u>. An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in <u>felony</u>, and in <u>breaches of the peace</u> committed in the presence of the officer. *Ex pate Rhodes*, 202 Ala. 68, 79 So. 462, 465; citing, *Sarah Way's Case*, 41 Mich. 304, 1 N.W. 1023 (1879), et al. Also cited and affirmed in *Pinkerton v. Verberg*, 78 Mich. 573, 44 N.W. 579, 583 (1889); *State v. Williams*, 45 Ore. 314, 77 Pac. 965, 969, (1904); *Adair v. Williams*, 24 Ariz. 422, 210 Pac. 853, 856 (1922).

The Alabama Supreme Court in the *Rhodes* case went on to say that "the phrase 'due process' must be determined by what it meant <u>at the common law</u>, and when the Constitution was adopted" (p. 469). The Court then cites the case of *Tillman v. Beard*, 121 Mich. 475, 80 N.W. 248 (1899), in stating:

> Officers are justified in arresting without warrant only in cases of felony and breaches of the peace. This is elementary. It is needless to cite authorities.

At one time in the history of American law and jurisprudence, the concept that no one could be arrested for a misdemeanor except with a proper warrant was so basic and "elementary" that it was not necessary to give any authorities to prove it. Yet this basic concept was found to be too restrictive to the ever-growing oppressive government that has gained power in this country. Thus in order for it to control the

16

liberty of citizens, and to enforce its oppressive laws, the corrupt, *de facto* government has gradually undermined a very basic principle of constitutional law.

In the *Pinkerton* case, supra, it was held that a police officer could not arrest a woman, without a warrant, upon mere suspicion that she was upon the street for the purpose of prostitution, even under provisions of the city ordinance allowing such arrests. The fact that she had a reputation of being a "street walker," and that the officer knew of her reputation and believed she was plying her vocation as such, plus the fact she did not give her name to the officer stating "it was none of his business," and that she dared the officer to arrest her, did not give the officer grounds to arrest her. The Court said:

> If persons can be restrained of their liberty, and assaulted and imprisoned, under such circumstances, without complaint or warrant, then there is no limit to the power of a police officer. * * * Any law which would place the keeping and safe conduct of another in the hands of even a conservator of the peace, unless for some breach of the peace committed in his presence, or upon suspicion of felony, would be most oppressive and unjust, and destroy all the rights which our constitution guaranties. These are <u>rights which existed long before our constitution</u>, and we have taken just pride in their maintenance, making them a <u>part of the fundamental law of the land</u>. *Pinkerton v. Verberg.* 78 Mich. 573, 44 N.W. 579, 582-83 (1889); *Larson v. Feeney*, 196 Mich. 1, 162 N.W. 275, 276-77 (1917).

Under the topic of "Arrest" as found in Vol. 2 of *Ruling Case Law,* we find the heading, "Constitutional Requirements as to Warrants," wherein it states:

> [T]he fundamental constitutional guaranties of personal liberty protect private individuals in the right of enjoyment of personal freedom without unlawful restraint, and it is universally recognized that <u>no one may be arrested except by due process of law</u>. (2 R.C.L. 463, § 21).

Here again we find that this principle of arrest only by due process of law was once universally recognized, yet the Defendant has ignored such process in his arrest of the Plaintiff. The law regarding warrantless arrests was also declared by the Supreme Court of Wisconsin in the case of *Radloff v. National Food Stores, Inc.,* 20 Wis.2d 224; 121 N.W.2d 865, 867 (1963) as follows:

> In *Stittgen v. Rundle,* (1898), 99 Wis. 78, 80, 74 N.W. 536, this court established the principle that "An arrest without warrant has never been lawful except in those cases where the public security requires it; and this has only been recognized in felony, and in breaches of the peace committed in the presence of the officer." This rule was reaffirmed in *Gunderson v. Stuebing* (1905), 125 Wis. 173, 104 N.W. 149; 1 *American Law Reports*, Annotated, 585.

The *Radloff* case involved a shoplifter who was stopped and arrested by store employees for taking two cartons of cigarettes. The State Supreme Court said that the employees had the right to stop the shoplifter and recover the goods he had stolen from their employer, and were not negligent *per se* in so doing. However, since the

congress free to make any process "due process of law," by its mere will. *Murray's Lessee v. Hoboken Imp. Co.*, 18 How. (59 U.S.) 272, 276 (1855).

The Constitution of Minnesota declares that no person shall "be deprived of life, liberty or property without due process of law" (Minn. Const., Art. 1, Sec. 7). The words "due process" do not mean anything which the legislature may see fit to declare to be "due process of law" *State ex rel. v. Billings*, 55 Minn. 466, 474 (1893). Due process was intended to preserve established fundamental rights by requiring that they can not be deprived except by the established modes of law as existing under the common law. This guarantee that government shall follow a specified and pre-existing rule of conduct, process, or procedure is in itself a right the citizen held at common law, and was claimed by the colonists in early America. Thus, "it is clear that the common law is the foundation of that which is designated as due process of law" (6 R.C.L. "Const. Law," § 435). The constitution guarantees these pre-existing rights and procedures in the due process provision.

What is due process of law may be ascertained by an examination of those settled usages and modes of proceedings existing in the common and statute law of England before the emigration of our ancestors. *Twining v. New Jersey*, 211 U.S. 78, 100 (1908).

The expressions 'due process of law' and 'law of the land' have the same meaning. * * * The 'law' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted. *State v. Doherty*, 60 Maine 504, 509 (1872).

In interpreting what due process of law is, it has been held that "none of our liberties are to be taken away except in accordance with established principles" *Ekern v. McGovern*, 154 Wis. 157, 142 N.W. 595, 620 (1913). Thus the mode of arrest by which one can be deprived of his liberty is to be determined by the pre-existing common law principles and modes of procedure. A properly constituted warrant of arrest is a process at common law by which persons could lawfully be deprived of their liberty. The common law on arrest without warrant recognized only certain specific and well defined cases whereby a citizen could be deprived of his liberty. This cannot be abrogated or changed by the legislature.

The common law drew a distinction between an arrest for misdemeanors, such as that which the Defendant arrested the Plaintiff upon, and arrests for felonies. When a felony was committed an arrest could be made without a warrant, but no arrest could be made for a misdemeanor without a warrant unless it constituted a "breach of the peace." The misdemeanor traffic violation was not a breach of peace and thus the Defendant needed a warrant to make an arrest for such offense.

In determining the law surrounding arrests, the Supreme Court of South Carolina, in the case of *State v. Byrd*, 72 S.C. 104, 51 S.E. 542, 544 (1905), affirmed a prior decision of the Court holding that:

taking of the cigarettes constituted a misdemeanor, the store employees had no right to arrest the shoplifter when they had no warrant to arrest. In the *Gunderson* case, the court expalined that arrests without warrants were allowed at common law "only where the ends of justice would be defeated without it," and that it "must be confined to cases of strict public necessity."

Where a person was arrested without warrant and charged with "public drunkenness," which resulted in charges of "resisting arrest," it was held by the Supreme Court of North Carolina that the arrest was illegal as the state failed to make a prima facie case by showing that the defendant's conduct at the time of arrest amounted to either an actual or threatened breach of peace. The court said "it is manifest that mere drunkenness unaccompanied by language or conduct which creates public disorder amounting to a breach of the peace, will not justify arrest without a warrant," and that "not every misdemeanor is a breach of the peace." In a very well-reasoned decision on the subject of arrests, the Court held the following:

> It has always been the general rule of the common law that ordinarily an arrest should not be made without warrant and that, subject to well-defined exceptions, an arrest without warrant is deemed unlawful. 4 Bl. Comm. 289 et seq.; 6 C.J.S., Arrest, § 5, p. 579. This foundation principle of the common law, designed and intended to protect the people against the abuses of arbitrary arrests, is of ancient origin. It derives from assurances of *Magna Carta* and harmonizes with the spirit of our constitutional precepts that the people should be secure in their persons. Nevertheless, to this general rule that no man should be taken into custody of the law without the sanction of a warrant or other judicial authority, the processes of the early English common law, in deference to the requirements of public security, worked out a number of exceptions. These exceptions related in the main to cases involving felonies and suspected felonies and to breaches of the peace (authorities cited). *State v. Mobley*, 240 N.C. 476, 83 S.E.2d 100, 102 (1954).

The overall opinion of the court stressed the principle of the common law as controlling in arrests, thus characterizing as erroneous the view that any offense in the presence of an officer is arrestable without warrant.

In Texas it was held that an arrest without a warrant, for selling in the officer's presence a railroad ticket in violation of a city ordinance prohibiting the selling of such tickets, was unlawful, as the offense charged was not a felony, nor an offense "against the public peace." *M.K. & T. Ry. Co. v. Warner*, 19 Tex. Civ. App. 463 (1898).

Sheriffs, constables and other officers under the executive branch of government had always been recognized as having authority to arrest for felonies committed and for misdemeanors amounting to a breach of peace. But this is the extent of their power to arrest without a warrant, and this constitutional principle is well-grounded in ancient common law safeguards of individual liberty:

18

In England, under the common law, sheriffs, justices of the peace, coroners, constables, and watchmen were entrusted with special powers as conservators of the peace, with authority to arrest felons and persons reasonably suspected of being felons. * * * Conservators of the peace also had the authority to make arrests without warrants in case of a misdemeanor which involved a breach of the peace committed in the presence of the officer making the arrest. 2 *Ruling Case Law*, p. 446; *Orick v. State*, 105 So. 465, 469 (Miss., 1925); *Grahm v. State*, 143 Ga. 440, 85 S.E. 328, 330 (1915); *Kennedy v. State*, 139 Miss. 579, 104 So. 449, 450 (1925); *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.W.2d 907, 911 (1942); *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 756 (1930).

It has been held that constitutional provisions of rights are to be interpreted according to "the common and statute law of England prior to the emigration of our ancestors," and by the law established here before the Constitution was adopted. "Under the common law the powers of state agents were limited and the requirements for an arrest warrant was strictly enforced" *United States v. Tarlowski*, 305 F. Supp. 112, 116 (1969). This procedure for arrest is part of the "due process of law" provision of the constitution which protects citizens from the arbitrary infringement of their right to personal liberty. Thus, any specific authority for arrests must be based upon the common law procedures that allowed a deprivation of one's liberty. This was so held by the Supreme Court of Michigan as follows:

It has already been decided that no arrest can be lawfully made without warrant, except in the cases existing at common law before our constitution was adopted. *People v. Swift*, 59 Mich. 529, 26 N.W. 694, 698 (1886).

Since liberty cannot be deprived except by the law of the land, or due process of law, no statute or ordinance can constitutionally be enacted which allows arrests without a warrant for any purpose the legislature decides. Due process is a limitation upon the legislature, and thus a legislative statute cannot be the due process by which one can be deprived of his liberty by arrests.

In a legal article titled, "Arrest With and Without a Warrant," written in the *University of Pennsylvania Law Review*, Vol. 75, No. 6, April, 1927, p. 485, numerous authorities were cited in support of the following proposition:

It is usually said that not even a peace officer is privileged to make an arrest without a warrant for a misdemeanor which does not amount to a breach of the peace, and there are many cases which expressly deny the privilege to arrest for such a misdemeanor (p. 486).

In the Annotation of the *American Law Reports*, vol. 1, p. 585, is found a legal study titled: "Constitutionality of statute or ordinance authorizing an arrest without a warrant," in which the following is stated:

It has been stated that in cases less than a felony an arrest could only be made without warrant, where there was a breach of the peace in the presence of the person arresting (cases cited).

"The limits to the power of arrest by a constable, without process, was well defined at common law. . . . To prevent the escape of a felon, he had authority to arrest anyone whom he reasonably suspected to have been engaged in the perpetration of a felony. To prevent breaches of the peace, he had the right to arrest any person who was engaged in, or in his presence threatened to engage in; an affray or other breach of the peace. Beyond this, the law did not allow him to exercise the function of determining whether there was a sufficient case of the violation of a law to justify an arrest." Reed, J., in *Newark v. Murphy* (1878) 40 N.J.L. 145.

After this excerpt the law report stated that "the foregoing statement from *Newark v. Murphy* is in accord with the weight of American opinion." Those cases which seemed to deviate from this proposition are those which have upheld arrests for certain acts that were unlawful at common law, such as "streetwalkers."

In Tiedeman's *"Treatise on the Limitations of Police Power"* (1886) § 33, is found the requirements for a lawful arrest and the exceptions to a warrantless arrest:

33. **What constitutes a lawful arrest.** — As a general proposition, no one can make a lawful arrest for a crime, except an officer who has a warrant issued by a court or magistrate having the competent authority.

33a. **Arrests without a warrant.** — Although it is the general rule of law that there can be no arrest without a warrant of the nature just described, yet there are cases in which the requirement of a warrant would so obstruct the effectual enforcement of the laws, that the ends of justice would be defeated. For public reasons, therefore, in a few cases the personal security of the citizen is subjected to the further liability of being arrested by a police officer or private individual without warrant. But the right thus to arrest without a warrant must be confined to the cases of strict public necessity. The cases are few in number, and may be stated as follows:

1. When a felony is being committed, an arrest may be made without warrant to prevent any further violation of the law.

2. When the felony has been committed, and the officer or private individual is justified, by the facts within his knowledge, in believing that the person arrested has committed the crime.

3. All breaches of the peace, in assaults and batteries, affrays, riots, etc., for the purpose of restoring order immediately.

The rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, or on view a breach of the peace, has never been extended to any and all misdemeanors. While there have been some erroneous decisions that have recognized statutes authorizing arrests for misdemeanors that do not constitute a breach of the peace, none are based upon the meaning of due process of law. Thus arrests are not lawful where only a misdemeanor occurs unless it is of the nature of a 'breach of peace.'

At the common law an officer had no authority to make an arrest for a misdemeanor though committed in his presence unless it involved a breach of the peace. * * * The

20

right of personal liberty is a very high prerogative right, and to deprive one of that right, without due process of law, we must find specific authority for doing so. It can not be left to inference or some strained construction of statute or ordinance. *State v. Lutz*, 85 W.Va. 330; 101 S.E. 434, 43 (1919).

The specific authority for arrests is grounded in the ancient settled maxims of law, which no statute can abrogate without violating the 'due process of law' provision of the constitution. Thus a warrant must be obtained for a misdemeanor that is not a 'breach of peace.' The supreme Court of Minnesota has stated on several occasions that even in the case of a felony an "arrest and search should not be made without a warrant unless there is a compelling necessity to do so." *State v. Mastrian*, 285 Minn. 51, 57 (1969). The supreme Court of Rhode Island in declaring the requirements at common law for an arrest stated:

> That law permitted an officer to arrest without a warrant on reasonable suspicion based on his knowledge that a felony had been committed. * * * In all other cases, except in the case of a misdemeanor amounting to a breach of the peace committed in his presence, an officer had no authority, at common law, to arrest without a warrant (authorities cited) *Kominsky v. Durand*, 64 R.I 387, 12 Atl.2d 652, 654 (1940).

In *American Jurisprudence*, 2d., Vol. 5, under the subject of "Arrest," sections 26 and 28, pp. 716, 718, it states:

> At common law, a peace officer cannot arrest without warrant for a misdemeanor, although committed in his presence, unless a breach of peace is involved.

> At common law, the right to arrest for a misdemeanor committed in the presence of the officer is limited to those offenses which amount to a breach of the peace. The basis for the rule is that arrest without warrant is permitted, in cases less than felony, not for the apprehension of the offender, but only for the immediate preservation of the public peace; and, accordingly, when the public peace is not menaced, a warrant is necessary. (authorities cited, see also section 22).

In *Corpus Juris Secundum*, Vol. 6A, under the subject of "Arrest," and under the heading of "Arrest or Detention Without Warrant" § 10, p. 17, it is written:

> At common law, however, it has always been the rule that, except in cases where the public security has demanded it, arrest without a warrant is deemed to be unlawful.

"Due process of law," which declares that no citizen shall be deprived of any of his rights of life, liberty or property, unless by the law of the land, or the judgment of his peers (Minn. Const., Art. I, Sec. 2 & 7), is the controlling factor in the matter of the arrest made by the Defendant. An arrest is a deprivation of one's liberty and the due process that must be followed in an arrest is that process which existed at common law. To prevent the exercise of arbitrary power at the discretion of government, it was deemed wise to secure the principles already settled in the common law upon this vital point of civil liberty in written constitutions (Cooley, *Const. Lim.* 364 and notes).

Where a Chicago policeman arrested a man for "vagrancy," the officer was found guilty by a jury of false imprisonment. The Supreme Court of Illinois upheld the conviction of the policeman and declared the rule of law regarding arrests without warrants:

> Blackstone says: "The constable hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace; and in case of felony actually committed, or a dangerous wounding whereby felony is likely to ensue, he may, upon probable suspicion, arrest the felon, and, for that purpose, is authorized (as upon a justice's warrant) to break open doors, and even to kill the felon, if he can not otherwise be taken." 4 Bl. Comm. 292.

> In all other cases, however, the authorities are uniform, a constable or policeman has no authority to make an arrest without a warrant (authorities cited) *Shanley v. Wells*, 71 Ill. 78, 82 (1873).

In a case for false imprisonment, the Supreme Court of Maine examined the law regarding arrests and held: "The principles which, by the common law, regulate the right to arrest, or cause an arrest, without warrant, have been long settled both in this country and England; and, by these principles, the rights of these parties must be determined." After citing numerous cases involving the authority to arrest, the Court stated:

> In many of these cases it seems to have been held that the authority of an officer to arrest for misdemeanor, without warrant, is limited to breaches of the peace or affrays, committed in his presence. *Palmer v. Maine Cent. R. Co.*, 42 Atl. 800, 803, 92 Me. 399 (1899).

In a case involving a state liquor prohibition law, a man, while walking down along a public street, was accosted by a police officer, and asked if he had any liquor on his person. He replied that he did. Thereupon the officer searched him and found a pint bottle of liquor in his inside coat pocket. He was then taken to the police station. The State Supreme Court of Wisconsin said that when the police office stopped the man he was illegally arrested and was illegally searched, as he had no warrant to do either. The Court said that "it is a serious thing to arrest a citizen, and it is a more serious thing to search his person" and it must be done "in conformity to the laws of the land." Regarding the law on arrests it held:

> At common law arrests for misdemeanors were not permissible without a warrant except for acts committed in the presence of the officer causing a breach of the peace. *Allen v. State*, 183 Wis. 323, 197 N.W. 808, 810, 811 (1924).

Thus in order that the citizen's sacred right of liberty be secure and preserved, it has always been fundamental law that arrests without warrant were not deemed lawful, with only a few well-established exceptions of felonies and breaches of peace. The liberty of citizens would never be safe if such principles could be determined and thus

22

abrogated by statute. Therefore these principles surrounding arrests are regarded as fundamental law under our American system of government, as held by the Supreme Court of Michigan:

> Under our system we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that no arrest can be made without warrant except in cases of felony, or in cases of breaches of the peace committed in the presence of the arresting officer. This exception, in cases of breaches of the peace, has only been allowed by reason of the immediate danger to the safety of the community against crimes of violence. *Yerkes v. Smith*, 157 Mich. 557, 122 N.W. 223, 224 (1909), citing: *Robison v. Miner*, 68 Mich. 549, 557-58, 37 N.W. 21, 25 (1888).

In the *Yerkes* case, it was held that the playing of baseball on Sunday did not necessarily involve a breach of peace justifying an arrest, though it may cause a breach of peace. The Court said that before a summary arrest can be made for a breach of the peace, not only must overt acts be committed in the presence of the officer, but they must be violent and dangerous acts of some sort. In the *Robison* case, the Court held that a liquor law ordinance which allowed arrests without process was unconstitutional because it was not pursuant to due process of law.

Where a man was arrested for public drunkenness, the question arose whether this was an offense for which one could be arrested without a warrant. The Supreme Court of Appeals of Virginia declared the law on arrests:

> [T]he common law relating to arrest is the law on that subject in Virginia. At common law a peace officer may arrest without a warrant for a breach of the peace committed in his presence, but not for any other misdemeanor. *Galliher v. Commonwealth*, 161 Va. 1014, 170 S.E. 734, 736 (1933), authorities cited.

The common law on arrest is the same in every state, as due process of law has the same meaning throughout America. The security of the citizen's liberty in this country is to be more highly regarded than it was in England under the common law. To say it is less regarded is to make a mockery of the Revolution.

In a New Jersey case a man was arrested by two city policemen on orders of their superior to do so, alleging that he was guilty of disorderly conduct, and was taken to a police station and held over night. This was done without any charge or complaint made against the man and without any warrant, the only authority for the arrest was that the officers were told to do so. In a suit for false imprisonment it was held by the Supreme Court of New Jersey that the arrest was without authority and gave the following opinion:

> The legal principle underlying this case and the one to be applied to the facts is firmly embodied in the roots of the common law, which has been handed down to us from early times unimpaired, in its full vigor, for the protection of personal liberty, against illegal arrests. The liberty of the person is too important a matter to the state to be interfered with without the safeguards with which the law guards such invasions. This court has

said: The limits to the power of arrest by a constable, without process, was well defined at common law. The regard for liberty of the person was so great that the common law did not confer upon a mere conservator of the peace the power to touch the person of the subject, of his own volition, except in those cases when the interests of the public absolutely demanded it. *Collins v. Cody*, 95 N.J. Law 65, 113 Atl. 709, 710 (1920).

In a Pennsylvania case a woman was arrested for causing and procuring to be made, loud and annoying sounds and noises at late hours of the night, in a certain tent near a city street, by beating upon a drum. Upon indictment her counsel moved that the indictment be quashed as she was arrested without affidavit and warrant while she was in a tent upon private property. It was held that the arrest was unlawful as the act was such that summary arrest was not justified and due process required a warrant for such arrest:

> It is the undoubted right of every person in this community not to be deprived of liberty without due process of law, and if the defendant has been arrested without due process of law, the indictment against her cannot be sustained. * * * It has long been recognized that arrests without warrant are justified in cases of treason, felony or breach of the peace, in which actual or threatened violence is an essential element: 1 Hale's P.C., 589; 2 Hawkin's P.C., ch. 13, sec. 8; 1 Burns, J., 287; 4 Blackstone, 292; 9 Bacon, Abrid., 468; 1 Chitty Cr. Law, 15; Clark's Criminal Procedure, 39; Russell, Crimes, vol. 3, page 83; 4 Amer. and Eng. Ency. of Law, 902. *Commonwealth v. Krubeck*, 8 Penn. Dist. Rep. 521, 522 (1899).

It must be remembered that, "Not every misdemeanor involves a breach of the peace." *Commonwealth v. Gorman*, 192 N.E. 618, 620. Under the common law, acts that were *malum per se*, that is wrong or unlawful by their nature, were often felonies or breaches of the peace, and subject to arrest without warrant. But that is not the law for an act that was only *malum prohibitum*, being made unlawful only by statute, and without such enactment were otherwise innocent acts. The law asserts that for such statutory misdemeanors, not amounting to a breach of the peace, there is no authority in an officer to arrest without a warrant.

> As a general principle, no person can be arrested or taken into custody without warrant. But if a felony, or a breach of the peace, has, in fact, been committed by the person arrested, the arrest may be justified. *Burns v. Erben*, 40 N.Y. 463, 466 (1869); see also *Cunningham v. Baker*, 104 Ala. 160, 16 So. 68, 70 (1894).

While the "search and seizure" provision of the constitution regulates the manner in which warrants can be issued, it is the "due process" clause which protects citizens from unlawful arrests without warrant:

> "No person shall be deprived of life, liberty, or property without due process of law." And, under like restrictions in the constitution, it has been held in some states that arrests shall not be made without warrant, except for felonies, and for breaches of the peace committed in the presence of the officer arresting. *North v. People*, 139 Ill. 81, 28 N.E. 966, 972 (1891).

24

Thus, where an arrest is made without warrant, in a case not involving a felony or breach of peace, the arrest is unlawful. "Arrest without warrant where a warrant is required, is not due process of law, and arbitrary or despotic power no man possesses under our system of government." Thus when "a police officer exceeds his powers in making an arrest he becomes a trespasser" and he is liable for false imprisonment. *Muscoe v. Commonwealth*, 86 Va. 443, 10 S.E. 534, 536.

For other authorities on this matter see:  1 Am. Law Rep., Anno., 585, et. seq.; *Com. v. Carey*, 12 Cush. 246 (Mass., 1853); 6A C.J.S., 'Arrest' § 10, p. 17; Anderson, *A Treatise on the Law of Sheriffs*, Vol. I, § 166 (1941); *Hill v. Day*, 168 Kan. 604, 215 P.2d 219; *Lee v. State*, 45 Tex. Cr. R. 94, 74 S.W. 28 (1903);   22 Mich. Law Review 673, 703-707; *Ulvestad v. Dolphin*, 278 P. 681, 684 (Wash. 1929); *In re Kellam*, 55 Kan. 700, 41 P. 960, 961 (1895); *Pavish v. Meyers*, 225 Pac. 633 (Wash., 1924); *Delafoile v. State*, 54 N.J.L. 381, 24 Atl. 557, 558 (1892); *Giroux v. The State*, 40 Tex. 99, 104 (1874); (1892); *Staker v. U.S.*, 2 F.2d 312, 314 (1925); *Porter v. State*, 52 S.E. 283, 285 (Ga. 1905); *Cave .v Cooley*, 152 P.2d 886 (N.M.).

## CONCLUSIONS.

It is a maxim of law that, *"Liberty is more favored than all things"* (Dig. 50, 17, 122). Thus the law favors liberty above all things and applies the most liberal interpretation to it.   The common law rule regarding the procedure and process for arrest was established in this country. In *Allor v. Wayne Co.*, 43 Mich. 76, 97, 4 N.W. 492, 495-96 (1880), Mr. Justice Campbell says:

> The constitution has also provided that no one shall be deprived of liberty without due process of law, and has provided that no warrant shall issue except upon oath or affirmation establishing probable cause. It has been settled for centuries, and the doctrine has been recognized here, that except in cases of reasonable belief of treason or felony, or breach of the peace committed in presence of an officer, there is no due process of law without a warrant issued by a court or magistrate upon a proper showing or finding.

It is thus fundamental that "the due process clause of the Constitution protects the citizen from unlawful arrests." *State v. Quinn*, 97 S.E. 62, 64, (S.C. 1918). By the common law, which is that law due process guarantees, a citizen cannot be summarily arrested when he is found violating a law that is only a misdemeanor. A warrant must first be acquired to arrest such a person pursuant to due process of law.  If that which constitutes due process of law is made to depend upon the will of the legislature as expressed in a statute or charter, then no fundamental principles of law or rights are perpetuated or secured against abrogation.

An arrest is a deprivation of one's liberty.  The State Constitution requires that, *"No person shall . . . be deprived of life, liberty or property without due process of law"* (Minn. Const. Art. I, Sec. 7).  The procedure for arrest under the common law is what constitutes 'due process' today, as the Minnesota Supreme Court held:

> What is due process of law is usually a traditional or historical question.  Was it due process of law under the common law, and did it remain such up to the time of adopting the constitution.  *C.N. Nelson Lumber Co. v. M'Kinnon,* 61 Minn. 219, 222.

The law is very jealous of the liberty of the citizen.  Where the offense is less serious, the greater the formality prescribed for the exercise of the power which can deprive the citizen of his liberty.  *Porter v. State,* 124 Ga. 297, 52 S.E. 283, 285 (1905).  The citizen cannot be summarily deprived of his liberty because of his infraction of some ordinance or statute, unless at common law he was liable to arrest.  The misdemeanor traffic statute involved in this case is such that it does not allow the Defendant to arrest the Plaintiff without the formality of a warrant. Therefore, the Defendant is guilty of false imprisonment for arresting the Plaintiff without authority of law.

The foregoing proves that the common law surrounding arrests was always recognized in this country and is thus a requirement for 'due process' in depriving the Plaintiff of his liberty.  It is the "law of the land."  As such, these principles are constitutional mandates and cannot be abrogated by mere statutes.

Respectfully submitted and stated, Juris et de jure, by,


Charles A. Weisman
11751 W. River Hills Dr.
Burnsville, Minnesota

# 4

# BREACH OF THE PEACE & FELONY ARRESTS

### What Is A Breach Of The Peace?

A breach of the peace may be generally defined as a violation of the public order which amounts to a disturbance of the public tranquillity, or by inciting others to do so. It is clear that not every misdemeanor is a breach of the peace.

To constitute a breach of the peace there must be some violence or harm existing or threatened to occur to person, property, health or morals. Affrays, assaults, riotous conduct or destruction of property make up the largest part of what can be called a breach of the peace. Thus in the majority of cases of a breach of peace some actual violence is present.

In some States there has been attempts to expand the meaning of "breach of peace" to include all indictable misdemeanors; "but this it must be confessed is doing serious violence to a simple expression, easily and well understood."[1]

Some of the types of breaches of the peace are described as follows:

[A] breach of peace, includes acts of public turbulence, acts of violence or tending to produce violence or tending to incite violence, disturbance of the public tranquillity by yelling, hollering, or uttering loud and vociferous language, making disturbing noises on a public street by one in a state of intoxication, . . . wanton discharge of firearms in a public place, engaging in an affray or in an assault, . . . uttering abusive, profane, indecent, or otherwise provocative language.[2]

In discussing what constitutes a breach of the peace the Supreme Court of North Carolina held:

A breach of the peace is a public offense done by violence or one causing or likely to cause an immediate disturbance of public order.[3]

Breaches of the peace are acts which are *malum in se*, being wrongful or evil by their nature. Thus acts which are *malum prohibita*, or those acts made wrong merely by a statute, cannot be classed as a breach of the peace. Those acts which constitute a breach of peace have been settled throughout the course of the common law. The legislature cannot declare any act they choose to be a breach of peace. The nature of the act determines if it fits the common law definition of a breach of the peace.

The acts that are only *malum prohibita* include liquor prohibition laws, traffic laws, labor laws, health laws, food laws, building codes and zoning ordinances, safety acts, game laws, and very many other "police regulations." Without a statute, most of the acts constituting these offenses would be innocent acts.[4]

A parade on the street is not of itself a breach of the peace though it could constitute

---

1   Walter Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables*, vol. 1, § 131, pp. 126-27 (1941).

2   12 *American Jurisprudence*, 2d, "Breach of Peace," § 8, pp. 669-70.

3   *State v. Mobley*, 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

4   *Allen v. State*, 183 Wis. 323, 197 N.W. 808, 811 (1924).

one.[5]   The carrying of arms in a quiet, peaceable, and orderly manner, concealed on or about the person, is not a breach of the peace.  Nor does such an act, of itself, tend to a breach of the peace.[6]   A mere trespass is not a breach of the peace and does not impose criminal liability upon the wrongdoer.[7] Driving an automobile while intoxicated constitutes a breach of peace.[8]   Indecent exposure as where one is walking in public naked or nearly naked or in indecent dress is disruptive of the morals of society and constitutes a breach of the peace.  Blasphemy of Christ or Christianity in public is a breach of the peace.

A mere violation of public decorum or a penal law, does not constitute a breach of peace.[9]   Conduct merely amounting to a nuisance is not *per se* a breach of peace.[10] The sale of fifteen dynamite caps to a 15-year old boy did not constitute a breach of peace.[11]   A theft is not in its nature a breach of the peace.[12]

A charge of "disorderly conduct" is a broader term than a breach of the peace because a person who commits a breach of the peace is necessarily guilty of disorderly conduct.  However, all acts of disorderly conduct are not necessarily a breach of the peace.[13] Littering or yelling are such cases.

Breach of the peace is a common law offense, but it is not itself a specific offense. Thus in a charge or indictment the specific offense must be specified.

### Arrests For Breach Of The Peace

In the struggle for government to claim and exercise greater powers of arrests, it has unlawfully attempted to apply the common law rule for a breach of peace arrest to all misdemeanors.  The general rule of law under the common law for the arrest of misdemeanor offenses amounting to a breach of the peace is stated as follows:

> In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.[14]

An arrest can only be made to suppress and prevent the breach of peace, and if the act ceases, there is no longer justification for the arrest without warrant.

> "A constable cannot arrest, but when he sees an actual breach of peace, and if the affray be over, he cannot arrest; and where a breach of the peace had been committed, and was over, the constable must proceed in

---

5   *In Shields v. State*, 187 Wis. 448, 204 N.W. 486, 40 A.L.R. 945.

6   *Wharton's Criminal Law and Procedure*, 12th Ed., vol. 2, "Breach of the Peace," § 803, p. 660 (1957);  12 *American Jurisprudence*, 2d, "Breach of Peace," § 8, pp. 669-70;  *Judy v. Lashley*, 50 W.Va. 628, 41 S.E. 197, 200 (1902); *Robertson v. State*, 43 Fla. 156,  29 So. 535, 538 (1901).

7   *Wharton*, op. cit., § 804.

8   *State v. Rue*, 72 N.M. 212,  382 P.2d 697, 700 (1963);  *State v. Jennings*, 112 Ohio App. 455,  176 N.E.2d 304, 307.

9   *Herron v. Commonwealth*, 294 Ky. 31,  170 S.W.2d 861, 862 (1943).

10  *State v. Mobley*,  240 N.C. 476,  83 S.E.2d 100 (1954).

11  *State v. Thompson*,  117 Vt. 70,  84 A.2d 594, 596 (1951).

12  *Radloff v. National Food Stores*,  20 Wis.2d 224,  123 N.W.2d 570 (1963).

13  *City of Seattle v. Franklin*, 191 Wash. 297,  70 P.2d 1049, 1051.

14  *Carroll v. United States*, 267 U.S. 132, 157 (1924),  citing: *Halsbury's Laws of England*, Vol. 9, part III, p. 612.

28

the same way as any other person, namely; by obtaining a warrant from a magistrate"[13]

The rule for arrest without warrant involving misdemeanors was stated in an article in the *Michigan Law Review* as follows: "Neither O (a peace officer) nor C (a private citizen) may arrest D (a person) for M (a misdemeanor) which is not a BP (a breach of the peace). In regards to this rule it was stated:

> [N]either an officer nor a citizen may arrest for a misdemeanor which does not amount to a breach of the peace even though it occurs in his presence. As for example, talking loudly in the street in the presence of the officer, who ordered the parties to be quiet, an arrest without a warrant was not justified; nor where D in the presence of O, was "turning toward the wall for a particular purpose" of relief, in the street; or where he was disturbing a public meeting; or obstructing the free passage across a bridge; or refusing to move on, on a sidewalk, at the request of an officer; or fraudulently substituting a smaller for a larger check; or fraudulently evading payment of a railroad fare; or maintaining a bill board on a sidewalk; or insulting the head of the house in the presence of his family; or assembling to witness a Sunday ball game, or a movie show.[16]

It is a common rule that an officer cannot arrest for a breach of peace after it has ended. When a breach of the peace ceases, the reason for the arrest ceases, that being to stop or prevent the breach of public order. Mr. Bishop, in his *Treatise on Criminal Procedure,*

speaking on the subject of arrest for breaches of the peace says:

> After the tumult is over, with no prospect of its renewal, it is too late to interfere without judicial process. And other past misdemeanors are within the same rule, namely, that a private person, or even an officer, cannot without a warrant arrest one for a misdemeanor committed on an occasion already passed. 1 Bish. Crim. Proced. §§ 166, 167.[17]

The principle behind the common law rule of arrests was that in order to prevent harm, violence or disturbance to the public peace, it is necessary that those perpetrating such acts be promptly stopped by arrest. Where, however, the offense is an accomplished fact, its prevention is no longer possible. Also, if public order has been fully restored before the officer appears, the power to arrest without warrant for a misdemeanor breach of the peace no longer exists, for the end by which such authority to arrest is allowed—to maintain the public peace—is no longer attainable.[18]

The occasions which would justify arrest without process for "vagrancy" would indeed be very rare, inasmuch it involves no immediate danger to public or private security.[19] Under American common law, no one can be required to "give an account of themselves," or to show they have a "visible means of support," or that they have employment. As part of the right to life, all have a right to choose how to live and how to

---

15   *State v. Lewis*, 50 Ohio Rep. 179, 185, 33 N.E. 405, 406-07 (1893). Also: *Pow v. Beckner*, 3 Ind. 475, 478; *Commonwealth v. Gorman*, 288 Mass. 294, 297, 192 N.E. 618, 620 (1934); 2 *Hawkins P.C.*, c. 13, § 8; and in the English case of *Regina v. Tooley*, 2 Ld. Ray. 1296, 1301; 11 Mod. 242, 250, by Lord Holt.

16   22 *Michigan Law Review*, 673, "Arrest Without a Warrant," pp. 703-704. Citing cases and quoting from *Halsbury's Laws of England.*

17   As quoted in: *Ex parte Rhodes*, 202 Ala. 68, 79 So. 462, 472 (1918).

18   *State v. Lewis*, 50 Ohio Rep. 179, 187, 33 N.E. 405 (1893);

19   *Sarah Way's Case*, 41 Mich. 299, 304 (1879).

support themselves, and no government act can interfere with this right.

The majority of misdemeanor offenses would not fall in the class of a breach of the peace which allow the immediate inter- vention of authority by arrest, as they are not an offense of a grave nature, or because they do not actually disturb the public peace.

An arrest for breach of the peace in the officer's presence must be made *"promptly,"* either *"at the time of the offense"* or *"as soon as the circumstances permit."* If the officer "does not act immediately after the offense has been committed, he can thereafter make arrests only by procuring a warrant."[20]

When an officer, after having seen a breach of the peace committed, departs on other business or for other purposes, and afterwards returns, he cannot, without warrant, make an arrest for the offense: but where the officer finds it necessary to procure assistance, a reasonable time may be employed in the pursuit. In such a case the officer must at once set about the arrest and follow up the effort until the arrest is effected. An unreasonable delay will make the arrest invalid. In order to justify a delay, there should be a continued attempt on the part of the officer to make the arrest.

It has been erroneously stated that officers are authorized to break in a house or building to prevent the commission of any crime without a warrant. This is an invalid exaggeration of the true law on the matter, which is revealed as follows:

> The authority of a constable to break open doors and arrest without a warrant is confined to cases where treason or felony has been committed, or if there is an affray or a breach of the peace in his presence. 2 Hale P.C. 88-96; 1 Hawkins, c. 63, § 16; 1 Russell on Crimes, 629; 1 Chitty's Criminal Law, 14, 15; Bacon, Abr. "Constable," (C).[21]

The cases in which a breach of the peace occurs in the presence of an officer when done in a building would be very rare. The cases of felony and treason in such a case would most often occur where the felon was pursued into a building by the officer.

Public drunkenness unaccompanied by language or conduct which creates a breach of the peace, will not justify arrest without a warrant.[22] Impudent, abusive or offensive language addressed to a peace officer does not tend to breach the peace, even though it may provoke the officer to anger.[23] And it has been held that the mere "refusal to give one's name and address does not justify the incarceration of a citizen."[24]

## Threatened Breach Of The Peace

An officer cannot arrest because he thinks or has suspicions that a breach of peace might be committed. The cause for arresting upon such cases must be when a breach of the peace is "threatened" or its occurrence is "imminent."[25] In determining when officers

---

20  4 Am. Jur. "Arrest," §67. p. 46; *Lyons v. Worley,* 152 Okla. 57, 4 P.2d 3, 6 (1931); *State v. Lewis,* 50 Ohio St. 179 33 N.E. 405, 406 (1893).

21  *McLennon v. Richardson,* 15 Gray's Rep. 74, 77 (Mass. 1860).

22  *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

23  *Pavish v. Meyers,* 129 Wash. 605, 225 Pac. 633, 634 (1924); *Salem v. Coffey,* 113 Mo. App. 675, 88 S.W. 772 (1905); *People v. Lukowsky,* 94 Misc. 500, 159 N.Y.S. 599 (1916); *Myers v. Collett,* 1 Utah 2d 406, 268 P.2d 432, 434 (1954).

24  *Scott v. Feilschmidt,* 191 Iowa 347, 182 N.W. 382, 384 (Iowa, 1921).

30

may interfere by an arrest to prevent a threatened breach of the peace, the Supreme Court of Michigan stated:

> We are of opinion that a threat or other indication of a breach of the peace will not justify an officer in making an arrest, unless the facts are such as would warrant the officer in believing an arrest is necessary to prevent an immediate execution thereof, as where a threat is made coupled with some overt act in attempted execution thereof. * * * The object of permitting an arrest under such circumstances is to prevent a breach of the peace, where the facts show danger of its being immediately committed.[26]

Thus the interposition of the officer in a threatened breach of the peace is not for the purpose of an arrest but "to prevent a disturbance or breach of the peace under a present menace of violence."

> The courts are almost unanimous in their holdings, * * * that a threatened breach of the peace will not justify an arrest without warrant, unless the facts are such as would warrant the officer in believing an arrest necessary to prevent an immediate execution thereof, as where the threat is made coupled with some overt act in attempted execution thereof. In such cases the officer need not wait until the offense is actually committed.[27]

The guideline then for making arrests on what is to be called a "threatened" breach of the peace, is when the conditions are such that the threatened breach of peace is *imminent*, or that it is *obvious* to the average person that it is *going to occur*. As held by the Supreme Court of North Carolina:

> [W]e think a breach of the peace is threatened * * * if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent.[28]

Since the nature of most breaches of the peace are such that cause violence to person or property, the acts which constitute them are apparent, so that one can readily see or hear them occurring. It is said a breach of peace is committed in one's presence when, by the use of his senses, he knows of its commission by the person about to be arrested. Thus an arrest for a breach of peace may be made when one's "senses afford him knowledge" that it "is being committed," whether through "sight, hearing, or other senses."[29] An arrest for a breach of the peace cannot be made on suspicion or mere belief:

> An arrest for a breach of the peace cannot be justified merely upon belief or suspicion existing in the mind of the officer; but, where the actions of the person and the surrounding circumstances are such as to indicate a threatened breach of the peace, the arrest may be lawfully made.[30]

It is thus said that an officer can not arrest for a misdemeanor or a breach of the peace based solely upon information from another or suspicion without a warrant. In no case could advice or information given after the arrest was made justify the arrest. Likewise, an arrest cannot be made for one purpose and justified for another.

---

25 *Price v. State*, 227 Md. 28, 175 A.2d 11, 16 (1961).

26 *Quinn v. Heisel*, 40 Mich. 576, 578-79 (1879).

27 *Haverbekken v. Hollingsworth*, 250 S.W. 261, 265 (Tex. Civ. App. 1923).

28 *State v. Mobley*, 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

29 Restatement, Torts, Sec. 119; *Walker v. United States*, 7 Fed.2d 309, 311 (9th Cir. 1925); *Wharton's Criminal Procedure*, vol. I, "Arrest," § 65, 12th Ed., p. 173.

30 *Hughes v. State*, 145 Tenn. 544, 238 S.W. 588, 596 (1922).

## Conditions Of Felony Arrests

It was regarded under the common law to be a right and a duty for a citizen to arrest one he sees committing a felony without a warrant. As stated by justice Platt:

> All persons whatever, who are present when a felony is committed, or a dangerous wound is given, are bound to apprehend the offenders. (3 *Hawkins, P.C.* 157, *Arrest,* s. 1.)[31]

To arrest a person for a felony not witnessed by the officer, he must be able to conclude from the facts then existing that a certain person did commit the felony, so that any prudent person would be lead to believe likewise. An arrest for felony based upon suspicion, belief or rumor can never be justified for any cause whatsoever, not even by a warrant can such an arrest be lawful.

> Where there is a felony and it is past, the officer is justified in arresting though no offense has been committed; yet he must have had reasonable cause to suspect the one apprehended.[32]

To allow arrests for suspicions, even in the case of felony, would make everyone susceptible to arrest who the officer might choose to believe is a likely or possible perpetrator of a crime. It would in effect amount to a "general warrant" in the hands of any officer — a concept which was found to be so abhorrent to the founding fathers of the American Revolution.

All arrests for felonies not seen or witnessed by the officer or citizen making the arrest have the burden to justify the arrest. In a felony arrest by a private citizen, he must justify the arrest by showing "that the felony had actually been committed, and that he had reasonable grounds for believing the person arrested to be guilty."[33] An officer is required only to show the probable cause existing for making the arrest, and need not show that a felony actually occurred, though such proof could serve as a justification.[34] In all other arrests, probable cause is not a factor in justifying an arrest without warrant.

It is well settled at common law, that an officer or private person, without warrant, may lawfully seize and detain another in cases where a felony was about to occur.

> If two persons be fighting, and there be reason to fear that one of them will be killed by the other, it will be lawful to part and imprison them till their anger shall be cooled. Bacon, Abr., Trespass, D.; 2 Roll. Abr. 559. * * * And private persons may justify breaking and entering the plaintiff's house, and imprisoning his person, to prevent him from murdering his wife.[35]

The law on felony arrest allowed all peaceable persons to travel freely anywhere without having to worry about an arrest or warrant for a felony. This is because all persons know what constitutes a felony, that being intrinsically evil acts such as murder, kidnaping, rape, arson, mayhem, armed robbery, and other such atrocious crimes. No one commits a felony accidentally or without foreknowledge of the act. Thus a felon's arrest comes as no surprise to him.

---

31 *Phillips against Trull,* 11 Johnson's Rep. 486, 487 (N.Y. 1814).  See also, 6A C.J.S. "Arrest," § 13.

32 *The State v. Underwood,* 75 Mo. 230, 237 (1881), citing 1 *Bishop's Criminal Procedure,* § 181;  also see *Commonwealth v. Carey,* 12 Cush. 246 (Mass.);  *Palmer v. Maine Cent. R. Co.,* 92 Me. 399, 42 Atl. 800, 803 (1899), authorities cited.

33 *Palmer v. Maine Cent. R. Co.,* 92 Me. 399, 42 Atl. 800, 803 (1899), authorities cited;  *Goliban v. Sullivan,* 30 Ind. App. 428, 66 N.E. 188, 191 (1903).

34 *State v. Nolan,* 354 Mo. 980, 192 S.W.2d 1016, 1020 (1946).

35 *Colby v. Jackson,* 12 N.H. 526, 530 (1842).

32

# 5

# DEFENSES TO UNLAWFUL ARRESTS

This section will be of benefit not only to those who may initiate a suit for false imprisonment, but also for peace officers as it further outlines what is the extend of their authority. Suits are usually brought about because there is not a meeting of the minds in regards to the facts or the law of a case. If both parties know the law of arrests and what can and cannot be used as a defense to acts of imprisonment, many lengthy and costly litigations can be avoided.

Over the course of the history of arrests, there have been numerous defenses raised against claims of false imprisonment. Yet the basic defense for this charge is usually limited to showing that the arrest was pursuant to law—that the one arresting had lawful authority to so act. Thus a valid defense or proper justification for false imprisonment would normally be one asserting the legality of the arrest.[1] As Justice Hand stated:

> The law watches personal liberty with vigilance and jealousy; and whoever imprisons another, in this country, must do it for lawful cause and in a legal manner.[2]

Most of the erroneous defenses have been due to misconstruing the requirements of a suit for malicious prosecution with those required for false imprisonment.

## Burden of Proof

In false imprisonment suits, or in allegations of false arrest, it can be no defense that the one who was arrested must prove that the arrest was unlawful in order to prevail in the suit. Due to the high regard placed on liberty, all imprisonments of a person are deemed unlawful until the contrary is shown. In *Halsbury's Laws of England,* in speaking on suits of false imprisonment, it says:

> The plaintiff need not prove that the imprisonment was unlawful or malicious, but establishes a prima facie case if he proves that he was imprisoned by the defendant; the onus then lies on the defendant of proving a justification.[3]

The only thing the plaintiff needs to plead and to prove is one of two things, either (1) that the defendant made an arrest or imprisonment, or (2) that the defendant affirmatively instigated, encouraged, incited, or caused the arrest or imprisonment.[4] When the plaintiff has shown that he was arrested, imprisoned or restrained of his liberty by the defendant, "the law presumes it to be unlawful."[5]

Thus it has been held that in false imprisonment suits the defendant, in order to escape liability, must either prove that he

---

1   *Marks v. Baltimore & O. R. Co.,* 131 N.Y.S.2d 325, 327, 284 App.Div. 251 (1954).

2   *Pratt v. Hill,* 16 Barb. Rep. 303, 308 (N.Y. 1853).

3   Earl of Halsbury, *The Laws of England,* vol. 38, 3rd Ed., Pt. 4, § 1266, p. 765, London, 1962.

4   *Burlington Transp. Co. v. Josephson,* 153 Fed.2d 372, 276 (1946).

5   *People v. McGrew,* 77 Cal. 570, 20 Pac. 92 (1888); *Knight v. Baker,* 117 Ore. 492, 244 P. 543, 544 (1926).

did not imprison the plaintiff or he must justify the imprisonment.[6]   Stated another way, "the burden is upon the defendant to show that the arrest was by authority of law.[7]

In a case where two police officers arrested a man whom they believed committed a felony, the jury was instructed that the burden of proof, by a fair preponderance of the evidence, was upon the plaintiff to show that the arrest and imprisonment were not justified.   This instruction was held to be wrong on appeal, where the Court stated:

> It was long ago said by Lord Mansfield: A gaoler, if he has a prisoner in custody, is prima facie guilty of an imprisonment; and therefore must justify." *Badkin v. Powell,* Cowp. 476, 478. So, in *Holroyd v. Doncaster,* 11 Moore 440, it was said by Chief Justice Best: "Where a man deprives another of his liberty, the injured party is entitled to maintain an action for false imprisonment, and it is for the defendant to justify his proceeding by showing that he had legal authority for doing that which he had done.[8]

Where the arrest was done without a warrant, the person arresting would have to justify by showing he acted pursuant to due process of law, by showing that there was a felony or breach of peace committed.

> Where an officer arrests a person without a warrant, the burden rests upon the officer to plead and prove justification. Otherwise the arrest is prima facie unlawful.[9]

In a case in Iowa the mayor of a town had instructed the town marshal to arrest a man because it had been reported that he was drunk and had been disturbing the peace.   The marshal arrested the man in his home without a warrant.   When the man sued the mayor and marshal for false imprisonment, the court instructed the jury that the burden of proof was upon the plaintiff (the man arrested) to prove that he was not found intoxicated when arrested.   On appeal, the Supreme Court of Iowa held that the court "announced an incorrect rule of evidence" on the matter.   The Supreme Court in defining the correct rule stated:

> In 2 Bishop on Criminal Procedure, § 368, it is said; "In matters of evidence, if the imprisonment is proved, its unlawfulness will be prima facie presumed; but authority may be shown by the defendant in justification."[10]

If the marshal had a valid warrant, this would serve as justification for the arrest, and as a defense to the charge of false imprisonment.   Being he had none, and he witnessed no breach of the peace, he had no defense against the charge.

The rule of burden of proof is the same in a criminal proceeding, where "any arrest made without a warrant, if challenged by the defendant, is presumptively invalid," and the "burden is upon the state" to justify it as one not only authorized by statute, but also as one not violative of constitutional provisions.   The "invalidity of the arrest" will render "the search invalid and the evidence obtained inadmissible.[11] This was so held in *Testolin v. State,* 205 N.W. 825 (Wis. 1925).

6   *Southern Ry. Co. v. Shirley,* 121 Ky. 863,  90 S.W. 597, 599 (1906); citing: 12 *Am. & Eng. Ency. of Law* (2d Ed.) p. 733.

7   *McAleer v. Good,* 216 Pa. 473, 65 Atl. 934, 935 (1907); *Mackie v. Ambassador Hotel & Inv. Co.,* 123 Cal. App. 215, 11 P.2d 3, 6 (1932).

8   *Jackson v. Knowlton,* 173 Mass. 94,  53 N.E. 134 (1899).

9   *Evans v. Jorgenson,* 182 Minn. 282,  234 N.W. 292, 293 (1931).  Cases cited.

10   *Snyder v. Thompson,* 134 Iowa 725,  112 N.W. 239, 241 (1907).

11   *State v. Mastrian,* 285 Minn. 51, 56-57,  171 N.W.2d 695 (1969);  *Butler v. State,* 212 So.2d 573, 577 (Miss., 1968).

34

## Good Faith & Probable Cause

The most common defense raised in false imprisonment suits is that the arresting officer acted in good faith or with good intent. This argument of defense is often raised along with the defense that the officer had "probable cause." Both of these defenses are often misapplied to the action of false arrest. Such defenses are more applicable to suits involving malicious prosecution or abuse of process, rather than to false imprisonment, as stated by the Supreme Court of Iowa:

> False imprisonment is the unlawful restraint of an individual's personal liberty or freedom of locomotion. * * * The good faith of the actor is no justification, nor is the want of probable cause an essential element, as in the case of malicious prosecution. [12]

In cases of false imprisonment, the only essential elements of the action are "detention and its unlawfulness." Thus "malice and the want of probable cause need not be shown," [13] or are "not necessary to a proper cause of action for false arrest." [14] Even where the unlawful arrest is claimed to have been for the public good, such a defense will not stop damages.

> It is well settled law that the want of reasonable or probable cause and the want of malice are elements not entering into the action of false imprisonment in so far as actual damages are concerned. [15]

The question of probable cause, in its usual sense, is not involved in the action for false imprisonment. [16]

Thus, according to the great weight of authority, the existence of probable cause is not an element of nor a defense to an action for false imprisonment. [17]

A case in South Dakota developed where a sheriff had, due to mistaken identity, arrested the wrong person as an embezzler upon a warrant which did not name or describe the person to be arrested. The sheriff alleged good faith and probable cause for arresting the man. The State Supreme Court held that the fact that the sheriff acted in good faith and with probable cause was no defense, and may not be taken into account in determining the damages which will compensate the plaintiff. [18]

In many cases officers will try to justify an arrest for a misdemeanor based upon a strong belief that the person arrested is guilty. In such a case, the Appellate Court of Illinois held:

> In an action for trespass and false imprisonment, probable cause and the absence of malice constitute no defense. * * * In this form of action belief in the guilt of the party arrested, no matter how strong or well founded in the mind of the officer or person making the arrest, will not justify the deprivation of another of his liberty; and it is unimportant whether the circumstances would lead a reasonable or prudent person

---

12  *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 92, 93 (1952). Citing, *Maxwell v. Maxwell*, 189 Iowa 7, 177 N.W. 541 (1920).

13  *Sinclair Refining Co. v. Meek*, 62 Ga.App. 850, 10 S.E.2d 76, 79 (1940). Authorities cited.

14  *Stallings v. Foster*, 119 Cal.App.2d 614, 259 P.2d 1006, 1009 (1953).

15  *Carter v. Casey*, 153 S.W.2d 744, 746 (Mo. 1941). Numerous cases cited therein.

16  *Ehrhardt v. Wells Fargo & Co.*, 134 Minn. 58, 158 N.W. 721, 722 (1916).

17  *Swafford v. Vermillion*, 261 P.2d 187 (Okla. 1953). See also, 35 *Corpus Juris Secundum*, "False Imprisonment," § 7, p. 631; 32 *American Jurisprudence*, "False Imprisonment," §§ 6, 7, p. 64, § 114, p. 178; *Hostettler v. Carter*, 175 Pac. 244, 246 (Okla., 1918).

18  *Bean v. Best*, 77 S.D. 433, 93 N.W.2d 403 (1958).

to believe that the accused was actually guilty.[19]

In some cases, instead of asserting that the officer acted in good faith, the defense is raised that malice must be proven on the part of the arresting officer. This defense is, however, groundless in matters of false imprisonment.

In an action for false imprisonment, neither actual malice nor want of probable cause is an essential element necessary to a recovery of general damages.[20]

What ever the motives of the arresting officer, they do not cause or bring about a change in the legality of an arrest, as was asserted by the Supreme Court of Missouri:

A lawful imprisonment does not become unlawful because of malicious motives nor does an unlawful detention become lawful because actuated by a laudable purpose or founded in good faith.[21]

Closely related to the defense of good faith or lack of malice is that an arrest is justified where there is no force or injury done to the person arrested. But as the United States Court of Appeals stated, this does not justify an arrest:

All that is necessary to establish false imprisonment is that an individual be restrained of his liberty under the probable imminence of force without any legal cause or justification therefor. It is not necessary to show actual force, threats, or injury done to the individual's person, character, or reputation. The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of the wrong when the detention is unlawful.[22]

Where a deputy game warden had arrested a man without warrant and incarcerated him in the county jail, the deputy claimed that at the time of the arrest he had probable cause for believing that plaintiff was then violating the law, by hunting without a license. It was held that there was a false imprisonment involved, as the Supreme Court of Alabama said:

In false imprisonment, the essence of the tort is that the plaintiff is forcibly deprived of his liberty, and the good intent of the defendant, or the fact that he had probable cause for believing that an offense was committed, and acted in good faith, will not justify or excuse the trespass.[23]

In an action against a mayor and a police court judge for alleged false arrest and imprisonment, it was claimed that the defendants acted maliciously with a design to injure the plaintiff. It was held by the Supreme Court of Kansas that based upon the claim of malice, the defendants were not liable for false arrest. The proper remedy would be an action for malicious prosecution. The Court also stated:

The motive with which a restraint of liberty is accomplished, be it evil or good, is irrelevant to the question of whether or not an unlawful arrest has been established. The existence of actual malice is of consequence only as it may afford the basis for punitive damages. In *Garnier v. Squires*, 62 Kan. 321, 62 P. 1005, the court said: "As will be seen, malice and willfulness are not essential elements of false imprisonment; and motives of the defendant, whatever they may have been, are not material to the case."[24]

19 *Markey v. Griffin*, 109 Ill. App. 212 (1903).

20 *McNeff v. Heider*, 337 P.2d 819, 821 (Ore., 1958); 35 C.J.S. "False Imprisonment," § 7, pp. 629-30.

21 *Thompson v. Farmers' Exchange Bank*, 333 Mo. 437, 62 S.W. (2d) 803, 811 (Mo. 1933).

22 *Nesmith v. Alford*, 318 F.2d 110, 118-19 (1963). Authorities cited therein.

23 *Daniels v. Milstead*, 221 Ala. 353, 128 So. 447, 448 (1930); *De Armond v. Saunders*, 243 Ala. 263, 9 So.2d 747, 751 (1942).

24 *Holland v. Lutz*, 194 Kan. 712, 401 P.2d 1015, 1019 (1965).

36

And the Court of Appeals of Maryland had stated:

> In false imprisonment suits, * * * the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and the good or evil intention of the defendant does not excuse or create the tort. 11 R.C.L. 791. * * * Any deprivation by one person of the liberty of another without his consent, constitutes an imprisonment, and if this is done unlawfully, it is false imprisonment, without regard to whether it is done with or without probable cause.[25]

In a case of false imprisonment, the defendant claimed that the petition did not state a cause of action, for the reason that it was not alleged that the imprisonment was malicious and without probable cause. The trial court held that these claims were only valid in suits for malicious prosecution, and that there was a marked distinction between malicious prosecution and false imprisonment. The Kentucky Court of Appeals affirmed this position with various cites:

> In Starkie's Evid. 1112, it is said: "No proof of malice or want of probable cause is necessary to make a case for false imprisonment."[26]

Where the life, liberty or property of the citizen are at stake, good intentions are never good enough. It has been stated that the citizen's liberty must not depend upon good faith merely, but upon legal rules governing official action.[27]

It has been held many times that in cases of false imprisonment, "the defendant can only avoid liability for false arrest by pleading justification for the arrest."[28]   All other arguments must necessarily fail.

### Ignorance of Law

It is a fundamental maxim of law that ignorance of the law is no excuse to violating it.   One such maxim is as follows:

> Ignorance of the fact excuses; ignorance of the law excuses not. Every man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance may not be carried.[29]

It has been said that an unlawful detention or imprisonment does not become lawful because done out of of ignorance of the law.[30] The Georgia Court of Appeals has held that, "It is no defense that a person perpetrating an illegal arrest or imprisonment is ignorant of the illegality of his acts."[31]   Knowingly committing an arrest which is illegal is sufficient to fix liability.

> False imprisonment is treated as a tort, and also as a crime. * * * If the conduct is unlawful, neither good faith, nor provocation, nor ignorance of the law is a defense to the person committing the wrong.[32]

After speaking on the constitutional rights of citizens, the Supreme Court of Minnesota further adds:

---

25  *Mahan v. Adam*, 144 Md. 355, 124 Atl. 901, 905 (1924),  cases cited.

26  *Southern Ry. Co. in Kentucky v. Shirley*, 121 Ky. 863,  90 S.W. 597, 599 (1906),  authorities cited.

27  *Hill v. Wyrosdick*, 216 Ala. 235,  113 So. 49, 50 (1927).

28  *Kraft v. Montgomery Ward & Co.*, 348 P.2d 239, 243 (Ore. 1959).

29  *Maxims of Law*, ed. C. A. Weisman, 57f. (1 *Coke*, 177;  4 *Bouvier's Institutes*, n. 3828).

30  35 *Corpus Juris Secundum*, "False Imprisonment," § 7, p. 630.

31  *Stembridge v. Wright*, 32 Ga.App. 587,  124 S.E. 115 (1924).

32  *Kroeger v. Passmore*, 36 Mont. 504,  93 Pac. 805, 807 (1908).

As is the case of illegal arrests, the officer is bound to know these fundamental rights and privileges, and must keep within the law at his peril.[33]

Ignorance cannot be an excuse for violating the rights of citizens or any constitutional mandates such as due process, especially by those who have taken an oath to uphold that law. They become a hypocrite upon the assertion of such an excuse.

## Guilt of Party Arrested

An unlawful arrest cannot be justified because the arrested party was actually guilty of the charge for which he was arrested. The person charged with an offense can only be deprived of his liberty by due process of law, and this constitutional safeguard applies to the guilty as well as the innocent.

Thus the guilt of the one arrested has no bearing on the legality of an arrest:

> As stated in Annotation 25 A.L.R. 1519: "No one can recover damages for a legal arrest and conviction; therefore, in cases of malicious prosecution, it becomes necessary to await the final determination of the action. But the same principle does not apply to an action for false imprisonment, as the form of action is based upon an illegal arrest; and no matter ex post facto can legalize an act which was illegal at the time it was done."[34]

Thus nothing that happens ex post facto (after the fact of the arrest) can change the legal nature of the original arrest. A prosecution and verdict of guilty does not make an unlawful

arrest lawful. In a case of false imprisonment where it was being asserted that the plaintiff was guilty, the Supreme Court of Oklahoma said: "The guilt of the plaintiff is not material."[35] In the *Michigan Law Review* it was stated that:

> An arrest is unlawful, even though the arrestee be guilty of a felony, if the officer had not reasonable ground to believe him guilty. Thus neither the guilt nor innocence of the person arrested has anything to do with the legality of the arrest.[36]

It thus has been declared that in an action for false imprisonment, the termination of a prior proceeding in favor of the one deprived of his liberty is not material to his suit.[37] Since termination of the proceedings is not material, the fact that the one deprived of his liberty was actually found guilty is immaterial to the false imprisonment suit. But in a suit for malicious prosecution, there must be a termination in the proceedings in favor of the party deprived of his liberty to prevail. If he is found guilty, he cannot sue for malicious prosecution.

A false imprisonment case in New Jersey occurred where a woman was committed to an insane asylum by a business partner, and was released a few days latter by her husband. The woman sued the partner for false imprisonment but it was argued that the woman failed to plead or prove that the proceedings leading to her arrest and imprisonment in the asylum had terminated. The Appeals Court said that the argument raised did not apply to this case as it was an

---

33  *Thiede v. Town of Scandia Valley.* 217 Minn. 218, 231, 14 N.W.(2d) 400 (1944).

34  *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 92-93 (1952); citing, *Neves v. Costa,* 5 Cal. App. 111, 89 Pac. 860 (1907).

35  *Halliburton-Abbott Co. v. Hodge,* 44 P.2d 122, 125 (Okla., 1935).

36  *Michigan Law Review,* vol. 31, April, 1933, p. 750; citing numerous cases.

37  *Riegel v. Hygrade Seed Co.,* 47 F.Supp. 290, 293 (1942); *Thompson v. Farmers' Exchange Bank,* 62 S.W.(2d) 803, 810 (Mo. 1933); 25 *American Law Reports,* Annotation, p. 1518.

38

action for false imprisonment, and not malicious prosecution. The Court held:

> The weight of authority is against the proposition that in a suit for false imprisonment the prosecution should terminate before a suit for damages can be instituted.[38]

In a suit for false imprisonment, a record of conviction for the same offense for which the arrest was made is inadmissible.[39] An action for false imprisonment is to be based upon the legality of the arrest, not upon the filing of a complaint, or the proof of an alleged crime, or the results of a trial, as the California Supreme Court said:

> The finding of guilt in the subsequent criminal proceeding cannot legalize an arrest unlawful when made.[40]

Even where a party has pleaded guilty, the one making the arrest can still be liable for an illegal arrest.[41] Thus it has been held that consent to an unlawful arrest will not excuse an officer or person from their acts, as held by a *Federal Circuit Court of Appeals:*

> We are of opinion that the law does not permit the citizen to consent to unlawful restraint, nor permit such a claim to be made upon the part of the defendants. In Wharton on Criminal Law, vol. 1, § 751e, it is said: "No man has a right to take away another's liberty, even though with consent, except by process of law. And the reason is, that liberty is an unalienable prerogative of which no man can divest himself, and of which any divestiture is null.[42]

## Immunity

The argument of official immunity would seem to be an obvious and logical argument for an officer in defense of a charge of false imprisonment.     Government is generally immune from being sued and peace officers are regarded as members of government, thus it is often claimed they are immune from suit. But the immunity doctrine does not extend to anyone in government who causes a wrong:

> But immunity from suit is a high attribute of sovereignty—a prerogative of the State itself—which cannot be availed of by public agents when sued for their own torts.[43]

Under the doctrine of official immunity there have been distinctions made between acts that are "discretionary duties," which an officer in performance of is immune, and acts which are "ministerial duties," for which officers remain liable. An officers official duty is described as ministerial, "when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts."[44] An arrest by an officer is a ministerial not a discretionary act.

---

38 *Boesch v. Kick,*  98 N.J. Law 183, 119 Atl. 1, 2 (1922);   25 A.L.R. 1516;  5 Am. Jur. 2d, "Arrest," § 22, p. 712.

39 Dunnell Minnesota Digest, 3rd Ed., Vol. 8A, "False Imprisonment," §1.06(c), citing *Wahl v. Walton,* 30 Minn. 506, 16 N.W. 397  (1883).

40 *Coverstone v. Davis,* 38 Cal.2d 315, 239 P.2d 876, 878 (1952);  *Wilson v. Loustalot,* 85 Cal.App.2d 316, 193 P.2d 127, 132 (1948);  *Stewart v. State,*  244 S.W.2d 688, 690 (Tex. Civ. App., 1951).

41 *Hotzel v. Simmons,* 258 Wis. 234, 45 N.W.2d 683, 687 (1951);  *Anderson v. Foster,* 73 Idaho 340, 252 P.2d 199, 202 (1953).

42 *Meints v. Huntington,*  276 Fed. 245, 250 (1921),  other authorities cited.

43 *Hopkins v. Clemson College,* 221 U.S. 636, 642-43 (1910);  *Johnson v. Lankford,* 245 U.S. 541, 546 (1917).

44 *Rico v. State,* 472 N.W.2d 100, 107 (Minn., 1991).

# 6

# THE USE OF A WARRANT IN ARRESTS

The requirement for warrants in the seizure of persons and property is an affirmation of common law principles. The declaration in our constitutions prescribing the mode in which they are to issue, reflects the abhorrence of the use of the so-called "general warrants," whereby easy and arbitrary arrests and seizures were made.

Despite such declarations for the security of liberty, privacy and property, history shows that the executive department has strong tendencies to disregard and violate them, as revealed by the U.S. Supreme Court:

> Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects.[1]

While the Fourth Amendment has been badly violated, we find that the due process of law provision is virtually ignored when it comes to warrants. For the most part it is the due process provision which prescribes the actual requirement of a warrant for all arrests except where public security allows a warrantless arrest.

## Warrant to be in the Possession of the Arresting Officer

A warrant of arrest is a written order issued by a court or magistrate, directed to a peace officer or to a specified private person, commanding him to arrest a named person.[2] It is regarded as fundamental law that where one cannot arrest without a warrant, a warrant must be acquired and be in the actual possession of the one making the arrest otherwise he is not protected by it.

The requirement of having the warrant for arrest "in actual possession" is the common law rule and thus is part of due process of law, as it is a procedure which deprives a citizen of his liberty.

In a case where a policeman, by direction of a sheriff, arrested an individual pursuant to a warrant, it was claimed the arrest was unlawful since the sheriff retained the possession of the warrant in his office. The Supreme Court of North Carolina held that "the overwhelming weight of authority" for misdemeanor charges, is that the officer "must have the warrant in his possession." The Court stated the following:

> In 6 C.J.S., Arrest, § 4, p. 576 et seq., we find the general rule stated as follows: "The warrant must at the time of arrest be in the possession of and with the person purporting to act thereunder or of one with whom he is acting in conjunction. * * * Accordingly, where the warrant is at the officer's house some distance from the scene of the arrest, or in the hands of another who is not at the scene of arrest, or in the central office of a city detective bureau, the arrest is unlawful."[3]

Since there was no felony or breach of peace committed in the presence of the policeman, his arrest was deemed illegal despite the fact there was a valid warrant for the individual arrested, since it was with the

---

[1]   Jones v. United States, 362 U.S. 257, 273 (1959).

[2]   Wharton's Criminal Procedure, vol. 1, 12th ed., § 54, p. 151.

[3]   Alexander v. Lindsey, 230 N.C. 663, 55 S.E.2d 470, 474 (1949).

sheriff who was in another town. The Court also said that the good faith of the policeman did not affect the unlawfulness of the arrest.

A Mississippi case involved a warrant that was issued for the arrest of a Bill Smith on a reckless driving charge. Under the sheriff's instructions, a deputy went to Smith's home to arrest him while the warrant remained in the sheriff's office. Smith asked to see the warrant for his arrest. The deputy replied that he did not have it with him, but that it was at the sheriff's office and Smith could see it when they arrived there. However, Smith said he would have to see the warrant before he would submit to the arrest. Smith resisted the arrest. The sheriff was called out but came without the warrant. Smith again resisted but was forcibly taken to jail. The State Supreme Court held the arrest unlawful:

> [U]nder the great weight of authority an officer making an arrest for a misdemeanor not committed in his presence must have the warrant for such arrest in his actual possession if the arrest is to be lawful. [4]

In a criminal case involving a violation of a lien, a policeman was given a warrant for the arrest of a man named Shaw. He drove to Shaw's house in a buggy. He left the warrant in the buggy being some 150 yards from the house. The officer went into the house and put his hand on Shaw's shoulder and told him that he had a warrant for him and to consider himself under arrest. Shaw asked, "What for?" The officer replied, "For disposing of property under lien," and that a Mr. Bradham had sworn out the warrant. Shaw said, "I am not going." He resisted the arrest and claimed at trial that the arrest was not valid as at the time of arrest the officer had not actual possession of the

warrant. The State Supreme Court held that the warrant was in fact in the officer's possession:

> The authorities agree that in cases of misdemeanor not committed in his presence, and for which he cannot lawfully arrest without a warrant, the officer should have the warrant in his actual possession at the time of making the arrest.  * * * It was not necessary that he should have the warrant in his hand or in his pocket at the time of making the arrest. Actual possession of it does not mean that. The rule is satisfied if the officer has such possession of the warrant that he can produce it with reasonable promptness on demand.[5]

The question of what constitutes "possession" of the warrant has often been debated, but it is obvious that it must be so close at hand as to show it upon request. Thus it need not be said that the warrant must in all cases be directly in the hand of the arresting officer. This would be too narrow and technical view of the law and one not based on substantial grounds. One reason for "actual possession" is to show the authority for the arrest; another is to display or read the warrant, and since this is to be done promptly the possession must exist. Thus the warrant must be "in possession" but not necessarily "in hand," as the Federal Circuit Court of Appeals stated:

> [T]he officer who seeks to arrest by virtue of a warrant must have the warrant in his possession at the time of the arrest.  We need not undertake to define exactly what is meant by "in his possession."  * * * Of course, it does not necessarily mean that the warrant shall be actually in his hand.[6]

Where a warrant was directed to all police officers, and exhibited to two officers but was kept in the police station, the warrant

---

4   *Smith v. State*, 208 So.2d 746, 747 (Miss., 1968).  Although an officer upon seeing a misdemeanor being committed cannot arrest the person committing it, he can in most cases stop him from committing it or prevent its continuance. Thus in observing a petty theft, an officer can stop the suspect, which would be an arrest, to recover the items taken.

5   *State v. Shaw*, 104 S.C. 359, 89 S.E. 322, 323 (1916).

was not "sufficiently in the possession of the two officers to sustain an arrest by them."[7]

In the rather famous and landmark case of *Crosswhite v. Barnes*, a warrant for the arrest of a Mrs. Barnes was issued by a justice for a misdemeanor, and placed in the hands of W. T. Crosswhite, chief of police. Crosswhite, along with a police Sergeant, set out to execute the warrant, but left the warrant of arrest in his desk at the courthouse. When the officers first saw Mrs. Barnes she was driving down State street in her automobile. The police turned their car in front of Mrs. Barne's car to stop her. One officer opened her car door, took hold of her by the arm, and said, "Get in my car." She refused and told the police she would not go anywhere without her husband. The policeman said, "we want you, not your husband." She asked the officers to show her the warrant. Mr. Crosswhite said he "did not have to do so," and said that "you are going to the courthouse." The argument continued ending in Mrs. Barnes being forcibly taken to the courthouse. Mrs. Barnes brought an action against Crosswhite and the other policeman for illegal arrest and assault and battery. The police were found guilty and on appeal the Supreme Court of Appeals of Virginia affirmed the conviction, and in a very authoritative decision stated:

> The text-books generally state, and many cases hold, that it is necessary not only that a warrant of arrest should have been issued, but that the officer making the arrest shall have it with him and show it on request.

In Beale's Crim. Pl. & Pr. § 18, it is said: "An officer arresting on a warrant must have the warrant with him, and must show it on request."

In 1 Bish. New Crim. Proc. § 190, it is said: "to justify an arrest under a warrant, the officer must have it in possession; and, if though delivered to him, he leaves it at his office or station house, it will not protect him."

In 2 R.C.L. (*Ruling Case Law*) 465, § 23, speaking of misdemeanors not committed in the presence of the officer, it is said: "The officer should have the warrant in his actual possession in order to justify the arrest, and if he does not have it, although it has been duly issued, an officer making an arrest may not be protected by it."[8]

The Court also referred to and relied upon a previous case in Virginia, the case of *Muscoe v. Commonwealth*, in which a policeman undertook to arrest Muscoe for a past misdemeanor, without a warrant, and Muscoe shot and killed him. He was convicted of murder and in the appeal the Court reversed the conviction stating:

> Indeed, not only must there be a warrant in the class of cases last mentioned [misdemeanors], but, to justify the arrest, the officer must have the warrant with him at the time.[9]

Since a warrant must be in one's possession to arrest, a sheriff has no authority to send a deputy to one place to make an arrest without a warrant, while he goes to another for the same purpose with the warrant. Nor can he send his deputy into one town while he gives pursuit in another.[10]

> Under the ancient practice of hue and cry, before warrants were issued, this might be done in the pursuit of felons, but no hue and cry could be raised for a misdemeanor.

6  *O'Halloran v. M'Guirk*, 167 Fed. 493, 495, 93 C.C.A . 129 (1909).

7  *People v. Fischetti*, 273 Ill. App. 215 (1933).

8  *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242, 245 (1924).

9  *Muscoe v. Commonwealth*, 86 Va. 443, 10 S.E. 534 (1890).

10  *McCallough v. Greenfield*, 133 Mich. 463, 95 N.W. 532, 533 (1903).

42

We think it clear that in cases of misdemeanors the sheriff must be present either in sight or hearing, directing the arrest, to justify a person not armed with the warrant to make the arrest.[11]

In a Georgia case, a warrant was issued for the arrest of Shaw, charging him with a misdemeanor. The warrant was directed to any sheriff, deputy, coroner, or constable of the state. When a constable tried to arrest Shaw at his home, a friend named Adams interposed and asked the constable if he had a warrant for Shaw. The officer replied that he had it at his home; but not with him. Adams thus prevented the arrest of Shaw and liberated him from the custody of the Constable. Adams was charged with interfering with the arrest. The Supreme Court of Georgia held that Adams was not guilty of any offense since Shaw was not legally in the custody of the officer by virtue of a lawful arrest. The Constable had no authority to arrest except under the warrant which he did not have in his possession. The Court held:

Whenever a warrant has been issued to arrest a person charged with an offense in respect of which he cannot be apprehended without a warrant, the police officer must have the warrant in his possession at the time when he executes it. If he has not, the arrest will be illegal.[12]

Later the Court upheld this case under a similar situation, where a warrant had actually been issued for an arrest, but the warrant was in the hands of the sheriff a number of miles away from where the arrest took place. The arrest was not lawful as the officer making the arrest had not been in possession of the warrant.[13]

In many cases unlawful arrests have occurred where an officer receives some sort of communication from another jurisdiction or a central office that a warrant exists for the arrest of a particular individual. The officer relying on such information and making an arrest upon it is liable for false imprisonment, as he arrested without a warrant in his possession. One treatise says:

In a case where the officer of one city, county or district, telephones to officers of another city, county or district to make an arrest of a party with the last mentioned city, county or district, it affords the officer attempting to carry out the instruction no protection and the arrest is illegal, unless such officer would have a right to arrest without a warrant.[14]

Thus where an officer was informed by a letter, written by the chief of police of a city in another state, that a certain person has absconded with funds belonging to a benevolent association, the officer was liable in damages for the arrest of this person without a warrant.[15]

The fact the a person knows that a warrant for his arrest is outstanding does not eliminate the need for possession of the warrant in making the arrest. In Anderson's *Treatise on Sheriffs*, it states:

Where arrest is being made under the authority of a warrant, the officer attempting to execute same, and arrest the party named therein, must be in possession of said warrant or it affords him no protection. The necessity for the possession of the warrant is not relaxed by reason of the fact that the party to be arrested knows of

---

11  *Kratzer v. Matthews*, 233 Mich. 452, 206 N.W. 982, 984 (1926); citing, *People v. McLean*, 68 Mich. 480, 36 N.W. 231.

12  *Adams v. State*, 121 Ga. 163, 48 S.E. 910, 911 (1904).

13  *Giddens v. State*, 154 Ga. 54, 113 S.E. 386, 389 (1922).

14  Walter H. Anderson, *A Treatise on the Law of Sheriffs*, vol. 1, §133, pp. 128-29 (1941). A sheriff is liable if he arrests for a misdemeanor when acting upon a telegram stating a warrant exists. *Roberts v. Dean*, 187 So. 571 (Fla. 1939).

15  *Malcomson v. Scott*, 56 Mich. 459, 23 N.W. 166 (1885).

the issuance and existence of such warrant for his arrest.[16]

Thus where an arrest is made without having the warrant in the possession of the arresting officer, such an arrest is treated as though it were made without a warrant.

### Warrant to be Shown Upon Arrest

Coupled with the requirement to have the warrant in possession when making an arrest, is the requirement to show or display the warrant to the arrested person. Where an arrest is claimed to be made under the authority of a warrant, it is the duty of the one making the arrest to show the warrant and read it to the one being arrested, especially when he requires to see it or demands to know the nature and cause of the arrest. He need not submit if this is not done.

In the case of *Smith v. State*, supra, the Supreme Court of Mississippi not only said that the warrant must be in the actual possession of the officer, but "he must show it to the accused, if requested to do so."[17] In *State v. Shaw*, supra, the Court said that the reason that a warrant is to be in the actual possession of the arresting officer, is that, "if demanded, he must produce the warrant and read it to the accused, that he may know by what authority and for what cause he is deprived of his liberty."[18]

In *Crosswhite v. Barnes*, supra, it was stated that the arresting officer must have the warrant with him, "and must show it on request." It cited a number of authorities in support of this such as the following:

In the annotator's summary of a note in 42 L.R.A. at page 682, it is said: "An accused person, if he demands it, is entitled to have the warrant for his arrest shown to him at the time of arrest. (See also 51 L.R.A. 211).[19]

In an early case in New York, a special deputy was charged with the duty to serve a warrant for larceny, issued by a justice of the peace. The person arrested required the deputy to show him the warrant, before he would submit to the arrest. The deputy did not do so and the man resisted and the deputy beat him. At trial the judged charged the jury that if the defendant did not show the warrant to the man, he was a trespasser. The jury found a verdict in favor of the man arrested. The Supreme Court of New York upheld the verdict stating:

A special deputy is bound to show his warrant if requested to do so, and if he omit, the party against who the warrant is may resist an arrest, and the warrant under such circumstances is no protection against an action for an assault, battery and false imprisonment.[20]

Failure to show or display a warrant when a warrant for an arrest allegedly exists, the arrest becomes illegal. On this matter the Supreme Court of Georgia stated:

In *Galliard v. Laxton*, 2 Best & S. 363, 9 Cox C.C. 127, it was held that in a case in which a lawful arrest could not be made except under a warrant the arresting officers were bound to have the warrant ready to be produced if required; that an arrest in such a case by police officers who did not have the warrant in their possession at the time was illegal.[21]

---

16  Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners & Constables*, vol. 1, §133, p. 128 (1941).

17  *Smith v. State*, 208 So.2d 746, 747 (Miss., 1968).

18  *State v. Shaw*, 104 S.C. 359, 89 S.E. 322 (1916).

19  *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242, 245 (1924).

20  *Frost vs. Thomas*, 24 Wendell's Rep. (N.Y.) 418, 419 (1840).

21  *Adams v. State*, 121 Ga. 163, 48 S.E. 910, 911 (1904).

44

Thus the primary reason for the officer to have the warrant in his possession when making an arrest under the warrant, is so that it can be shown to the one arrested, so that he knows the authority by which he is being deprived of his liberty. This was so held by the Supreme Court of Texas:

> It ought not to be denied that the law contemplates that the warrant directing the arrest of a person charged with a crime will be in the possession of the officer when he makes an arrest under it, for he is required to exhibit it, if called upon to do so; and this is based on a wise public policy, one purpose of which is that the officer may have to exhibit such evidence of his authority to make the arrest as will be deemed sufficient to take from the person whose arrest is commanded all right to question the authority of the officer.[22]

The argument that officers are free to arrest because there is a warrant outstanding, is nullified by the requirement of law that one arresting under a warrant must show it if requested to do so, which is manifestly impossible unless he has the warrant in his possession.

An officer arresting for taxes due on a tax warrant was held to be a trespasser where he had not the warrant with him at the time of arrest, thus failing to show it to the one arrested. The Court unanimously held:

> We think the authorities * * * are all to the effect that the officer making the arrest must be in a situation to show, if required, the authority under which he is acting. It is the legal right of the citizen when arrested that such shall be the situation, and, therefore, when such situation does not exist the arrest is a legal wrong.[23]

An arrest warrant is to be shown to the accused for he has a right to see if it is a valid warrant. Speaking on the topic, "Production of Warrant," one law textbook states:

> Every person relying upon a warrant in making an arrest should read it if requested so to do, * * * Where a warrant is necessary but the person making the arrest refuses to exhibit it when called upon to do so * * * he may forfeit the protection which it otherwise would afford him.[24]

In the Annotation of *American Law Reports*, vol. 40, p. 62, a review was given on the topic: "Necessity of showing warrant upon making arrest under warrant." The report clearly showed many other cases that held that the officer must show the warrant upon request, and stated:

> The weight of authority now, however, seems to support the proposition that an officer making an arrest under a warrant should show the warrant, if requested to do so, and in some jurisdictions he is expressly required by statute to do so.[25]

The enactment of a statute that the warrant is to be shown upon arrest is but declaratory of the due process procedure that must be followed in an arrest. Thus no statute is needed and where it exists it is merely redundant in nature.

The annotated report did speak of some authorities where it appeared that the failure of showing the warrant was allowed. It stated in the review that in some cases, "a regular officer does not need to show his warrant *before* making an arrest thereunder." Such cases involved the question of whether the officer is known or unknown to the person

---

22   *Cabell v. Arnold*, 86 Tex. 102, 23 S.W. 645, 646 (1893).

23   *Smith v. Clark*, 53 N.J.L. 197, 21 Atl. 491 (1891). Citing *Webb v. State*, 51 N.J. Law 189, 17 Atl. Rep. 113.

24   2 *Ruling Case Law*, "Arrest," § 23, pp. 465-66.

25   40 *American Law Reports*, Annotated, p. 66, numerous cases cited.

being arrested. In some cases it was stated that when the officer is known he need not show the warrant *before* the arrest, but must show it after the arrest. And where the officer is unknown he is to show the warrant *before* the arrest. Other cases where it appeared that the showing of the warrant was not needed is where resistance is offered or threatened before the person asked to see the warrant.

The argument that a known officer need not display his warrant at all, or that in lieu of displaying it need only state the authority under which he is acting, is not justified by the principles for why warrants are needed in the first place. Such an argument could completely take away most of the safeguards of liberty which the requirement for a warrant was established. The true law on the matter requires the officer to possess and display the warrant whether he is known or not, and in addition to his stating the nature and cause for the arrest.

> The generally recognized rule, however, sustained by the weight of authority and particularly in cases of misdemeanors, requires the officer to exhibit the warrant of arrest before the arrest is made, unless there is some resistance.[26]

In an English case cited in 40 A.L.R., Annotated, it was held that where a constable making an arrest did not have the warrant with him, he was not justified in making the arrest. The court said:

> We have already expressed our opinion that, if requested, the officers are bound to produce the warrant; and, if so, the keeping in custody after request and noncompliance would not be legal; and it can hardly be contended that the arrest itself could be legal.[27]

In an older English case, it was said that the doctrine that an officer need not show his warrant was a "dangerous doctrine." The court also stated:

> I do not think that a person is to take it for granted that another who says he has a warrant against him, without producing it, speaks truth. It is very important that, in all cases where an arrest is made by virtue of a warrant, the warrant (if demanded, at least) should be produced.[28]

The reason for the duty of an officer arresting a party by virtue of a warrant was declared in *Com. v. Cooley*, 6 Gray (Mass.) 350 (1856), as being "to explain the cause for which he makes the arrest; to state the nature and substance of the process which gives him the authority which he professes to exercise; and, if it is demanded of him, to produce and exhibit it to his prisoner for his perusal, that he may have no excuse for resistance." The court added that these are obviously successive steps, which cannot all occur at the same instant of time.

In a New York case a man was convicted for resisting a police officer who attempted to arrest him for a past misdemeanor, the warrant being at his office. His conviction was reversed because it was the duty of the officer, at the time of the arrest, to disclose to the defendant his authority and the process under which he was to be arrested. The Court said the state statute was the same as the common law doctrine on this matter:

> [I]f the officer must show the warrant, if required, then it is plain that it must be in his actual possession. It would be absurd to construe this to mean that after making the arrest the officer must, if required, take the

---

26  Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners & Constables*, vol. 1, §134, p. 131 (1941).

27  40 A.L.R. 67, citing, *Galliard v. Laxton*, 2 Best & S. 363, 121 Eng. Reprint, 1109 (1862). Also in 51 L.R.A. 202.

28  40 A.L.R. 67, citing, *Hall v. Roche*, 8 T.R. 187, 101 Eng. Reprint, 1337 (1799).

46

defendant to some other place and there show him the warrant.[29]

It is clear that the warrant must at the time of arrest be shown, not at a later time.

In *State v. Phinney*, 42 Me. 384 (1856), the court, in discussing authorities, stated that it is very important in all cases where an arrest has been made by virtue of a warrant, that "the warrant should be produced if demanded."

In *Shovlin v. Com.*, 106 Pa. 369, 5 Am. Crim. Rep. 41 (1884), the court, in explaining the duty of one making an arrest, said:

"It is doubtless the duty of an officer who executes a warrant of arrest to state the nature and substance of the process which gives him the authority he professes to exercise, and, if it is demanded, to exhibit his warrant, that the party arrested may have no excuse for resistance."

In *Jones v. State*, 114 Ga. 79, 39 S.E. 861 (1901), the State Supreme Court held that a constable was not justified in attempting to arrest the defendant under a warrant which was in the sheriff's hands. The court said that, "it was the duty of an officer who attempts to make an arrest to exhibit the warrant if he has one."

### Invalid and Unlawful Warrants

A warrant must have certain requisites in order to render it valid and available as a defense. Many unlawful arrests have been made due to warrants failing to meet such requisites. "Whenever a warrant is invalid on its face, or where it is only a summons, the officer arresting the defendants will be liable in

damages."[30]   A prima facie invalid warrant will be regarded as no warrant and the officer making an arrest by a void or invalid warrant is not protected by it.

Process that is void on its face is no protection to the officer who executes it. If a warrant, order, or writ of possession shows lack of jurisdiction of the court, the officer is not protected in serving it. In fact, in so doing he becomes a trespasser.[31]

A constable justifying an imprisonment under a warrant must show that the warrant on its face is legal, and that the magistrate had jurisdiction of the subject-matter.[32] Both a proper subject matter jurisdiction and geographical jurisdiction are necessary for a valid warrant. It is generally held that where the court has no jurisdiction the officer executing a warrant will be liable in damages. The question of jurisdiction can be raised at any time, and since neither consent nor waiver can give jurisdiction, the court will not proceed where it appears from the record that it has no authority.[33]

A warrant for the arrest of an alleged fugitive was void because the complaint did not state that the original charge has been made upon oath, or made to a court, and it afforded no protection to the constable.[34]

The requirements of what a warrant should contain depends primarily on constitutional mandates, due process practices and common law principles.

The common law requires that an arrest made on a warrant be issued only after a formal

---

29 *People v. Shanley*, 40 Hun 477, 478 (N.Y., 1886).

30 51 L. R. A., 197, citing *Frazier v. Turner*, 76 Wis. 562, 45 N.W. 411; *Carratt v. Morley*, 1 Q.B. 18, 1 Gale & D. 45.

31 70 *American Jurisprudence*, 2d Ed., "Sheriffs, Police, and Constables," § 165, pp. 353-54.

32 *Lawyers Reports Annotated*, vol. 51, p. 197, citing *Poulk v. Slocum*, 3 Blackfords (Ind.) 421.

33 5 *American Jurisprudence*, 2d Ed., "Arrest," § 7, p. 700.

34 *Lawyers Reports Annotated*, vol. 51, p. 197, citing *Forbes v. Hicks*, 27 Neb. 111, 42 N.W. 898 (1889).

charge is made under oath.[35]  Thus no arrest is valid unless based upon a sworn affidavit.

> An affidavit that does not appear to have been sworn before any judicial officer, and a warrant signed only by the officer who made the arrest and not dated or authenticated, afford no lawful authority for the arrest and detention of an accused.[36]

Another obvious requirement of a warrant that would make it void on its face is if it is not signed by a magistrate or justice of the peace. It has become a practice in some areas to have warrants rubber stamped with the Judges name. This stamping being done by some clerk or administrative employee.  This blatantly unlawful practice has been adopted for convenience sake, which is the most common reason or excuse government uses to transcend constitutional limitations.   Such limitations were designed to make government follow certain established procedures and thus make things difficult in order to deprive a citizen of his liberty or property.   A rubber stamped warrant is invalid on its face as it is not signed by any judicial officer. The authorization for a warrant requires not only judicial authority but is to be done by one who is learned in the law to determine if probable cause exists to issue the warrant.

In Minnesota, the State Supreme Court held that a statute permitting clerks and deputy clerks of the County Municipal Court to receive complaints and issue warrants in prosecutions under municipal ordinances is unconstitutional.  The Court said:

> The United States Supreme Court has considered and disposed of a related problem in *Camara v. Municipal Court*, 387 U.S. 523, 541. * * * The majority in Camara nevertheless stressed the need for "individualized review" by a "neutral magistrate" to avoid the issuance of "rubber stamp" warrants.[37]

Since the taking of an affidavit in a criminal proceeding imposes a duty of a judicial nature, an affidavit taken before a clerk or prosecuting attorney is not sufficient as a basis for the issuance of a warrant.[38]

A warrant is regarded as insufficient and thus void if, on its face, it fails to state facts sufficient to constitute a crime.[39]   Also, a designation or description of the offense should be written in the warrant, but need not be specified with the same technical strictness that is required in an indictment.[40] The rule on sufficiency of a charge on which a warrant can issue is stated as follows:

> The complaint or charge on which a warrant is issued must set forth the facts constituting the offense on the knowledge of the person making the complaint, and if he does not know them other witnesses must be examined who do know them; and no person can be arrested on the mere belief of the person making the complaint.[41]

A warrant issued for a matter that is not a criminal offense is no justification for a constable who arrests upon it.     A person

35  *Morrow v. State,* 140 Neb. 592, 300 N.W. 843, 845 (1941).

36  *Liberis v. Harper,* 89 Fla. 477, 104 So. 853, 855 (1925). Also see 5 Am. Jur. 2d "Arrest," §12, p. 705.

37  *State v. Paulick,* 277 Minn. 140, 151 N.W.2d 591, 596 (1967). Also: *Cox v. Perkins,* 107 S.E. 863, 865 (Ga. 1921).

38  *Cox v. Perkins,* 151 Ga. 632, 107 S.E. 863 (1921).

39  *Wharton's Criminal Procedure,* 12th Ed., vol. 1, § 54, p. 152 (1974).  Citing, *Go-Bart Importing Co. v. United States,* 282 U.S. 344, 355 (1930); *Ex parte Burford,* 7 U.S. 448, 451 (1806); *Smith v. Clark,* 37 Utah 116, 106 Pac. 653, (1910).

40  *Delk v. Commonwealth,* 166 Ky. 39, 178 S.W. 1129 (1915); *Moser v. Fulk,* 237 N.C. 302, 74 S.E.2d 729, (1953).

41  2 R.C.L. "Arrest," §17, p. 460; citing, *Brown v. Hadwin,* 182 Mich. 491, 148 N.W. 693 (1914).

48

cannot be lawfully arrested by a sheriff acting under a copy of a court order or warrant in the form required.[42] Such copy is not valid.

Inaccuracies and imperfection do not vitiate a warrant which substantially charges an offense. But where a complaint, recited in substance in a warrant, is verified merely on information and belief and does not state facts sufficient to constitute an offense, the warrant must be held to be invalid on its face.[43] Also, an affidavit that merely states belief in the guilt of the accused is insufficient to support a warrant of arrest.[44] The Supreme Court of Kansas said that a warrant cannot be issued which is verified on the county attorney's hearsay and belief:

> If a warrant, in the first instance, may issue upon mere hearsay or belief, then all the guards of the common law and of the bill of rights, to protect the liberty and property of the citizen against arbitrary power, are swept away.[45]

An affidavit based upon a presumption or belief of crime does not give jurisdiction to the court to issue a warrant; and at common law, a constable or sheriff cannot execute a warrant outside their jurisdiction.[46]

To summarize, the following are the basic requisites needed to make a warrant valid :

- A warrant is to be issued by a judicial officer and signed by him.
- It must state the facts that show the matter to be within the jurisdiction of the judicial officer issuing it.
- It cannot be based upon belief or suspicion, but upon probable cause.

- The warrant is to list a complaint which is to state the offense committed and the facts that constitute a crime.
- A warrant is to be supported by a signed affidavit made under oath by the person making the charge.
- It must truly name the person to be arrested, or describe him sufficiently to identify him.
- The warrant must also command that the defendant be arrested and brought before the nearest available magistrate.

The officer is bound to know if under the law the warrant is defective, and not fair on its face, and he is liable as a trespasser, if it does not appear on its face to be a lawful warrant. His ignorance is no excuse.[47] The typical form of a warrant is like this:

### Municipal Court, Springfield Judicial District

To any peace officer of the (realm of jurisdiction): upon signed oath having been brought before me that the crime of larceny has been committed, and accusing John Smith of the same, you are hereby commanded forthwith to arrest and bring that person before me. Bail may be admitted in the sum of $1,000.00. Dated: 15 May 1997. /s/ Bill Wright, presiding judge.

Every citizen should when arrested (or at trial) request to see a warrant and check that it meets required criteria and object if it does not. Point out that the arrest is unlawful and how the warrant is defective. Such vigilance is necessary to secure liberty and to stop unlawful and oppressive measures from continuing in government.

---

42  5 *American Jurisprudence*, 2d ed., "Arrest," § 7, p. 700; citing, *Leighton v. Hall*, 31 Ill. 108 (1863).

43  5 *American Jurisprudence*, 2d Ed., "Arrest," § 8, p. 702.

44  *Giordenello v. United States*, 357 U.S. 480, 78 Sup. Ct. 1245 (1957).

45  *The State v. Gleason*, 32 Kan. Rep. 245, 251 (1884).

46  61 *American Law Reports*, Annotated, pp. 377-379; *Housh v. People*, 75 Ill. 487 (1874).

47  Tiedeman, *Limitations of Police Power*, p. 83, citing; *Grumon v. Raymond*, 1 Conn. 39; *Clayton v. Scott*, 45 Vt. 386.

Case 3:17-mj-04519-TJB   Document 43   Filed 04/13/18   Page 59 of 112 PageID: 709

# 7

# BRINGING ARRESTED PERSON BEFORE A MAGISTRATE

## Duty of Officer

It is a fundamental rule of procedure well grounded in the common law, that where an arrest is made the alleged offender is to be taken "before a magistrate to be dealt with according to law"[1] This is not only to be done, but done without delay, or without unnecessary delay; otherwise the arresting party is liable for a false imprisonment.

In *Blackstone's Commentaries,* Vol. 4, Chap. XXI, p. 292, it was stated that "A constable may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace." The officer must bring a person he has arrested directly to a magistrate, otherwise it is a breach of duty.

> It is the duty of an officer or other person making an arrest to take the prisoner before a magistrate with reasonable diligence and without unnecessary delay; and the rule is well settled that whether the arrest is made with or without a warrant, an action for false imprisonment may be predicated upon an unreasonable delay in taking the person arrested before a magistrate regardless of the lawfulness of the arrest in the first instance.[2]

Thus, even if the arrest was lawful, a failure to take the person arrested to a magistrate will be regarded as unlawful imprisonment, As the Supreme Court of Minnesota held:

> Even though an arrest be lawful, a detention of the prisoner for an unreasonable time without taking him before a committing magistrate will constitute false imprisonment.[3]

In an exhaustive decision on the common law rule of the process and procedure for arrests, the Supreme Court of Mississippi, in the case of *Orick v. State,* said: "By the common law of England" an "arrest without warrant for a felony" can be made, "only for the purpose of bringing the offender before a civil magistrate."[4]

This procedure is the due process of law to be followed in depriving one of his liberty. Thus a failure or even a delay in following this process is an unlawful restraint or deprivation of liberty and thus a type of false imprisonment. The arresting officer has no authority to take a person to a jail and detain him there. His duty is to take the one arrested without delay to a court or magistrate, as said by the Supreme Court of Kansas:

---

[1] *Muscoe v. Commonwealth,* 86 Va. 443, 447, 10 S.E. 534, 535 (1890).

[2] *Mullins v. Sanders,* 189 Va. 624, 54 S.E.2d 116, 120 (1949), citing, 22 Am. Jur., False Imprisonment, § 20, p. 366; 35 C.J.S., "False Imprisonment," §§ 30, 31, pp. 545-547. Also: *Peckham v. Warner Bros. Pictures,* 36 Cal.App.2d 214, 97 Pac.2d 472, 474 (1939); *Oxford v. Berry,* 204 Mich. 197, 170 N.W. 83, 88 (1918).

[3] *Kleidon v. Glascock,* 215 Minn. 417, 10 N.W.2d 394, 397 (1943).

[4] *Orick v. State,* 140 Miss. 184, 105 So. 465, 470 (1925), citing, *Kurtz v. Moffitt,* 115 U.S. 487, 499 (1885).

50

The law contemplates that an arrest either by an officer or a private person with or without a warrant is a step in a public prosecution, and must be made with a view of taking the person before a magistrate or judicial tribunal for examination or trial; and an officer, even, subjects himself to liability if there is an unreasonable delay after an arrest in presenting the person for examination or trial.[5]

The only reason that can justify having an arrested person in jail or detained by the arresting officer, is as a necessary step in bringing him before a magistrate, as so stated by the Supreme Court of Rhode Island:

> When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires. But to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal.[6]

Thus detainment in a jail for purposes of "booking" or fingerprinting or investigating the alleged crime, or interrogation of the prisoner is illegal.

In cases involving the commission of the most severe crimes, as in felonies, the one arresting is still required, without unnecessary delay, to bring the prisoner to the nearest magistrate or court as a matter of fundamental law:

> From the earliest dawn of the common law, a constable could arrest without warrant when he had reasonable grounds to suspect that a felony had been committed; and he was authorized to detain the suspected party

such a reasonable length of time as would enable him to carry the accused before a magistrate. And this is still the law of the land.[7]

The Court went on to state that the officer making the arrest is liable for false imprisonment if he arrests with the intent of only detaining, or if his unreasonable delay causes a detainment. On pg. 1092 it stated:

> It cannot be questioned that, when a person is arrested, either with or without a warrant, it becomes the duty of the officer or the individual making the arrest to convey the prisoner in a reasonable time, and without unnecessary delay, before a magistrate, to be dealt with as the exigency of the case may require. The power to make the arrest does not include the power to unduly detain in custody; but, on the contrary, is coupled with a correlative duty, incumbent on the officer, to take the accused before a magistrate 'as soon as he reasonably can' (authorities cited). If the officer fails to do this, and unreasonably detains the accused in custody, he will be guilty of a false imprisonment, no matter how lawful the original arrest may have been. (Citing, 1 Hil. Torts, pp. 213-14, sec. 9).

Thus, where a person arrested is taken to a jail or sheriff's office and detained there, with no warrant issued before or after the arrest, it is false imprisonment. The one arresting has "a duty to immediately seek a magistrate," and that the failure to do so, "makes a case of false imprisonment, as a matter of law, is held by all the authorities."[8]

In a case involving an indictment for assault and false imprisonment, the Supreme Court of North Carolina held that in the process of a lawful arrest, the one arrested is to be taken immediately to a judge:

5   *Garnier v. Squires*, 62 Kan. 321, 62 Pac. 1005, 1007 (1900).

6   *Kominsky v. Durand*, 64 R.I. 387, 12 Atl.2d 652, 655 (1940).   Authorities cited.

7   *Kirk v. Garrett*, 84 Md. 383, 406-07, 35 Atl. 1089, 1091 (1896).

8   *Heath v. Boyd*, 175 S.W.2d 214, 217, (Tex.–1943);  *Brock v. Stimson*, 108 Mass. 520 (1871).

[T]he question occurs, what is the officer to do with the offender when he shall have been arrested without warrant. All the authorities agree that he should be carried, as soon as conveniently may be, before some justice of the peace.[9]

Though this case involved an arrest without warrant, the Court said it is the duty of the arresting officer upon making an arrest, "whether with a warrant or without one," to carry the offender at once before a justice.

To take an arrested person to a jail to be detained and fingerprinted is a violation of his rights.   It is proof the officer had no intent to bring the accused directly to a judge. In Anderson's *Treatise on the Law of Sheriffs*, the subject of an officer's duty after arrest was examined with this conclusion:

It is the undoubted right on the part of a prisoner, on being arrested by a public officer or private citizen, and un- questionably a corresponding duty on the part of the one making the arrest, to take the prisoner before a court or magistrate for a hearing or examination and this must be done without unnecessary delay. The object of this right and corresponding duty is that the prisoner may be examined, held, or dealt with as the law directs and the facts of the case require. * * * It is highly improper and an invasion of the lawful rights of the prisoner to take him to any other place than to a proper court or magistrate.[10]

In deciding the proper duty and action of an arresting officer after making an arrest, the Supreme Court of Appeals for Virginia stated that the right of the accused to prompt judicial examination does not depend upon their statute law:

But even if the circumstances of the arrest were not within the purview of this particular statute, it was the duty of the arresting officer to have taken the defendant within a reasonable time, or without unnecessary delay, before a judicial officer in order that the latter might inquire into the matter and determine whether a warrant should be issued for the detention of the defendant, or whether he should be released.[11]

And, in speaking on what manner of arrests were lawful at common law, and what are the procedures under the common law when an arrest is made, the Supreme Court of Rhode Island held that:

Coupled with the authority to arrest went an imperative obligation on the officer to bring the arrested person before a magistrate without un- reasonable delay.  Especially was this true where the arrest had been made without a warrant. * * * When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires; but to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal.[12]

This rule of law requiring an officer or person arresting to bring the party arrested before a magistrate is the same in all states and cannot be abrogated by statute.   The same rule has been upheld in Federal courts, and is prescribed under Title 18 in the Rules of Criminal Procedure:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant, shall take the arrested person without unnecessary delay before the nearest

---

9   *State v. Freeman*, 86 N.C. 683, 685-86 (1882).

10   Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables*, Vol. I, § 179-80 (1941).

11   *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 615 (1948).  Authorities cited therein.

12   *Kominsky v. Durand*,  64 R.I. 387,  12 Atl.2d 652, 654, (1940).  Authorities cited therein.

52

available federal magistrate, or in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.[13]

In a Federal case where a man was arrested by two F.B.I. agents assisted by two local policeman on an outstanding warrant for bank robbery, the agents placed the man in a police vehicle, drove a few blocks, and then parked on the street under a street lamp. The officers interviewed the man con- cerning the crime and within a few minutes he confessed to the crime. The Federal Court of Appeals said the confession was inadmissible and reversed his conviction, as the momentary parking of the police vehicle en route from the place of arrest was a detour from the path toward a prompt presentment before a magistrate. The Court stated:

> The law requires an arresting officer to bring an accused before a magistrate "as quickly as possible." (Cases cited).[14]

The rights of the accused were violated as he was not "promptly taken before a judicial officer as the law required," but instead was questioned while held in custody. It is said that police are guilty of oppression and neglect of duty when they willfully detain a prisoner without arraigning him before a magistrate within a reasonable time.[15]

In a case where a person sued for being arrested without warrant and confined in a jail without examination before a court or magistrate, it was found on appeal that such action was unlawful, and the Supreme Court of Illinois held:

> We are of opinion, the arrest of the plaintiff was illegal, and the verdict contrary to the law and the evidence. And if the arrest was legal, they did not proceed according to law, and take him before a magistrate for examination, but conveyed him to another county, and there imprisoned him in the county jail, in a filthy cell, thus invading one of the dearest and most sacred rights of the citizen, secured to him by the great charter of our land. *Kindred v. Stitt*, 51 Ill. 401, 409 (1869).

The requirement of bringing an arrested person directly to a court or judge is due process of law, and as such this procedure cannot be abrogated by statute.[16]

## As a Trespasser Ab Initio

It is a familiar rule of law that one who abuses an authority given him by law becomes a trespasser *ab initio*.[17] That is, he becomes a wrongdoer from the beginning of his actions.

Where one fails to take a prisoner he has arrested to a proper judge, or where he causes an unreasonable delay in doing so, the officer becomes a trespasser *ab initio*.[18] The unlawful confinement by an officer makes the entire transaction, including the arrest, unlawful and a trespass.

Thus even in cases where an executive officer had made a lawful arrest, if he fails to

---

13  18 U.S.C.A. "Rules of Criminal Procedure," Rule 5,  p. 29.

14  *Greenwell v. United States*, 336 Fed.2d 962, 965 (1964).

15  *People v. Mummiani*, 258 N.Y. 394, 180 N.E. 94, 96 (1932); *Peckham v. Warner Bros. Pictures*, 36 Cal. App.2d 214, 97 Pac.2d 472, 474 (1939).

16  For other cases on this matter see: *Judson v. Reardon*, 16 Minn. 387 (1871); *Long v. The State*, 12 Ga. 293, 318 (1852); *Moses v. State*, 6 Ga. App. 251, 64 S.E. 699 (1909); *Hill v. Smith*, 59 S.E. 475 (Va.–1907); *Folson v. Piper*, 192 Iowa. 1056, 186 N.W. 28, 29 (1922); *Edger v. Burke*, 96 Md. 715, 54 Atl. 986, 988 (1903); *Bryan v. Comstock*, 220 S.W. 475.

17  *Leger v. Warren*, 62 Ohio St. 500,  57 N.E. 506 , 508 (1900).

18  *Great American Indemnity Co. v. Beverly*, 150 F.Supp. 134, 140 (1956).

bring the arrested person to a magistrate he becomes a trespasser *ab initio* and liable:

> An officer, who has lawfully arrested a prisoner, may be guilty of false imprisonment if he holds him for an unreasonable length of time without presenting him for hearing or procuring a proper warrant for his detention. [19]

The New York Supreme Court of Appeals stated the correct exposition of the law in a case where it said that "even though the arrest, when made, was legal and justified," the officers "became trespassers *ab initio* and so continued to the time of plaintiff's release because of their failure to take him before a Magistrate as required." [20] And the Court of Claims of New York, in a case where the officers delayed in the claimant's arraignment, held that:

> If there was an unnecessary delay [in arraigning the claimant before a Justice of the Peace], then the arrest itself became unlawful on the theory that the defendants were trespassers ab initio and so continued down to the time when the plaintiff was lawfully held under a warrant of commitment, regardless of whether or not the plaintiff was guilty of any crime (numerous cases cited). In Pastor v. Regan, supra, it is said that: "The rule laid down in the Six Carpenters' case, 8 Coke, 146, that if a man abuses an authority given him by the law he becomes a trespasser ab initio, has never been questioned." [21]

Where one was arrested for being intoxicated and confined in a prison without judicial inquiry, it was held to be a wrongful imprisonment. On this matter the Supreme Court of Washington stated:

> Nor is a police officer authorized to confine a person indefinitely whom he lawfully arrested. It is his duty to take him before some court having jurisdiction of the offense and make a complaint against him. * * * Any undue delay is unlawful and wrongful, and renders the officer himself and all persons aiding and abetting therein wrongdoers from the beginning. [22]

Thus when one fails to perform part of his duty and it impinges upon the rights of a citizen, he is said to be a trespasser from the beginning because his whole justification fails, and he stands as if he never had any authority at all to act. [23]

## Detainment Is Not A Decision Of Arresting Officer

The basis of the well established procedure in law of taking a person arrested directly to a judge or court, is to avoid having the liberty of the citizen unjustly dealt with by extra-judicial acts of executive officers.

> We believe that fundamental fairness to the accused requires that he should with reasonable promptness be taken before a magistrate in order to prevent the application of methods approaching what is commonly called the "third degree." "Fundamental fairness" prohibits the secret inquisition in order to obtain evidence. [24]

Other reasons for the purpose of this rule requiring that the arrested accused "be taken before a magistrate as quickly as possible, is to

---

19  Thomas Cooley, *A Treatise on the Law of Torts*. Vol. I. § 114, p. 374 (numerous authorities cited therein).

20  *Farina v. Saratoga Harness Racing Assn.*, 246 N.Y.S.2d 960, 961 (1964). *Seguin v. Myers*, 108 N.Y.S.2d 28, 30 (1951).

21  *Bass v. State*, 92 N.Y.S.2d 42, 46-47, 196 Misc. 177 (1949).

22  *Ulvestad v. Dolphin et al.* 152 Wash. 580, 278 Pac. 631, 684 (1929).

23  *Brock v. Stimson*, 108 Mass. 520 (1871), authorities cited; *Hefler v. Hunt*, 129 Me. 10, 112 A. 675, 676 (1921).

24  *State v. Schabert*, 15 N.W.2d 585, 588 (Minn. 1944). Also: *Floyd v. Chesapeake & O. Ry. Co*, 164 S.E. 28, 30 (W.Va. 1932); *U.S. v. Middleton*, 344 Fed.2d 78., 82 (1965).

54

make certain that the person arrested is advised by a judicial officer of his constitutional rights."[25] This is not a duty of the officer through the erroneous "Miranda Warning." The only reason such warnings are being used is because police are not doing their duty in bringing the person arrested to a judicial officer, but instead are unlawfully taking them to a jail to have them "booked."

The detainment of a person after he is arrested is a judicial question. A judicial officer must decide if there are grounds for holding the person arrested, or whether he must be further examined by trial, or if he is to be bailed and released. To allow the executive department such powers of decision making is the epitome of despotism.

In a suit for false imprisonment where several officers arrested the plaintiff on grounds he committed a felony, the Supreme Judicial Court of Massachusetts held the officers had no right to decide to detain the plaintiff to enable them to make a further investigation of the charge against him. The Court declared that:

> But having so arrested him, it was their [the officers'] duty to take him before a magistrate, who could determine whether or not there was ground to hold him. It was not for the arresting officers to settle that question (authorities cited). * * * The arresting officer is in no sense his guardian, and can justify the arrest only by bringing the prisoner before the proper court, that either the prisoner may be liberated or that further proceedings may be instituted against him.[26]

In a case where one was accused by another of stealing a watch, and subsequently arrested and put in jail for one hour and then released, the sheriff was found guilty of false imprisonment as he "failed to take the person arrested before a magistrate." The Supreme Court of Indiana upheld the conviction stating that:

> [T]he power of detaining a person arrested, or restraining him of his liberty, is not a matter within the discretion of the officer making the arrest.[27]

The Court further stated that the sheriff cannot legally hold the person arrested in custody for a longer period of time than is reasonably necessary, under all the circumstances of the case, without possessing a proper warrant or taking him before a magistrate. If he does it is false imprisonment. Thus where a sheriff had arrested two prisoners and detained them for five hours without making any effort to take them before a magistrate, he was guilty of false imprisonment. In this case the Supreme Court of Idaho said:

> The rule seems to be that an officer arresting a person on criminal process who omits to perform a duty required by law, such as taking the prisoner before a court, becomes liable for false imprisonment.[28]

The law never allows an officer at his discretion to imprison the person arrested or detain him in a jail after arrest:

> We have no doubt that the exercise of the power of detention does not rest wholly with the officer making the arrest, and that he should, within a reasonable time, take the prisoner before a circuit, criminal, or other judicial court. * * * In a case where the arrest is made under a warrant, the officer must take the prisoner, without any unnecessary delay, before the magistrate issuing it, in

---

25  *Greenwell v. United States*, 336 Fed.2d 962, 966, 119 U.S.App.D.C. 43 (1964).

26  *Keefe v. Hart*, 213 Mass. 476, 100 N.E. 558, 559 (1913).

27  *Harness v. Steele*, 64 N.E. 875, 878 (1902). Also, *Stromberg v. Hansen*, 177 Minn. 307, 225 N.W. 148, 149 (1929).

28  *Madsen v. Hutchison, Sheriff, et al.*, 49 Idaho 358, 290 Pac. 208, 209 (1930), numerous cases cited.

order that the party may have a speedy examination, if he desires it; and in the case of an arrest without warrant the duty is equally plain, and for the same reason, to take the arrested party before some officer who can take such proof as may be afforded.[29]

Executive officers or clerks are not to determine if a person arrested is to be held or released upon bail, or fix the amount of bail, since the power to do so is judicial.[30]

In a case where a person was lawfully arrested for driving an automobile while intoxicated, the arresting officer delivered him to the jailer at 4:30 p.m., with the instruction that he be held there until nine o'clock p.m., at which time he was to be brought before the judicial officer. The Supreme Court of Appeals of Virginia condemned this act asserting that the officer usurped the functions of a judicial officer:

> But the actions of the arresting officer and the jailer in denying the defendant this opportunity [to judicial review] by confining him in jail because they concluded that he was not in such condition to be admitted to bail, had the effect of substituting their discretion in the matter for that of the judicial officer. Under the circumstances here, the defendant was clearly entitled to the benefit of a judicial opinion and judgment upon the question of his eligibility for bail. This right was arbitrarily denied him.[31]

Executive officers cannot hold a person in order to complete paperwork or make out reports. Thus where a man was arrested

without warrant and confined in the county jail without a commitment, the sheriff could not justify the confinement of the man by awaiting the pleasure of a deputy, or any one else, to file a complaint.[32] The power of the executive officer over a person's liberty ends with the lawful arrest, and he never has a discretionary power to detain the person without judicial authority.

> If the plaintiff was being detained for the purpose of arrest, it was the duty of the arresting officer to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit. The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes.[33]

## Arresting And Releasing Without Bringing Before a Judge

While most of the emphasis on this type of false imprisonment deals with the *delay* in presenting a prisoner to a judge, the real duty and requirement is the actual bringing, carrying or presenting the prisoner before a judge. Thus a complete *failure* to do this is obviously unlawful, and this most often occurs when the officer releases the person he arrested without judicial presentment.

An officer who arrests an individual, does not have the authority to place such person in a jail, or other holding place, and then later release him. As was revealed in the case of *Harness v. Steele*,[34] where the sheriff placed the person arrested in jail for an hour and then

29 *Simmons v. Vandyke*, 138 Ind. 380, 37 N.E. 973, 974 (1894); citing: *Ex parte Cubreth*, 49 Cal. 436 (1875); *Pratt v. Hill*, 16 Barb. (N.Y.) 303, 307 (1853); et al.

30 *Bryant v. City of Bisbee*, 28 Ariz. 278, 237 Pac. 330, 381 (1925); *State v. Miller*, 31 Tex. 564, 565 (1869).

31 *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 615 (1948).

32 *Bowles v. Creason et al*, 156 Ore. 278, 66 Pac.(2d) 1183, 1188 (1937).

33 *Geldon v. Finnegan et al.*, 213 Wis. 539, 252 N.W. 369, 372 (1934).

34 64 N.E. 875, 878 (1902).

56

released him without bringing him before a Justice of the Peace, he was thus guilty of false imprisonment.

It has become a common practice for arrested persons to be taken to a jail or police station to be "booked" fingerprinted, photographed, measured, questioned, imprisoned and then released after paper work is completed.   This wicked and oppressive procedure is so far removed from what due process of law requires, it is shocking that such measures could be widely accepted as "legal."    The process of imprisonment and release at the discretion of the executive officer was condemned by the Supreme Court of Illinois in stating:

> When officers assume the power to imprison without authority of law, or without any forms or processes usual and necessary to be employed, they become liable for false imprisonment.  The liberty of the citizen cannot be so far trifled with, that any constable in the land may of his own volition, commit and hold him in custody until it suits his convenience or pleasure to release him.[35]

When a constable or sheriff decides to release the person arrested without taking him before a magistrate, he assumes judicial powers upon himself and is liable.    Thus where a town constable arrested a person who was intoxicated, and imprisoned him in "lock-up" until he became sober and then released him without taking him before a magistrate, he acted unlawfully and is liable. In this case the Supreme Court of North Carolina stated:

> Men may not be arrested, imprisoned and released upon judgment or at the discretion

of a constable or any one else. If the alleged offense be criminal in its character * * * the officer may arrest and take the offender before a magistrate for trial. * * * The constable arrested and imprisoned him, not for safe keeping until he could be tried before a competent tribunal, but he imprisoned him until he became sober, according to his judgment, and then released him.   The constable thus constituted himself the judge, jury and executioner.  This is the best description of despotism.[36]

When an officer institutes an arrest, he now has undertaken the duty to bring the arrested party to a magistrate.  The person can only be released by judicial, not executive, authority.

> The duty of the one making an arrest to bring the prisoner before a proper magistrate that proceedings for the trial of the prisoner may be instituted and that he may have an opportunity to give bail or otherwise procure his release, is even more imperative than if a warrant had been issued before arrest; and if the prisoner is released without being brought before such magistrate, the officer or private person who made the arrest becomes a trespasser ab initio. [37]

Arresting a person is a step in prosecution, and if he is released not according to law it is an "escape." Such an escape is a departure of a prisoner from custody before he is discharged by due process of law.[38]  If a person is arrested pursuant to a warrant, he "must be taken to a magistrate before he can be released" (1 Wharton, Cr. Proc., 195).

In deciding if a chief of police acted properly when he put two individuals he

---

35 *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 757 (1930).

36 *State v. Parker*, 75 N.C. 249, 250 (1876).

37 11 *Ruling Case Law*, "False Imprisonment," § 15, pp. 801-02. See also, *Williams v. Zelzah Warehouse*, 126 Cal.App. 28, 14 Pac.(2d) 177, 178 (1932).

38 *Hefler v. Hunt*, 120 Me. 10, 112 A. 675, 677 (1921).

arrested in jail over night, and releasing them on their depositing bail, the Federal Court of Appeals said "the actions of the officer in this case were arbitrary and unjust." The police chief had no right to determine bail and then release the prisoners without a hearing before a judge, the Court said:

> In an able opinion (*Ex parte Harvell*, 267 F. 997, 1003), Judge Conner said: "The imprisonment in jail of a citizen without warrant, without opportunity for a hearing or to give bail, is a serious matter. * * * The duty in every case is imperative upon the officer 'to forthwith carry the person arrested before the nearest judicial officer having jurisdiction to hear and determine the legality of such arrest.' *Ex parte Van Hoven*, Fed. Cas. No. 16,858. " * " In 25 C.J. 491 and 493 the general rule is stated as follows: "One making an arrest may be liable in an action for false imprisonment where he fails to take the person arrested before the officer designated in the warrant, or, if the arrest is made without warrant, to the nearest committing magistrate.[39]

If a prisoner accepts his release or is released at his request or with his consent, he does not waive his right of action. To say he has no right to sue under such conditions, is allowing a situation that is "susceptible of working great injustice." Where a person is unlawfully detained, "he has a right of action irrespective of his release." [40]

### Defenses

Just as "good faith does not excuse an unauthorized arrest," likewise, it does not "justify an unreasonable detention and deprivation of one's liberty" caused by a failure or delay in bringing one arrested "before a magistrate."[41]

It has been a common practice for officers to drop off persons they have arrested at a "police station" or "county jail" and leave the prisoner in the custody of others. This is a very dangerous and irresponsible act for an officer to follow. In doing so the arresting officer relinquishes his duty and at his risk relies on others to lawfully deal with the arrested party. No officer can claim exemption from liability when he relies on others to take the arrested person before a judge without delay. He is responsible for the arrested person and cannot rely on others to perform his duty:

> Orders from a superior do not excuse the arresting party from his duty [to bring the prisoner before a judge], nor does delivery of the prisoner into the custody of another person; all those who take part in so detaining a person an unreasonable length of time are liable.[42]

The Supreme Court of Ohio had stated a similar rule:

> The delivery of the plaintiff, after his arrest, into custody of another person, to be by him taken to prison, could not, we think, absolve the arresting officers from the duty required of them to obtain the writ necessary to legalize his further imprisonment. * * * If the arresting officers choose to rely on some other person to perform that required duty, they take upon themselves the risk of its being performed; and, unless it is done in proper time, their liability to the person imprisoned is in no wise lessened or affected[43]

---

39  *Moran v. City of Beckley*, 67 Fed.(2d) 161, 164 (1933).  See also, *United States v. Janus*, 30 F.(2d) 530 (1929).

40  *Stromberg v. Hansen*, 177 Minn. 307, 225 N.W. 148, 149 (1929).

41  *Oxford v. Berry*, 204 Mich. 197, 170 N.W. 83, 89 (1918).

42  *Moran v. City of Beckley*, 67 Fed.(2d) 161, 164 (1933).

43  *Leger v. Warren*, 62 Ohio St. 500, 57 N.E. 506 (1900).

58

One of the most common defenses raised in suits of false imprisonment of this nature, involve arguments of whether the delay in bringing one to a court was reasonable or necessary. In Virginia it was said that in determining whether an arrested person has been brought before a magistrate "with all practicable speed," or without unnecessary delay, depends upon the circumstances of the particular case. "Ordinarily, this is a question for the jury unless the facts are disputed."[44]

The Common Law principle is that an officer is to present the person arrested "without delay" to a magistrate. This means no delay of time is allowed which is not incident to the act of bringing the accused to a magistrate. The cause of this breach of duty arises from the officer's total failure to act, or failure to act timely. If he does not act diligently, he may not act timely.

A reasonable time is not when the officer has free time, but means promptly, immediately, and without delay, as soon as the circumstances permit. It was stated in an earlier case in New York that:

> [I]t was the duty of the officer making the arrest to convey the prisoner immediately before the nearest magistrate.[45]

In determining whether or not an officer's failure to take an arrested man before a magistrate immediately after his arrest was an unnecessary delay, the Supreme Court of Texas stated:

> The accused has the right to be presented without delay, but the question of what is delay must be determined by all the facts and circumstances. Necessarily some time must elapse between the arrest and the presentment before the magistrate.[46]

It has been the practice of legislatures and courts to establish set times of 24, 36, or 48 hours for the delay allowed from the time of arrest until presented to a magistrate. Such measures are blatant acts of tyranny, as anyone can see that if such power exists to allow a delay of 24 hours, then the power also exists to delay in 72 hours or 168 hours. The Common Law Rule nullifies the exercise of such arbitrary power.

Thus the only defense of this breach of duty is to account for the time in a delay.

It has been held that a delay of from 1 1/2 to 4 hours in failing to take a prisoner before the magistrate, arrested without a warrant, constitutes false imprisonment.[47]

If an officer delays 36 hours in bringing one arrested to a magistrate, but can account for the delay of time by such reasons as bad weather, the judge was not immediately available, the one arrested needed medical attention, etc., he is not then liable for false imprisonment. But if an officer detains one he arrested for ten minutes to see if he will confess, the officer becomes a trespasser and is liable.

The liberty of citizens is too sacred to be interfered with without established sanctions by which the law guards it. But it is clear that the trend over the past 50 years has been to give police more arbitrary discretion in stopping people, making arrests, and imprisoning people. One thing history teaches us is that governments never restore lost rights and freedoms. Only citizens have ever done this.

44 *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116, 120 (1949); *Brown v. Meier & Frank Co.*, 86 P.2d 79, 83 (Ore. 1939).

45 *Green v. Kennedy*, 48 N.Y. Rep. 653, 654 (1871).

46 *Hicks v. Matthews*, 266 S.W.2d 846, 849 (Tex. 1954).

47 *Williams v. Zelzah Warehouse*, 126 Cal.App. 28, 14 Pac.(2d) 177, 178.

# 8

# DISTORTION OF FUNDAMENTAL LAW

As we look at the common law principles and procedures for arrests which have existed for hundreds of years, as compared with the law enforcement methods employed by most tyrannical forms of government, it is evident that we are closer to the latter. There are several reasons for this trend towards oppressive control over the citizen.

## Due Process Neglected

Due process, or the law of the land, is to act a shield against arbitrary activity of government. Since the days of King John and Magna Carta, history shows it is the first thing violated by over-bearing rulers. In America the due process provision embraces common law maxims and principles. In fact there are many cases where the courts would cite the common law requirements for an arrest without warrant, but then would cite and follow some statute on arrest which was contrary to the common law principle.

In nearly all of these cases where statutes contrary to the common law were upheld, we fail to find arguments asserting the requirement of due process of law. And in very few of them was the arrest treated as a deprivation of liberty, which cannot be done except by due process of law.

This departure from the common law rule on arrest is not all the fault of the courts, but also of those unlawfully arrested for failing to raise the proper arguments in court. While there are many cases in which the arrested party has asserted the common law rule on arrest, in most

they have failed to also claim the due process clause. Without such a constitutional plea, the statute prevails.

Since the time this country was founded there have been hundreds of cases involving false imprisonment or unlawful arrest. Yet the proper due process argument is scarcely to be found among them. It is amazing that in 200 years of our country's history, so few have argued this most basic and important provision of constitutional law in defense of liberty in such cases.

This failure to claim due process in arrest cases over this period of time certainly does not say much about those in the legal profession. The incompetency of most lawyers was express by Chief Justice Warren Burger when he stated that "nine out of ten lawyers are incompetent." Most lawyers are not independent thinkers; instead they are nothing more than programmed robots who follow the path laid down by the prevailing system—whether it be just or corrupt. When it becomes corrupt, they will follow corrupt rules and statutes above fundamental law.

This failure on the part of lawyers is especially remarkable when we consider the ancient existence of this due process guarantee, and that it is prominently found not only in our constitutions, but in *Magna Carta*, which proclaims:

> No free man shall be taken or imprisoned or dispossessed, * * * except by the legal judgment of his peers or by the law of the land.

60

The word "taken" has sometimes been translated as "seized" and "arrested." The phrase "law of the land" means the same as "due process of law," and refers to the law already established in the land. Thus no one could be arrested except by the established common law that prevailed in the land. It does not mean some new law that the legislature might devise.[1]

The due process argument in false imprisonment cases will nullify the statutes, rules and ordinances that are contrary to the common law rule on arrest. No legislative act can abrogate what is the law of the land, otherwise there is no such thing as due process. Government has encroached upon the citizen's liberty by ignoring due process.

The common law allowed arrests without warrant only for known felonies and breaches of the peace. This is a required condition under "due process of law" in order to arrest someone. Thus it has been said that:

> Arrest without warrant, where a warrant is required, is not due process of law; and arbitrary or despotic power no man possesses under our system of government.[2]

It should be quite obvious that if the legislature can say that arrests can be made without warrants for all misdemeanors committed in the presence of an officer, it can say that such arrests can be made when the misdemeanor is not in the presence of the officer. It also could say that such warrantless arrests can be made for mere suspicion, or because someone might break a law. All would be subject to summary arrests without question or warrant.

One of the main reasons that a sword was put to King John to sign Magna Carta, and why the American colonists took up guns against King George III and his army, was to prevent the arbitrary acts of government in depriving people of their rights and liberties. Human nature as it is, such arbitrary action is the natural tendency of those having power in government; and without the due process provision, government is free to encroach upon the rights and liberties of citizens with immunity.

The term "due process of law" had a well settled meaning when the constitution was adopted. The framers thereof intended to perpetuate and secure the many principles, laws and rights, all of which could not be listed, against abrogation. Subsequent legislation cannot change the meaning or effect of this constitutional provision, and thus cannot change the procedure by which one is to be deprived of his liberty by way of arrest. An arrest cannot be done except by the law of the land, or due process of law.

### Fourth Amendment Argument

Another reason for the distortion that has prevailed in the matter of arrests is the frequent misuse or misapplication of the Fourth Amendment in the U.S. Constitution, or similar provision in the State Constitution, used as a defense to arrests without warrant.

The Fourth Amendment, which guarantees "the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures," generally does not apply to arrests made without warrants, but only those made with

---

[1]   For more information on this principle of law refer to *"Life, Liberty and Property"* by the author.

[2]   *Muscoe v. Commonwealth*, 86 Va. 443; 10 S.E. 534, 536 (1890).

warrants.[3]   The provision regulates how warrants are to be issued: "no warrant shall issue, but upon probable cause, supported by oath . . ." If an arrest was made with a warrant, it must follow the criteria of the Fourth Amendment otherwise it is an unlawful arrest, as the warrant would be illegal.  But where there was no warrant, this provision is not applicable, rather we would apply the standards of due process of law.

In one case in Illinois where a person was arrested without warrant pursuant to a statute, the person arrested questioned whether the statute is in violation of the search and seizure section of the State Constitution, similar to the 4th Amendment. The State Supreme Court said:

> But this [section] has application only to warrants.  It does not abridge the right to arrest without warrant in cases where such arrests could be lawfully made at common law before the adoption of the present constitution.[4]

It is perhaps due to the ignorance of so many in the legal profession that we so often find this Fourth Amendment argument used as a defense against a warrantless arrest.

The Fourth Amendment argument in cases involving arrests without warrant have been the most common defense raised, and the distortion in law it has created has been all too great.  Due to this erroneous argument, the courts have developed the concept that any and all arrests are lawful as long as there was "probable cause."  But under the common law, unless there is a felony,

probable cause has no bearing on an arrest without warrant.  Probable cause is to be a criteria in issuing warrants, but it now has been used as a means to get around using them in misdemeanor arrests.  This is now adopted policy and many modern court decisions reflect this distorted argument.[5]

## Highway Traffic Laws

Traveling down the road today in an automobile through most any town, a citizen can become subject to hundreds of laws, rules, ordinances and regulations which a citizen traveling in a wagon in 1900 never experienced.  In fact, the bulk of these laws and regulations never could have been applied to the citizen traveling in 1900.

Because of the exposure to "traffic violations," the general public has been affected by many aspects of law enforcement that they would not otherwise experience. This experience includes arrests, searches, seizures, stopping to check for licenses, registrations, or seat belts, drunk driver tests, all kinds of automobile inspections, tickets, arraignments, and court trials.

In examining the court cases over the years involving these "traffic violations," there is a clear struggle and conflict between the fundamental rights of citizens and an extraordinary system of law enforcement. It is a system which is oppressive and despotic in nature, and which can summarily and arbitrarily deprive a citizen of his liberty.

---

3   1 Am. Law Rep., Annotation, 586;  5 Amer. Juris. 2d, "Arrest," § 2, p. 697.

4   *North v. People*,  139 Ill. 81,  28 N.E. 966, 972 (1891); see also *Burroughs v. Eastman*, 101 Mich. 419,  59 N.W. 817.

5   An example of this inaccurate argument of law was stated by the Supreme Court of Minnesota which said: "The Test, then, for the lawfulness of plaintiff's arrest is whether it was made with 'probable cause'." *Lundeen v. Renteria*, 224 N.W.2d 132, 136 (1974).  This distorted and inept argument, as applied to misdemeanor arrests, has been pulled out of the air. There is no foundation for this to be found anywhere in law, but much to the contrary exists (see pg. 34).

62

How did such a system get a footing in America? This extraordinary control over the liberty of the citizen was established by having people sign up for a "driver's license." As with any license, those who accept one agree to be bound by the terms and rules under the license. They consent to its rules.

As an example, when a person consents to a search of his premises, that consent acts as a waiver of the right to assert that the search was unlawful, or that a search warrant was needed; and any evidence found in such a search can be used against that person.[6]

In a similar manner, when citizens have accepted a "driver's license" to do what they already have a fundamental right to do—travel down the roads—they have in effect consented to a law enforcement system that is contrary to that known at common law or under our Bill of Rights. They have consented to the rules and regulations of this system and cannot argue the common law or the Bill of Rights for they are not controlling when doing things under the license.

One of the rules under the driver's license is that a licensee can be stopped at any time by a police officer and be required to display his license to him. As it is stated in a Minnesota statute:

> Every licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand * * * by an officer authorized by law to enforce the laws relating to the operation of motor vehicles on public streets and highways.[7]

Note who is required under this statute to submit to a 'stop and check' by police officers and display their license. It is not every citizen traveling in his automobile, but "every licensee," that is, those who have accepted a driver's license. The *State v. Fish* case also said that "police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license," and that such a practice "does not constitute an unlawful arrest."

It was firmly held at common law, as stated by Blackstone, that one would be guilty of "false imprisonment" by the act of "forcibly detaining one in the public streets."[8] It even has been recognized in modern courts that officers stopping persons on the road is an arrest:

> When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case was complete.[9]

However, such arrests or detentions are regarded as being "reasonable," and don't need to fall within the "common law exceptions." Why? Because the people stopped had driver's licenses.

Since the vast majority of the people have voluntarily accepted the driver's license without objection, the courts have taken this as universal compliance with the licensing laws. Thus where one does not have a license it is regarded as public policy that they have no authority to drive the car upon the roads, despite the fact that they always had an inherent right to do so.[10] Thus the courts

---

6   *City of St. Paul v. Stovall*, 225 Minn. 309, 30 N.W.2d 638, 641 (1948).

7   Minn. Stat. § 171.08, cited in *State v. Fish*, 280 Minn. 163, 167 (1968).

8   3 Blackstone, *Commentaries on the Laws of England*, 127; citing *Coke's Institutes*, 2 Inst. 589.

9   *State v. Fish*, 280 Minn. 163, 166; citing *Henry v. United States*, 361 U.S. 98, 103 (1959).

10  For information on this point see *The Right To Travel*, by the author.

have treated all citizens as being required to be license holders, and subject to the corresponding rules and regulations under the license, including being subject to arbitrary stops, arrests and seizures without warrant.

In a case in New Jersey, where two people were traveling in an automobile through Jersey City, they were stopped and arrested by police officers because they did not have a driver's license. The two were taken to the station house where they were "held for investigation." The Court held this oppressive procedure to be valid. It even cited the "common law rule" on arrest, asserting that other than to apprehend a felon or prevent a breach of peace, "the law did not allow an officer to exercise the function of determining whether there was a sufficient cause for an arrest." While this law on arrest had long been recognized in the State, the Court excepted by stating:

> But the authority to arrest, in the circumstances here presented, is derived from chapter 208 of the Laws of 1921, as amended by chapter 171 of the Laws of 1931. This act requires the registration of all automobiles driven in this state, whether owned by residents or nonresidents, and the licensing of operators of such vehicles. It directs that * * * this license and the registration certificate shall be in the possession of the driver or operator at all times. * * * A further requirement is that the driver shall, when so requested by a police officer * * * exhibit his operator's license. * * * Section 31 (1) of Act 1921, vests in any constable or police officer authority to arrest, without warrant, any person violating * * * any of the provisions of the act, and bring the defendant before any magistrate.[11]

Even though the common law on arrests was frequently upheld by the high court of this state in the past, when the driver's license law was enacted, the people were tricked into becoming subject to a new system of law enforcement. One that could arbitrarily stop and arrest citizens without warrant who had committed no felony or breach of peace.

It is to be noted that there was no due process of law argument which would have nullified the driver's licensing statute that allows arrest contrary to the common law. In like manner, there was no argument that the officers failed to take the two persons to a magistrate after the arrest, which even the statute required. Failing to raise the proper argument is always a fatal mistake.

In a case in Tennessee, which involved a misdemeanor, a man was arrested while he was traveling in the state. The State Supreme Court laid down several good principles of law, and related them to the American Revolution. It stated that "the stopping of a car by an officer for the inspection of a driver's license, or for any purpose where it is accomplished by the authority of the officers, is in fact an arrest, even though it be a momentary one in some cases." This is a true point of law and anyone can see that such a stop is an arrest. But such an arrest is consented to by way of the driver's license, as the court further stated:

> One of the few exceptions of the law relating to arrests without a warrant is the authority of highway patrol officers to stop a car and demand to see the license of the operator. This authority in itself is not known to the common law and is of statutory origin only. In fact, the authority is implicatively given in provisions of the laws relating to the issuance of licenses to drive automobiles.[12]

11 *Pine v. Okzewski,* 112 N.J.L. 429, 170 A. 825, 827 (1934).

12 *Robertson v. State,* 198 S.W.2d 633, 635-36 (Tenn., 1947).

64

This statement makes clear the reason for the "exceptions" to the common law rule to arrest— it is the acceptance of a driver's license. The terms of the license allow on the spot arrests to check for valid licenses and what ever else the legislature or the courts may decide is necessary.[13]

When one accepts such a license, then all of the sound and just principles of law, all of the constitutional safeguards, and all of the rights at common law no longer apply to them. Thus the decision here is not actually contrary to fundamental law because the licensee waived his right to that law. The people, of course, were never told that such a license would remove certain protections of the law and suppress certain inalienable rights, nor will they ever be told this by the government.

### Resisting Arrest

There are many cases on record involving actions against persons for assault of an officer or for resisting arrest. These cases are important in that they reveal the limitations of the executive officers in making arrests, and they reveal the high regard the law places upon individual liberty.

It must be remembered that an unlawful arrest is in itself an assault and a trespass, and the law regards such arrests as any other assault which may be resisted by the party being assaulted. As a result it is imperative that officers adhere to the law, as revealed by the Supreme Court of South Carolina:

Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it, must do so in conformity to the laws of the land. There are two reasons for this; one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates.[14]

Where officers do not conform to the "law of the land" they have no authority and the right to resist them exists. A public officer, as with a citizen, who unlawfully threatens life or liberty, is susceptible to be injured or killed; for by such acts *they draw their own blood upon themselves."* As stated in some cases, "where a peace officer has no right to make an arrest without warrant, he is a trespasser and acts at his own peril."[15]

Due to this, resisting unlawful arrests is another area that has been distorted by modern courts. This is because police today are constantly making unlawful arrests, and if people ever become aware of their right to resist such arrests, a majority of police would end up dead or quitting their jobs. Without a police force the corrupt government cannot enforce its corrupt system and could conceivably fall apart or die itself. Thus distortions of law are declared from the modern courts on this matter, as was stated by a recent Minnesota decision:

This court has, however, rejected the argument that defendant has an additional constitutional right to resist an illegal arrest.[16]

---

13  It has been erroneously held that a state trooper can make an "investigative stop" for nothing more than "suspicion" of "criminal wrongdoing" *State v. Johnson,* 444 N.W.2d 824 (Minn., 1989).  Such despotic measures are not to be found in the common law and have no place in a free nation.

14  *Town of Blacksburg v. Beam,* 104 S.C. 146, 88 S.E. 441 (1916);  *Allen v. State,* 197 N.W. 808, 810-11 (Wis. 1924).

15  6 A.C. J. S., "Arrest," § 16, p. 30,  A sheriff who "acts without process," or "under a process void on its face, in doing such act, he is not to be considered an officer but a personal trespasser."  *Roberts v. Dean,* 187 So. 571, 575 (Fla. 1939).

16  *City of St. Louis Park v. Berg,* 433 N.W.2d 87, 91 (Minn. 1988).

A corrupt government would naturally not want people opposing its unlawful and corrupt measures. To show how judicially corrupt and invalid this decision is, let us look at some earlier decisions on this matter.

Where an officer without a warrant attempted to make an arrest for a misdemeanor, and the person sought to be arrested had no notice that an attempt to arrest was being made by lawful authority, it was held that such person had the right to resist the attempted arrest.[17] The Supreme Court of Georgia later upheld this principle by saying:

A citizen unlawfully arrested has a right to resist force with force in proportion to that being used to detain him. An unlawful arrest is an assault; the manner in which it is made may make it an assault and battery or a graver offense. If no more than proper force is used by the person sought to be illegally arrested in resistance thereof, he is guilty of no offense. * * * Generally, to slay a person who without authority of law is seeking to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid arrest, would be manslaughter, and not murder.[18]

In a case where there was transfer of an automobile, the new owner had called a police officer who, without warrant, arrested a woman involved because she refused to comply with his request to transfer the automobile, keys and certificate. The woman resisted the arrest and was convicted of resisting arrest. On appeal the Court of Appeals of Ohio said there was no offense committed by the woman in the presence of the officer, and there was no authority to make the

arrest, and the woman was entitled to refuse to comply and to resist the officer. The Court held:

What of the resistance to the arrest? The authorities are in agreement that since the right of personal property is one of the fundamental rights guaranteed by the Constitution, any unlawful interference with it may be resisted and every person has a right to resist an unlawful arrest. * * * and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary.[19]

The law that allows one to resist an unlawful arrest is the same law that allows them to repel an attack or an assault upon them — it is the law of self defense and self preservation. One has an inalienable right to protect his life, liberty or property from unlawful attack or harm.

This law allows another person to come to the aid of one being unlawfully arrested, just as it does where one is being assaulted, molested, raped or kidnaped. Thus it is not an offense to liberate one from the unlawful custody of an officer, even though he may have submitted to such custody without resistance.[20]

In a case in Maine a man had resisted an officer trying to arrest him, and both parties claimed that the other was the unprovoked aggressor and struck the first blow. The Supreme Judicial Court of Maine held:

An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery.[21]

17 *Franklin v. Amerson*, 118 Ga. 860, 45 S.E. 698 (1903).

18 *Graham v. State*, 143 Ga. 440, 85 S.E. 328, 331 (1915).

19 *City of Columbus v. Holmes*, 152 N.E.2d 301, 306 (Ohio App. 1958).

20 *Adams v. State*, 121 Ga. 163, 48 S.E. 910 (1904).

21 *State v. Robinson*, 145 Me. 77, 72 Atl.2d 260, 262 (1950).

66

The Court went on to say that the person illegally arrested "cannot initiate the use of force," and that "words alone do not justify an assault." Thus a mere statement by an officer that a person is under arrest, even if there is no authority to arrest, "does not justify an attack by him on the officer before any physical attempt is made to take him into custody." This is basic law based on common sense which would apply to any two persons who would have a dispute between them. But where the officer initiates the assault by physical contact, which is usually the case, and there is an unlawful arrest, the citizen has the right to protect his liberty to the extent of killing the officer, as stated by the Supreme Court of Appeals of West Virginia:

> What rights then has a citizen in resisting an unlawful arrest? An arrest without warrant is a trespass, an unlawful assault upon the person, and how far one thus unlawfully assaulted may go in resistance is to be determined, as in other cases of assault. Life and liberty are regarded as standing substantially on one foundation; life being useless without liberty. And the authorities are uniform that where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether of a private citizen or a public officer, to the extent of taking the life of the assailant, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm.[22]

This case was cited and supported by the Supreme Court of Washington, who stated that the rule to follow is that the force used in resisting an unlawful arrest must be reasonable and proportional to the injury attempted. The Court held that:

It is the law that a person illegally arrested by an officer may resist that arrest, even to the extent of the taking of life if his own life or any great bodily harm is threatened. * * * *Every man, however guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive.[23]

Where an arrest is unlawful, the officer becomes a wrongdoer, and the basic concept of resisting him cannot be denied, as said by the Supreme Court North Carolina:

> The offense of resisting arrest, both at common law and under the statute, presupposes a lawful arrest. It is axiomatic that every person has the right to resist an unlawful arrest. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense.[24]

Thus in a case involving a charge of "resisting arrest" in which there was a struggle and fight, and it was found that the officer had no authority to make the arrest, it was the officer who was regarded as the aggressor, not the person resisting, as the Supreme Court of Mississippi said:

> The courts generally hold that the right to resist an unlawful arrest is a phase of the right of self-defense; * * * the officer attempting to make an unlawful arrest is simply the aggressor in the difficulty, and stands in the shoes of any other aggressor in a like difficulty, * * * These courts hold that a person has as much right to resist such an invasion of his personal liberty as he has to resist death or serious bodily harm.[25]

The subject of "Resistance to Illegal Arrest," is dealt with in detail in *American Jurisprudence*, where it states:

---

22 *State v. Gum*, 68 W.Va. 105, 69 S.E. 463, 464 (1910).

23 *State v. Rousseau*, 40 Wash.2d 92, 241 P.2d 447, 449 (1952); *Porter v. State*, 124 Ga. 297, 52 S.E. 283, 287 (1905).

24 *State v. Mobley*, 240 N.C. 476, 83 S.E.2d 100, 102 (1954), authorities cited therein.

25 *Wilkinson v. State*, 143 Miss. 324, 108 So. 711, 712-13 (1926).

68

Plummer told the marshal to keep back from him and walked away from him. The dialog was repeated. The marshal dodged behind trees and crept up to Plummer and struck him on the head with his billy club, and again on the back and arm, which knocked the revolver out of Plummer's hand, and thereupon the marshal fired on Plummer, missing him. Immediately thereafter Plummer fired at the marshal missing him. Several more shots were fired between them when Plummer fired the fatal shot that killed the marshal. Plummer was charged with six different counts of murdering the marshal. A trial resulted in a verdict finding him guilty of voluntary manslaughter. The Supreme Court of Indiana said the verdict was contrary to the evidence, and that Plummer was justified in his actions, holding that:

> The law does not allow a peace officer to use more force than is necessary to effect an arrest. An if he does use such unnecessary force, he thereby becomes a trespasser from the beginning, and may be lawfully resisted.

> If the officer is resisted before he has used needless force and violence, he may press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary. * * * But here the evidence wholly fails to show any necessity for the marshal's act in striking Plummer on the head with his club. He was therefore a trespasser in doing so, and was guilty of an aggravated assault and batter on Plummer.

> He did not stop at that, but he shot at Plummer with his revolver immediately after he struck him on the head, and before Plummer had fired at him. This gave Plummer a clear right to defend himself, even to the taking of the life of his assailant.[31]

In understanding this law on resisting arrest it is clear to see why a corrupt government, such as prevails today, would not want this fact of law to be readily known or accepted. As a government becomes more despotic, militant and totalitarian, so does the armed police forces of that government. Liberal and unlawful arrests are now the norm rather than the exception. If people upheld their rights in this matter, it would upset such a corrupt system.

The United States Supreme Court, and every other court in the past deciding upon the matter, has recognized that "at common law," a person had the right to "resist the illegal attempt to arrest him."[32] But the corrupt, modern day courts, such as the Minnesota Supreme Court, has attempted to deny that right, a right which all acknowledge that any animal has in defense of itself.

In a corrupt government as we see today, the police forces are taught and trained by the corrupt system, conveying to them false concepts of what is lawful. They are told not to trust any citizen, only another officer. As a result many patriots have ended up assaulted or killed by this armed force of the corrupt government. The citizen in a confrontation with this hostile and oppressive police force, now has a justifiable right to resist it out of fear of their lives. It has been held that a person can resist any arrest where he "has reasonable grounds to believe that the officer is not acting in good faith," and that "by submitting to arrest and being disarmed he will, by reason of this fact, be in danger of great bodily harm or of losing his life."[33]

---

31 *Plummer v. The State*, 135 Ind. 308, 313, 34 N.E. 968 (1893).

32 *John Bad Elk v. United States*, 177 U.S. 529, 534-35 (1899).

33 *Caperton v. Commonwealth*, 189 Ky. 652, 655, 225 S.W. 481, 483 (1920).

## Handcuffing

The people's lack of understanding of the law, or lack of concern for it, has allowed government to establish many unlawful and oppressive procedures in making arrests, etc. The use of handcuffs is a typical example of this.

The practice of physical restraint by handcuffing, leg irons, rope, straight-jackets and the like has historically been limited to those who had committed the most serve crimes, such as felonies, or have exhibited a violent temperament. In book 51 of the *Lawyers Reports Annotated*, p. 216, are listed several cases which show that the rule pertaining to handcuffing procedures "must depend upon the circumstances of each particular case." In citing and older English case it was held that the right to handcuff one in custody may exist "by reason of violence of language or conduct" of that person, however:

There cannot be any general rule that will justify a constable in resorting to the extreme measure of handcuffing a person, in custody for a misdemeanor, to a felon, and marching them through the public streets from the police station to the magistrate's office.[34]

One who is accused of or guilty of a misdemeanor cannot be lawfully handcuffed while in the custody of an officer, and in some cases the prohibition extends to a felon. Usually handcuffing is justified only where one has attempted escape or has exercised violence toward the officer:

But a constable cannot justify handcuff- fing a prisoner unless he has attempted to escape, or unless it be necessary in order to prevent his doing so. [35]

There thus can be no general law which requires or allows the handcuffing of every one arrested, as is the rule police now follow.

In the English case of *Osborn v. Veitch*, 1 Foster & Fin. Eng. Rep. 317, where a lawful arrest was made for a misdemeanor, it was held that "the handcuffing was utterly unlawful." When the person handcuffed sued the officer, a verdict was rendered for the plaintiff.

Thus the unwarranted use of handcuffs is regarded as an assault and battery and the person doing the handcuffing can be sued for the trespass.

## Post-arrest Booking Procedures (Fingerprinting, etc.)

The entire concept of proper procedure of dealing with one in custody after arrest has been further corrupted by the liberal "booking procedures" and post-arrest tests. This includes such acts as finger printing, measuring, photographing, blood, urine and breath tests, dexterity tests, etc. This subject needs to be covered here as it is not only directly connected with the procedure of arrest, but involved the right of liberty as does the subject of arrest.

In an early New York case, a man named Gow was charged and indicted by a grand jury with the crimes of grand larceny and forgery. Before his release on bail pending trial, a member of the police force of New York instructed Gow that he must come to police headquarters where he was to be measured, photographed, and fingerprinted. The Supreme Court of New York said:

---

34  51 L.R.A. 216, citing: *Leigh v. Cole*, 6 Cox's English Criminal Cases 329.

35  51 L.R.A. 216, citing: *Wright v. Court*, 4 Barnewall & Cresswell's English King's Bench Reports.

Was the act of the officers of the police department in compelling the petitioner to submit to having his photograph taken and these measurements and imprints [fingerprints] made a lawful or an unlawful act? * * * To subject a citizen, never before accused, to such indignities, is certainly unnecessary in order to 'detect and arrest' him; for he must have been detected and arrested before he can be so dealt with. It is unnecessary to 'prevent crime,' for the acts for which indictment has been found, if criminal, have already been committed. * * * The exercise of any such extreme police power as is here contended for is contrary to the spirit of Anglo-Saxon liberty. * * * The acts of the police department here criticized were not only a gross outrage, not only perfectly lawless, but they were criminal in character. Every person concerned therein is not only liable to a civil action for damages, but to criminal prosecution for assault.[36]

The Court also made it known that it was "the duty of every member of the police force under penalty of a fine or dismissal from the force, immediately upon arrest, to convey the offender, not to police headquarters to be photographed and measured, but 'before the nearest sitting magistrate that he may be dealt with according to law'" (p. 1016). This was not only required by the city charter, but by fundamental law.

The *Gow* case was upheld several years later by the Supreme Court, in a case where it was acknowledged "that the taking of the plaintiff's picture before conviction was an illegal act."[37]   In 1926, a law was passed whereby all person charged with a felony, specified misdemeanors, and one species of disorderly conduct, shall forthwith, upon arrest, be submitted to fingerprinting, a practice before permitted only after

conviction.   The law prohibited anyone being admitted to bail until they were fingerprinted to ascertain whether he has previously been convicted of a crime. A New York Court stated that the new law "involved a serious invasion upon the liberty of our people," and gave several reasons why such a law was not constitutional:

> Article 1, section 5, of the Constitution of the state of New York, provides: *"Excessive bail shall not be required."* The prohibition against excessive bail necessarily includes the denial of all bail. * * * A defendant is arraigned, in fact innocent, and refuses to submit to finger printing. A recoilment from it is not unnatural. It cannot be said that the refusal is unreasonable or unjustified. Yet he is denied bail. The requirement for finger printing is oppressive and unreasonable. It contravenes article 1, section 5, of the Constitution of the state of New York, and in my judgment is unconstitutional.

> There are other grounds upon which the unconstitutionality of the law must be declared.   Article 1, section 6, of he Constitution of the state of New York provides: *"No person shall * * * be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law."* Finger printing is an encroachment on the liberty of a person.   It is justifiable, as is imprisonment, upon conviction for crime, in the exercise of the police powers of the state, for the purpose of facilitating future crime detection and punishment. What can be its justification when imposed before conviction?

> To charge that one's fingerprint records have been taken would ordinarily convey an imputation of crime, and very probably support a complaint for libel *per se*. In my judgment, compulsory finger printing before conviction is an unlawful encroachment upon a person, in violation of the state

---

36  *Gow v. Bingham,* 107 N.Y. Supp. 1011, 1014-15, 1018, 57 Misc. 66 (1907).

37  *Hawkins v. Kuhne,* 137 N.Y. Supp. 1090, 153 App. Div. 216 (1912).

Constitution. Lastly, fingerprinting before conviction involves prohibited compulsory self-incrimination.[38]

The very idea of booking and making a record of one's fingerprints, photographs etc., are acts commonly done to convicted criminals, and thus implies one is a criminal. Corrupt governments are inclined to treat all citizens as criminals who break the smallest law it has passed, and process them as such without due process of law. All must be regarded as guilty until proven otherwise.

Some cases in Louisiana were decided which asserted that the power to fingerprint, etc., is constitutionally restricted to the "identification of the harden criminal." Such measures upon an accused were held to be "unnecessary to prove his guilt or for the identification of his person" or to "guard against his escape."[39]

A Federal District Court held that there is "no right given [to government] by the common law to take finger prints."[40] The principles of Anglo-Saxon government certainly would not have sanctioned such intrusive and oppressive measures.

In New Jersey, the Superior Court stated that the police cannot lawfully fingerprint an accused person against his will.[41] But later, in the case of *Bartletta v. McFeeley*, 107 N.J.Eq. 141, 152 Atl. 17, a New Jersey court went contrary to this position. The merits of that case have often been questioned and criticized, as one text writer asserts:

The chancery court of New Jersey, it is submitted, reached a most unjust conclusion and utterly devoid of all reason wherein it was held that an arrested person charged with crime could be lawfully fingerprinted, measured, and photographed without his consent and against his will. Such unreasonable decisions, as this, go a long way to strike down personal liberty and invade rights that have been thought, ever since this government was established, to be inviolate.[42]

The *Bartletta* case had indeed gone a "long way to strike down personal liberty," as modern cases that allow such measures find their authority traced back to this unjust and frivolous case. When one bad case is decided, another follows it, then another, and all because the act or measure supported is more convenient for government, not because it is pursuant to fundamental law.

In 1945, the Court of Chancery of New Jersey made an exhaustive study into the law and cases surrounding the act of fingerprinting etc., and reached the conclusion that "there is no justification for the taking of fingerprints, photographs and other measurements in advance of conviction."[43]

Closely related to these measures is the act of compelling one to submit to blood tests, urine tests, etc., after arrest and before trial, to be used as evidence at trial against the person arrested or accused of a crime. In considering the act of compulsory blood tests, a New Jersey court based its decision on the "constitutional right to personal privacy and

---

38  *People v. Hevern*, 127 Misc. Rep. 141, 215 N.Y. Supp. 412, 417, 418 (1926).

39  *Schulman v. Whitaker*, 42 So. 227, 117 La. 704 (1906); *Itzkovitch v. Whitaker*, 42 So. 228, 117 La. 708 (1906).

40  *United States v. Kelly*, 51 Fed.2d 263, 266 (1931).

41  *State v. Cerciello*, 86 N.J.L. 309, 90 Atl. 1112, 1115 (1914).

42  Walter Anderson, *A Treatise on the Law of Sheriffs, Corners and Constables*, vol. 1, §186, p. 193. (1941).

43  *McGovern v. Van Riper*, 43 A.2d 514, 524, 137 N.J.Eq. 24 (1945).

72

security." The right of privacy, being derived from natural law, prevents such compulsory acts, as the court said:

> To subject a person against his will to a blood test is an assault and battery, and clearly an invasion of his personal privacy.[44]

This is another area which has been corrupted in order to satisfy the convenience of government at the sacrifice of the inherent or constitutional rights of the individual. The modern trend of the corrupt courts are to limited the protection of self-incrimination to evidence obtained by oral utterances, and not any physical evidence.

There are, however, other good cases which have held that a compulsory physical examination of a person accused of a crime is inadmissible, as it is a denial of the right against self-incrimination.[45]

We thus can conclude that there are at least five reasons why the acts of compulsory fingerprinting, blood tests, etc., are unlawful: 1) They are an evasion of the right of privacy, 2) Compels evidence to be used as self incriminating evidence, 3) Is an assault and/or battery, 4) Violates due process of taking one arrested first to a magistrate, 5) Prohibits bail and infringes on one's liberty.

### Limitations Upon Arrests

The common law drew certain limitations upon how and when an arrest can be made, and thus all arrests are to be grounded on such standards. But the ignorant and corrupt in government have always been bent towards broadening the causes and reasons for making arrests. One limitation often transcended is the sufficient cause required for a felony arrest or breach of peace:

> No one, whether private person or officer, has any right to make an arrest without warrant in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded.[46]

The word "suspicion" is found more frequently in statutes and codes to authorize arrests that the common law prohibited. In a case where a man was arrested for belief he possessed stolen goods, a felony charge, the arrest was held to have been unlawful. However, the police sought to justify the arrest upon the fact that, although there may have been no reasonable cause to believe that the man was guilty of a felony, yet he was in fact guilty of the misdemeanor of carrying a concealed weapon. They claimed that, although the weapon was concealed, the offense was committed in their presence, and it was suspected that he did have a concealed pistol, which was found after the arrest. The Supreme Court of New York held that there arguments were groundless:

> [An officer] cannot arrest a man for one cause, and when that cause is exploded [defeated] justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers, and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. * * * You cannot arrest a man merely because, if all were known, he would be arrestable. You must arrest him for some

---

44 *Bednarik v. Bednarik*, 16 A.2d 80, 90, 18 N.J.Misc. 633 (1940).

45 *State v. Height*, 117 Iowa 650, 91 N.W. 935 (1902); *People v. Corder*, 244 Mich. 274, 221 N.W. 309; *Bednarik v. Bednarik*, supra (citing cases); *Boyd v. United States*, 116 U.S. 616 (1885); *State v. Newcomb*, 220 Mo. 54, 119 S.W. 405 (1909).

46 *People v. Burt*, 51 Mich. 199, 202, 16 N.W. 378 (1883).

specified cause, and you must justify for that cause.[47]

The court cited an early case in which there was an arrest under a warrant, but it was unlawfully executed in the nighttime. It was held that there was a false imprisonment the moment the officers took the plaintiff into custody under the warrant. When the officers demanded admittance to the plaintiff's house, he fired off a revolver. They defended their action upon the ground that, as the revolver was then used in their presence, under circumstances which constituted a crime, they were justified in arresting the plaintiff. But the court— Justice Haight writing—held that they were bound by the arrest under the warrant, and could not offer another cause, sufficient to warrant the plaintiff's apprehension, in justification of their action.[48]

This leads us to another point on arrests, and that is what ever reason or justification an arrest is based upon, it must not occur at a time when an arrest is not allowed. The common law set limitations on when an arrest could be made. Arrests were not allowed at nighttime, and warrants were of no effect at that time. An arrest for felony, treason or breach of peace could, however, be made at any time of the day.

> The general rule of law is that an arrest made on Sunday or other holiday, or at night, except in cases of pressing necessity, * * * is regarded as oppressive and without justification. The reason underlying this principle of law is due to the difficulty in making bail at such times. So an arrest made on Sunday, legal holiday, or at night, upon either civil process or a criminal warrant for a misdemeanor which said warrant does not involve a breach of peace [still in progress], subjects the officer to liability as for false imprisonment.[49]

In *American Law Reports, Annotated* (vol. 9, p. 1352), it states that "arrests should not be made at night or on Sunday," citing *Bryan v. Comstock*, 220 S.W. 475; et. al. As this is a common law concept, it is also due process, and cannot be abrogated by statute.

It has been said that the constitutional protection regarding arrests and searches is to be applied to all alike, the completely innocent and the completely guilty. If an arrest and search can be made without warrant because of known guilt alone of any misdemeanor, then the one barrier designed to protect persons from unlawful invasions of their persons and property would be destroyed.[50] An arrest cannot be justified by the concept that the end justifies the means.

> No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that, as a general rule, the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public officer.[51]

In order that government might deviate from the common law, it was necessary to eliminate common law officer, sheriffs, constables and watchmen, and replace them with the "policeman."

> A police officer, unknown to the common law, is a creature of statute, and as such can only exercise such powers as are given by the legislature, expressly or derivatively.[52]

---

47 *Snead v. Bonnoil*, 63 N.Y. Supp. 553, 555, 97 N.Y. State Rep. (1900).

48 *Murphy v. Kron*, 8 N.Y. St. Rep. 230.

49 Anderson, *Treatise on Sheriffs, Coroners and Constables*, vol. 1, § 131, p. 126 (1941).

50 *People v. Fischetti*, 273 Ill. App. 215, 222 (1933).

51 *Thomas v. State*, 91 Ga. 204, 18 S.E. 305, 306 (1892).

52 *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.E.2d 907, 910 (1942).

74

# 8

# CONCLUSIONS

The wisdom of the ages which brought about the law on arrests was boldly declared in *Magna Carta* — "No one shall be arrested or imprisoned but by the law of the land." This is called the common law and it is made constitutional law by the due process clause.

While this fundamental law appeals to individual liberty, it does not appeal to despots who express their will via corrupt statutes and judicial opinions. It comes down to the question of whether fundamental law is going to be controlling in this matter, or if legislative statutes and the will of despots are to be the prevailing law. Between these conflicting alternatives there is no middle ground, one or the other must be paramount.

In considering the matter of arrests in Anderson's *Treatise on the Law of Sheriff's*, is this noteworthy comment:

*Heed should ever be paid to the voice of common law as it has echoed down through the ages, loudly proclaiming in the interests of the rights of the citizen, that it must not be forgotten that there can be no arrests without due process of law. An arrest without warrant has never been lawful except in those cases where the public security required it, and this has been confined to felonies and to cases of breach of the peace committed in the presence of the officer.*[1]

People today are obviously not being arrested or imprisoned "by the law of the land." Those in the governmental "system" fail to see the logic in the common law principles, and find them to be an annoying restriction in their task of getting the "crooks" or "bad guys." What they fail to understand is that this is exactly the point of the common law, to be restrictive upon those in government, to make them follow set procedures, and to make it difficult to deprive people of their rights. The common law prescribes that in order to safeguard the rights of the innocent, the guilty must on occasion go free. This sentiment was expressed by Sir William Blackstone when he said: *"It is better that ten guilty persons escape than that one innocent suffer."*[2]

In this country constitutions were written to "restrict" the actions of those in government. But it is daily being violated by judges, legislators, and police on the topic of arrests which makes them lawbreakers, as Justice Campbell said in the famed *Sarah Way* case:

Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert.[3]

These officials should be asked, why is it we have less liberty today than did subjects living under a monarchy? It is because the subjects of the King had the benefit of the common law—the ancient principles and maxims that have been acknowledged for the security of life, liberty and property.

---

[1]  Walter Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables*, vol. 1, § 166, p. 160 (1941).

[2]  And as the U.S. Supreme Court said: "It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." *Henry v. United States*, 361 U.S. 98, 104 (1959).

[3]  *Sarah Way's Case*, 41 Mich. 299, 305, 1 N.W. 1021 (1879); *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 759. (1930).

# ADDENDUM

The author had been involved in two different cases which precipitated this material. The events that occurred stand as a testimony to the corrupt and oppressive times we now live in.

**Case # 1.** This case was brought about when a Highway Patrolman stopped me as I was traveling on the freeway, and arrested me for no driver's license, and "evading a tax," ( motor vehicle tax).

The fact that no breach of the peace occurred or felony charged is prima facie evidence that the Highway Patrolman was guilty of false imprisonment. Further, no one can be arrested for a tax (or have property taken) who has not been accessed or given notice of the tax, and had no opportunity to be heard to contest the tax.

When the Highway Patrolman received the Summons and Complaint against him, he went to the State Attorney General's office. An assistant Attorney General submitted a *Motion to Dismiss* with the court. The basis for the motion to dismiss the action was that, "the complaint fails to state a claim against the Defendant upon which relief can be granted." This is a general, catch-all argument raised by incompetent lawyers who don't know the law or know the law is not on their side.

The complaint did state a claim for which relief can be granted — that being false imprisonment and also assault and battery. If I had claimed that the officer stuck his tongue out at me and that was the basis for a tort, then the complaint would fail to state a claim upon which relief could be granted and it could be dismissed. But false imprisonment and assault have for hundreds of years been valid claims by which a remedy could be had.

The assistant Attorney General, in support of his motion, cites several Minnesota cases, but when I had looked them up I found that the decisions were all favorable to my position. His motion was most damaging to the State. For instance, in his memorandum in support of the motion to dismiss, he cites a case that says:

"Dismissal under Rule 12.02 is only appropriate if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." Yet he had just previously stated and agreed to the fact that I was arrested or deprived of my liberty! This is the only fact a Plaintiff need show to have a prima facie case. Thus a charge such as false imprisonment cannot be dismissed by a judgment of dismissal.[1]   Another case he cites says that:

"Allegations of constitutional error in the complaint preclude dismissal under Rule 12.02." Under well-settled principles of law, allegations of constitutional infirmities deserve a judicial forum. * * * the court is required to accept as true the allegations in the complaint when ruling on a Rule 12.02 motion. *Elzie v. Commissioner of Public Safety*, 298 N.W.2d 29, 32 (1980).

In the *Elzie* case, the Plaintiffs had "raised serious due process questions" in their complaint, as I did in mine!  Thus the case is "precluded" from being dismissed!  But all that this government lawyer could say is, "Here Plaintiff's claims are legally deficient on their face and should be dismissed."  It is just a statement with no support!

The assistant Attorney General also stated the law for felony arrest, which is not at all applicable to this case.  He also claimed that "the test for the lawfulness of Plaintiff's arrest is whether is was made with 'probable cause'."  This of course is not the law, and two early Minnesota Supreme Court cases even state that this is not a valid argument.  He made the claim of "collateral estoppel," thinking that these issues were already adjudicated at the criminal trial.  But there was no adjudication, he only claims there was.  He concludes by saying that the "legal theories advanced by the Plaintiff" are "novel and somewhat bizarre."  There was a time in this country that the legal arguments I stated were

---

[1]   It should be noted that this type of pretrial "judgment of dismissal was unknown at the common law." It came into existence only by statutes or codes. 16 Dunnell Minn. Dig. 41, citing, *Boom v. St. Paul Foundry*, 22 N.W. 538.

76

elementary.   This proves how incompetent government lawyers have become.

The judge was even more incompetent (a black woman).   All she did was merely repeat the contents of the Attorney General's memorandum. The erroneous nature of the decision was compounded by bring up issues and arguments that neither party had raised! At the end she said:

> "Even if there was false imprisonment and assault and batter during the booking, fingerprinting, and arrest of Plaintiff, this seems to be a classic case of that type of exercise of discretion giving rise to official immunity."

Do you believe this absurd statement? She is saying that a police offer can unlawfully arrest you, commit assault and battery upon you, and they are immune from suit! In other words, they can do what ever they want and you have no remedy!

This case was appealed to the State Supreme Court. I was informed by the Clerk that I could not directly appeal to the Supreme Court.   When I asked where this was stated, they looked in vain and could find nothing.   The appeal was accepted by the Court (# C0-93-2086).   However, a week later (Oct. 25, 1993) the Court issued an "Order" stating that the case is "dismissed."  The Court thus did what it said only a few years earlier could not be done!   Also, a dismissal of an appeal is unheard of, as it was not a petition or a writ.   This was the first time I have known this to happen.

CASE # 2.   On July 5, 1993, a deputy sheriff and a city policeman knocked on my door and said they had a warrant for my arrest.   When I asked "what for?" they said it was for "evading a tax." I told them that I had already been in court on that matter.   When they called to confirm the warrant they said it was still valid (the warrant was actually for an unpaid fine).   I then asked to see the warrant. They said they didn't have the warrant as it was issued in another county.   I told them that due process of law requires the warrant to be in their possession and to display it so I could see if it was valid. They said that such a measure would be ridiculous as it would seriously restrict police

procedure in such matters. They said that they had 40 years of experience between them (20 years each) in making such arrests and knew what they were doing. They thus arrested me and took me to the county jail.

When I filed the suit against them, the deputy sheriff ran to the county attorney, but the city policeman had to go to a private attorney.   The usual "motion to dismiss" was filed by each attorney, for "failure to state a claim. . ."

When I went to court for the motion hearing I was assigned to a judge whom I knew was fairly good and honest.   But after sitting in the courtroom for about an hour my name was not called.   Unknown to me at the time the county attorney (who had the disposition of a weasel) had my file removed from the stack on the judge's desk and reassigned the case to another judge.   After a while a clerk came into the courtroom and said my case had been moved to another courtroom. I went to that room and sat there for about 12 minutes, then the two attorneys came out of the judge's chambers followed by the judge.   They had been plotting and conspiring against me and convincing the judge to dismiss my case.   This was because they came to realize that the law was not on their side, and even the statutes prohibited the officers from doing what they did. The system would be in jeopardy if this case went to trial.

Thus this corrupt, spineless and bias judge (Harvey A. Holtan) ignored the law and his duty and dismissed the case.   But the attorneys and the policeman were still afraid of what might happen in an appeal since the officers were guilty as sin. They thus agreed to "waive attorney's fees and court costs" if I dropped the suit.   Knowing the past experience with the corrupt appeals court I agreed to do so.   The policeman had to pay over two hundred dollars in attorney fees.

Those who work for a corrupt government do all sorts of unlawful acts to protect the "system" which feeds them.   They must resort to lies, cover ups or distortions of the law.   But there is one thing that they can never do, and that is give a just and lawful reason for their actions.

It is said that life and liberty stand essentially upon the same ground, life being useless without liberty.   Thus the law allows people to protect liberty as they would their life.

Any person who wants to protect and preserve liberty, and to check the arbitrary acts of government, will find this material critically important towards such ends.

When one is unlawfully deprived of his liberty he has suffered a "false imprisonment," whether it be by arrest, imprisonment, or improper procedure.

Throughout history the most common violation committed by governments against the rights of citizens is that of arbitrary and summary arrests.   Such measures have long been the earmarks of a corrupt and despotic government.

To safeguard liberty, the Common Law has for over a thousand years established certain rules and procedures that must be followed before one can be deprived of their liberty by way of arrest or imprisonment.

These rules and procedures are part of "due process of law," and any officer or person that does not follow them can be sued for "false imprisonment."

This material details the limitations and requirements of government officers in making arrests, issuing warrants, imprisoning persons, and in enforcing the different types of laws — misdemeanors, breaches of the peace, and felonies.

The fundamental law on these matters will strike at the base of the corrupt police state system that is so prevalent today.

It is often said that the liberty of a citizen is too sacred to be interfered with without established sanctions by which the law guards it.

Individual liberty is being violated hundreds of times every day because the people have forgotten the law which protects that liberty.

This book explains that law which was once regarded as elementary.

ISBN  1-929205-08-2



1   CRIMINAL COURT OF THE CITY OF NEW YORK

2   COUNTY OF NEW YORK  :    PART AR-3
    --------------------------------------------X
3                                           :
    THE PEOPLE OF THE STATE OF NEW YORK      : Docket No
4                                           : 2017NY062464
                -against-                    :
5                                           :
    LIDYA RADIN                              :
6                                           :
                            Defendant.       :
7                                           :
    --------------------------------------------X
8                           December 11, 2017
                            100 Centre Street
9                           New York, New York   10013

10

11  B E F O R E :
                    HONORABLE, JOSH E. HANSHAFT
12                  Acting Criminal Court Justice

13  A P P E A R A N C E S :

14      FOR THE PEOPLE :
            CYRUS R. VANCE, JR., ESQ.
15          DISTRICT ATTORNEY, NEW YORK COUNTY
              BY: JORGE DEOSSA, ESQ.
16                One Hogan Place
                  New York, New York   10013
17
        FOR THE DEFENDANT :
18          JAMES MCQUEENEY, ESQ.
            The Legal Aid Society
19          49 Thomas Street
            New York, New York   10013
20

21

22

23

24                      SHERON JOHNSON
                    OFFICIAL COURT REPORTER
25

```
 1                   THE COURT OFFICER:  First docket of the night,
 2       2017NY062464, Lidya Radin.  Defendant is charged with
 3       assault in the 2nd Degree, and criminal possession of a
 4       weapon in the 4th Degree.  Defendant also has a federal
 5       detainer.  Counsel, your appearance?
 6                   MR. MCQUEENEY:  The Legal Aid Society, by James
 7       McQueeney, or the Defendant.
 8                   THE COURT OFFICER:  Does Counsel waive the
 9       readings not the rights?
10                   MR. MCQUEENEY:  Yes.
11                   THE COURT OFFICER:  People?
12                   MR. DEOSSA:  Jorge Deossa, for the People,
13       pending admission.
14                   Your Honor, the People are serving felony Grand
15       Jury notice and inquiring as to cross.
16                   MR. MCQUEENEY:  I'm serving cross Grand Jury
17       notice.
18                   MR. DEOSSA:  The People are reserving all
19       statement and I D notices.
20                   The People are serving Wiggins letter,
21       indicating our intention to present this case in front of
22       the Grand Jury, on December 14, 2017, at 10 a.m.
23                   THE DEFENDANT:  I'd like to be --
24                   MR. DEOSSA:  As for bail, Your Honor, the People
25       are requesting $7,500 bail.  The Defendant struck a woman
```

1          in the head with a metal crutch, causing injury to his

2          head.  The civilian witness has a prior harassment

3          conviction.

4                  The Defendant struck her roommate in the head,

5          with a metal crutch, causing injury to his head.

6          Defendant has a prior harassment conviction for showing up

7          at the civilian witness's neighborhood and job and calling

8          civil witness for over seven years, despite repeated

9          warnings to stop.  For these reasons, Your Honor, the

10         People are requesting $7,500.

11                 (Whereupon discussion is held off the record.)

12                 MR. DEOSSA:  The Defendant --

13                 THE COURT:  Tell me about the injuries?

14                 MR. DEOSSA:  The injuries.  The Defendant struck

15         her roommate in the head with a crutch and caused a lump

16         and a cut to the forehead.

17                 THE COURT:  Was there medical treatment?  What

18         type?

19                 MR. DEOSSA:  It was on scene.

20                 THE COURT:  EMS came.  She was treated but she

21         didn't go to the hospital?

22                 MR. DEOSSA:  No, Your Honor.

23                 THE DEFENDANT:  It was a man.

24                 THE COURT:  Thank you.

25                 (Whereupon discussion is held off the record.)

PROCEEDINGS

```
 1                THE COURT:  Listen to your attorney because
 2      everything that you are saying is being recorded.
 3                THE DEFENDANT:  That's good.
 4                THE COURT:  It's good.  I'm not sure.  Maybe
 5      your lawyer -- I haven't looked yet, but it's better you
 6      let your lawyer figure out what's good to say, what's not.
 7                THE DEFENDANT:  He is supposed to let me talk.
 8                THE COURT:  Let him speak.  It's better
 9      practice.  Tell me what you said about the civilian
10      witness.
11                MR. DEOSSA:  The Defendant has prior harassment
12      conviction for threatening the civilian witness; and for
13      showing up at the civilian witness's neighborhood and job,
14      as well.
15                THE COURT:  Is this separate, specifically,
16      civilian witness in this case?
17                MR. DEOSSA:  My understanding, the civil
18      witness --
19                THE COURT:  I think you're saying civil witness
20      means complaining witness.
21                MR. DEOSSA:  Yes.
22                THE COURT:  Complaining witness.  There's prior
23      history of, allegedly, the Defendant going after the
24      complaining witness, harassing?
25                MR. DEOSSA:  That's correct.
```

4

```
 1              THE COURT:  There is no current court cases
 2     between the two of them; correct?
 3              MR. DEOSSA:  It's our understanding that there
 4     isn't, Your Honor.
 5              THE COURT:  In other words, 2010 is stalking
 6     conviction by this Defendant.  Was that the same
 7     complaining witness?  Do you know?
 8              MR. DEOSSA:  One moment, Your Honor.
 9              THE DEFENDANT:  Could I answer?
10              MR. MCQUEENEY:  Stop.
11              (Whereupon discussion is held off the record.)
12              MR. DEOSSA:  Your Honor, I don't seem to have
13     that information on me right now.
14              THE COURT:  Okay.
15              MR. MCQUEENEY:  Judge, I would submit that Ms.
16     Radin should be released on her own recognizance.  She's
17     58 years old.  She has just one prior conviction for
18     stalking; 2010 case.  A case that went to trial.  In this
19     case, the current case, it involves a roommate.  She rents
20     a room in the apartment; roommate rents the room.  The
21     owner of the apartment is here in court, sitting in the
22     second row there.
23              THE COURT:  Okay.
24              MR. MCQUEENEY:  He tells me that he saw the
25     complaining witness, after this incident occurred and saw
```

PROCEEDINGS

```
1         that he had a very, very minimal injury, a red mark on his

2         forehead.  I'm told that -- I don't believe that there was

3         any medical treatment necessary.

4                    Ms. Radin, as I say, is 58 years old.  She has

5         serious medical conditions.  The crutch that was used,

6         allegedly, in this case, is her crutch, which she uses to

7         ambulate around with.

8                    THE DEFENDANT:  It also has a --

9                    (Whereupon discussion is held off the record.)

10                   THE COURT:  Tell your attorney, ma'am.  I'm

11        happy to hear, but you have to tell your attorney.

12                   (Whereupon discussion is held off the record.)

13                   MR. MCQUEENEY:  She wants me to point out that

14        there was a rubber handle on the crutch, so it's unlikely

15        that the crutch itself could have caused much injury.

16                   THE DEFENDANT:  I have spinal injuries.

17                   THE COURT:  Tell him.

18                   (Whereupon discussion is held off the record.)

19                   THE DEFENDANT:  Can I just speak?  It would be

20        easier.  I have spinal injuries.  I do not want to get

21        into fights with people because I would wind up paralyzed

22        or dead.  I have a potential life-ending medical

23        condition.

24                   I'd be happy to come to the Grand Jury.  In

25        fact, I'm glad you invited me.  I would like to be
```

1          released on my own recognizance just because there are

2          doctors who -- I can't afford medical care, but there are

3          doctors that I can go to.  If I can wait, they can work me

4          in if a patient doesn't show up.  I would be delighted to

5          come to the Grand Jury.

6                    THE COURT:  Okay.  Can you approach quickly?

7                    MR. MCQUEENEY:  Sure.

8                    THE COURT:  Thank you.

9                    (Whereupon discussion is held off the record.)

10                    THE COURT:  We had a brief bench conference.

11          There is also a federal detainer, which I wanted to show

12          the parties, that seems to be attached to a disorderly

13          conduct summons federally.  There is a detainer holding

14          Ms. Radin.

15                    Either which way, People, you're asking for an

16          order of protection in this case?

17                    MR. DEOSSA:  Yes, Your Honor.  The People are

18          requesting a temporary order of protection.

19                    THE COURT:  And I just need to know the name of

20          the complaining witness.

21                    MR. DEOSSA:  First name is Makau, M-a-k-a-u.

22          Last name is Zomo, Z-o-m-o.

23                    THE COURT:  Ma'am, I'm going to be serving an

24          order of protection in the name of Makau Zomo.  You can

25          have no contact with that person whatsoever.  Stay away

7

1       from the home, place of business, school; anywhere you can

2       have contact with this person.  Make sure you do not go

3       there.  No social media.  No e-mail.  No phone calls.  And

4       certainly, do not ask a third person to speak on your

5       behalf or you will be rearrested and charged with another

6       crime.

7                   (Whereupon discussion is held off the record.)

8                   THE COURT:  Do you want the 180.80 date or do

9       you want a later date?

10                  MR. MCQUEENEY:  I want the 180.80 date, just in

11      case.

12                  And, Your Honor, could we have a notation on the

13      order of protection that she can go to the apartment to

14      get her things when coupled by a police officer?

15                  THE COURT:  I'm going to go wait for that to be

16      handed up.

17                  (Whereupon discussion is held off the record.)

18                  THE COURT:  Mr. McQueeney, just because I don't

19      know -- since you don't know when a good date is, do you

20      want me to give one week - two weeks?  What date do you

21      want me to give her for the order of protection, since you

22      don't know when she will be getting out today?

23                  MR. MCQUEENEY:  Any day this week.

24                  THE COURT:  We will pick a date tomorrow between

25      nine and ten in the morning.

```
 1                    MR. MCQUEENEY:  I would like the option to be
 2          sooner, so she can go to clear up the matter in New Jersey
 3          tomorrow.
 4                    THE COURT:  If she's not out, doesn't make it to
 5          that date, she's going to miss her window.
 6                    MR. MCQUEENEY:  She is going to have to go back
 7          and get a new order.
 8                    THE COURT:  Right; so what date would you like?
 9                    MR. MCQUEENEY:  Why don't we try Thursday of
10          this week?
11                    (Whereupon discussion is held off the record.)
12                    THE COURT:  What time of the day; in the morning
13          or in the evening?  In the afternoon or the morning?
14                    THE DEFENDANT:  In the afternoon?
15                    (Whereupon discussion is held off the record.)
16                    THE COURT:  That's at 203 West 107th; right?
17                    MR. MCQUEENEY:  That's right.
18                    (Whereupon discussion is held off the record.)
19                    THE COURT:  Ma'am, there is an access order here
20          for December 14th, between 2 p.m. and 5 p.m., with
21          accompaniment of police officers, to 203 West 107th
22          Street.  If you don't go between two and five, on December
23          14th, that window is closed.  You will need to come back
24          to court before you go to the location; but make sure you
25          go with police officers.  Besides that --
```

```
 1              THE DEFENDANT:  Are you going to tell him --

 2              (Whereupon discussion is held off the record.)

 3              THE COURT:  For Grand Jury action, Part F,

 4    December 15th.  Five hundred over five hundred.  I've

 5    authorized credit card, as you asked up at the bench for

 6    that.

 7              MR. MCQUEENEY:  Yes; and she will be making

 8    bail.

 9    *      *      *      *      *      *      *      *      *

10    Certified to be a true and correct transcript.

11                              March 19, 2018

12

13                              _____

14                              SHERON JOHNSON
                                OFFICIAL COURT REPORTER

15

16

17

18

19

20

21

22

23

24

25
```

1   CRIMINAL COURT OF THE CITY OF NEW YORK

2   COUNTY OF NEW YORK      :      PART F

3   - - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK          DOCKET NUMBER
                                                  2017NY062464
5                    - against -

6   LIDYA DURKIN,

7                              Defendant.

8   - - - - - - - - - - - - - - - - - - - X

9                              100 Centre Street
                               New York, New York
10                             December 15, 2017

11  B E F O R E:

12                   THE HONORABLE JUDY KIM,

13                              Criminal Court Judge

14  A P P E A R A N C E S:

15        FOR THE PEOPLE:

16                   OFFICE OF THE DISTRICT ATTORNEY
                     One Hogan Place
17                   New York, New York
                     BY: ASHLEY DURKIN,
18                        Assistant District Attorney

19        FOR THE DEFENDANT:

20                   THE LEGAL AID SOCIETY
                     BY: JAMES MCQUEENEY, ESQ.
21

22

23                              CAROLE D. GRAHAM
                             OFFICIAL COURT REPORTER
24

25

PROCEEDINGS                              2

1          COURT OFFICER:  Calendar number 38, Lidya Radin.

2          DEFENSE COUNSEL:  The Legal Aid Society by James

3     McQueeney for the defendant.

4          THE COURT:  Good morning.

5          MR. MCQUEENEY:  Good morning.

6          THE COURT:  People.

7          MS. DURKIN:  There is no Grand Jury action.

8          THE COURT:  Is there cross in effect?

9          MR. MCQUEENEY:  Yes, there is.

10         THE COURT:  Part F for Grand Jury action.

11    February 1st?

12         MR. MCQUEENEY:  That's good.

13         THE COURT:  Miss Radin, there is still an order

14    of protection in place against you through June 11th, okay?

15         THE DEFENDANT:  If I need to get my belongings --

16         THE COURT:  Speak to your lawyer, please.

17         (The defendant and defense counsel confer)

18         THE DEFENDANT:  Okay, thank you.

19    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

20    CERTIFIED TO BE A TRUE

21    AND ACCURATE TRANSCRIPT

22    OF THE ABOVE PROCEEDINGS

23                              _____
                                      CD Graham
24
                                CAROLE D. GRAHAM
25                              OFFICIAL COURT REPORTER

```
 1    CRIMINAL COURT OF THE CITY OF NEW YORK
      COUNTY OF NEW YORK:   PART F
 2    ---------------------------------------X

 3    THE PEOPLE OF THE STATE OF NEW YORK,      DOCKET NO.

 4                   -against-                  2017NY062464

 5    LIDYA RADIN,

 6                                    Defendant.

 7    ---------------------------------------X

 8                         100 Centre Street
                           New York, New York
 9
                           February 1, 2018
10
      B E F O R E:
11
                THE HONORABLE SUZANNE J. ADAMS, JUDGE.
12
      A P P E A R A N C E S:
13
      FOR THE PEOPLE:
14
                      CYRUS R. VANCE JR.
15                    District Attorney, New York County
                      One Hogan Place
16                    New York, New York 10013

17         BY:   KRISTEN GRAUER, ESQ.
                 MONICA NARANGUE, ESQ.
18
      FOR THE DEFENDANT:
19
                      LEGAL AID SOCIETY
20                    49 Thomas Street
                      New York, New York 10013
21
           BY:   JAMES MCQUEENEY, ESQ.
22
23                                    Loretta Kravchenko
                                      Official Court Reporter
24

25
```

P R O C E E D I N G S

| | |
|---|---|
| 1 | THE COURT OFFICER: 50. Lidya Radin, order of |
| 2 | protection is in effect until June 11th. |
| 3 | THE COURT: People? |
| 4 | MS. GRAUER: Yes, there is no grand jury action. |
| 5 | The People would ask whether cross is in effect? |
| 6 | MR. McQUEENEY: Yes, cross is still in effect. |
| 7 | THE COURT: Any offer or recommendation? |
| 8 | MS. GRAUER: No. However, the People do have a |
| 9 | record to make. On January 18th, 2018, the defendant |
| 10 | called the assigned ADA multiple times. The assigned ADA |
| 11 | answered the phone one of the times without knowing who was |
| 12 | calling. And upon realizing that it was the defendant who |
| 13 | was calling, the assigned ADA explained that she could not |
| 14 | speak to the defendant and ended the conversation. |
| 15 | The defendant called back and left one voicemail, |
| 16 | in both the phone call and the voicemail, the defendant |
| 17 | spoke about the facts of the case despite the ADA informing |
| 18 | the defendant that the ADA could not speak with her about |
| 19 | the case. |
| 20 | The assigned informed the defense counsel, Mr. |
| 21 | McQueeney, of this phone call and voicemail immediately |
| 22 | after they occurred via both phone and e-mail on January |
| 23 | 18th. And the ADA will provide a recording of the |
| 24 | voicemail to Mr. McQueeney. |
| 25 | THE COURT: Mr. McQueeney, I'll hear you. |

P R O C E E D I N G S

1          MR. McQUEENEY:  That's accurate as far my hearing

2     from the ADA.

3          THE DEFENDANT:  Excuse me, do I get a chance to --

4          THE COURT:  Mrs. Radin, I will remind there's an

5     order of protection in effect with regard to Macken Nozmo.

6     Stay away from that person.  Do not have any contact with

7     that person in any way.

8          MR. McQUEENEY:  One of the things I wanted to

9     raise today was to ask your Honor to consider changing the

10    order of protection to a limited order.  Ms. Radin lives in

11    a sort of a rooming house situation, where others are in

12    that apartment, several people, including the complainant

13    are --

14          THE COURT:  People, do you consent to that?

15          MS. GRAUER:  I wouldn't be able to without

16    speaking to the ADA.  We could second call it, and I could

17    shoot her an e-mail.

18          THE COURT:  Okay.  Let's second call it.

19              *    *    *    *    *    *

20          THE COURT OFFICER:  We're going to recall 50,

21    Lidya Radin.  Order of protection is in effect until June

22    11th.

23          THE COURT:  Good morning, Mr. McQueeney.

24          MR. McQUEENEY:  Good morning.

25          THE COURT OFFICER:  People, your appearance for

P R O C E E D I N G S

1        the record, please.

2                MS. NARANGUE:  Good morning, your Honor, Monica

3        Narangue, for the People.

4                THE COURT:  There's been no grand jury action.

5        Cross is in effect?

6                MS. NARANGUE:  Yes, your Honor.  I believe that my

7        colleague on the first call put on the record about phone

8        calls I received from defendant; I just wanted to make a

9        record for the Court to be aware.  I understand, your

10       Honor, that defense counsel is asking to limit the order of

11       protection in this case.  The People strongly oppose

12       limiting the order of protection.  This is an assault 2

13       case; the reason that there has not been grand jury action

14       at this point is that the People -- and I've discussed this

15       briefly with Mr. McQueeney, the People are considering the

16       possibility of an offer on this case.  But, after having

17       spoken to the victim, I have some more investigating to do

18       before determining what, if any, offer is appropriate.  So

19       the fact that there has not been grand jury action action,

20       your Honor, does not actually speak to the strength of the

21       case, but just the fact that I wanted to do my due

22       diligence and learn what I could about this defendant and

23       victim before determining whether we should indict it or

24       whether we should make an offer.

25                But, this is an assault 2, the defendant and the

P R O C E E D I N G S

1    victim are roommates, so if there's not a full order of

2    protection it's not just that she would be in the

3    apartment, it's that they would be living together.  There

4    seems to be a history of unreported assaults that have

5    taken place in this apartment, that's, in part, what I am

6    investigating.  Here, the victim was injured, he had a lump

7    and a cut to his forehead; the People do have evidence of

8    that.  So in light of all of that, the People do not

9    believe a limited order of protection is appropriate in

10    this case.

11                THE COURT:  Where has she been living, Mr.

12    McQueeney?

13                MR. MCQUEENEY:  She's been living in Staten

14    Island.  She has a long-standing disability, she has back

15    issues and receives therapy every day.  And she has to

16    travel all of the way to the upper west side from Staten

17    Island to do that.  She's on crutches here today in the

18    courtroom.  She has no relationship with the complainant;

19    they are not friends, they are not enemies.  There's no

20    reason for her to even talk to him.  She doesn't intend to

21    talk to him.  But it's a hardship for her to have to travel

22    from Staten Island, spend hours on the subway every day in

23    order to get to the therapy sessions, it's disrupting her

24    life.  And there's no chance whatsoever that there will be

25    any kind of assaultive conduct or disputes between her and

P R O C E E D I N G S

1     the complainant, so I'm asking that you make this a limited

2     order of protection.

3             THE COURT:  Okay.  I'm not going to limit the

4     order at this time.  You are to have no contact with Macken

5     Nozmo, you're not to contact him in anyway, you're not to

6     have any contact with him whatsoever.  Do you understand?

7             THE DEFENDANT:  Could I speak, please?  Could I

8     address your ruling, please?

9             THE COURT:  You'll talk to your attorney.

10            THE DEFENDANT:  May I say something?

11            THE COURT OFFICER:  The Judge just told you to

12    speak to the attorney.

13            MR. MCQUEENEY:  She would like you to know that

14    she has other medical conditions, which are potentially

15    life-threatening.  So she has lots of medical issues, and

16    this is -- this whole situation, having been misplaced from

17    the apartment is exacerbating the situation.

18            THE DEFENDANT:  It's actually preventing me from

19    getting medical care.  I have no interest in speaking to

20    Mr. Nozmo, I don't speak to Mr. Nozmo.

21            THE COURT:  Mr. McQueeney, we can give it a

22    shorter date.  How is March 6th, Mr. McQueeney?

23            MR. CHABROWE:  That's good, March 6th is good.

24            THE COURT:  March 6th, Part F for grand jury

25    action.  Bail is continued.

1                               *     *     *     *     *

2                         REPORTER'S CERTIFICATION

3           Certified to be a true and accurate transcript of the

4           original stenographic notes.

5           _____

6                         LORETTA KRAVCHENKO

7                         Official Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   CRIMINAL COURT OF THE CITY OF NEW YORK

2   COUNTY OF NEW YORK    :    PART F

3   - - - - - - - - - - - - - - - - - - - X

4   THE PEOPLE OF THE STATE OF NEW YORK    DOCKET NUMBER
                                 2017NY062464

5             - against -

6   LIDYA RADIN,

7                     Defendant.

8   - - - - - - - - - - - - - - - - - - - X

9                  100 Centre Street
                  New York, New York
10                March 6, 2018

11  B E F O R E:

12          THE HONORABLE SUZANNE ADAMS,

13                  Criminal Court Judge

14  A P P E A R A N C E S:

15      FOR THE PEOPLE:

16           OFFICE OF THE DISTRICT ATTORNEY
           One Hogan Place
17          New York, New York
           BY: ANDREW TRUEHEART,
18             Assistant District Attorney

19      FOR THE DEFENDANT:

20           THE LEGAL AID SOCIETY
           BY: ROBERT HAROLD, ESQ.
21

22

23                    CAROLE D. GRAHAM
                OFFICIAL COURT REPORTER
24

25

PROCEEDINGS                    2

1              COURT OFFICER:  Calendar number 43 from the

2       audience, Lidya Radin.

3              DEFENSE COUNSEL:  For Miss Radin, the Legal Aid

4       Society by Rob Harold standing up for Jim McQueeney.

5              THE COURT:  Good morning, counsel Harold. Good

6       afternoon.

7              COURT OFFICER:  People.

8              MR. TRUEHEART:  The People are moving to reduce

9       for all purposes.  We are reducing count one, assault in

10      the second degree, to assault in the third degree.

11             THE COURT:  One moment.  Let me just get to the

12      complaint.  Okay, you are reducing count one.

13             MR. TRUEHEART:  Yes, to assault in the third

14      degree, Penal Law section 120.00 sub one.

15             THE COURT:  How about count two?

16             MR. TRUEHEART:  Count two will remain the same.

17      And the reasons for the reduction are in the interest of

18      justice and we are not seeking more than one year in jail.

19             THE COURT:  Do you have any notices you would

20      like to serve?

21             MR. TRUEHEART:  Yes, Your Honor. The People are

22      filing and serving a supporting deposition.  The People

23      have no further notices at this time.

24             THE DEFENDANT:  I would like to give this to the

25      judge.

1            THE COURT:  You cannot address the Court.

2            COURT OFFICER:  Speak through your attorney.

3            (Defense counsel and the defendant confer)

4            THE DEFENDANT:  That doesn't change the fact --

5            COURT OFFICER:  Speak to your attorney.

6            THE COURT:  We will second call this.

7            MR. HAROLD:  Please, Your Honor.

8            COURT OFFICER:  Step out.  Have a seat.

9            * * * * * * * * * * * * * * * * * * *

10           COURT OFFICER:  This is a recall of calendar

11   number 43, Lidya Radin.

12           THE DEFENDANT:  He is not my attorney. Can you

13   please give this to the district attorney and one to the

14   judge. There is a fundamental jurisdictional --

15           COURT OFFICER:  Please speak with your attorney.

16           MR. HAROLD:  Miss Radin has made it clear that

17   she objects to the jurisdiction of the complaint here and

18   we intend to challenge that as part of the omnibus motion

19   that we will asking be for a schedule.  We want it clear

20   that she is in no way consenting to the prosecution of this

21   case.  She is not in any way waiving her right to challenge

22   the jurisdiction --

23           THE COURT:  So noted.

24           MR. HAROLD:  She does have a writing here, I have

25   asked her not to submit it to the Court.

PROCEEDINGS                    4

1              THE DEFENDANT:  It's already been submitted in

2      Federal Court.

3              MR. HAROLD:  We are going to be incorporating

4      some of the jurisdictional concerns in our --

5              THE DEFENDANT:  The judge needs to --

6              THE COURT:  Let me explain something. I am

7      talking.  If you are going to act inappropriately, we will

8      third call this case.  The case has been reduced to a

9      misdemeanor, which means it is leaving this part.  This can

10     all be dealt with in the misdemeanor part --

11             THE DEFENDANT:  I still would like to provide

12     this to you and I am filing --

13             THE COURT:  --whatever your lawyer tell me --

14             THE DEFENDANT:  He already said I can file it and

15     hand it to you.  I have a copy for Mr. Trueheart.

16             THE COURT:  You can give to the court officer.

17             THE DEFENDANT:  No, no, I would like them to take

18     it --

19             THE COURT:  You can give it to the officer.  If

20     you cannot behave appropriately, we will third call this

21     case.  Stop talking.

22             Are there any notices you would like to file

23     besides the supporting deposition, counsel Trueheart?

24             MR. TRUEHEART:  Not at this time, Your Honor. I

25     do have another order of protection if the one currently in

PROCEEDINGS                       5

1    effect --

2              THE DEFENDANT:  Pardon me, Your Honor. I am being

3    illegally evicted.  Your complaining witness --

4              THE COURT:  You cannot talk.  We are going to

5    third call.

6              THE DEFENDANT:  I would like to make a statement.

7              THE COURT:  Stop talking.  Counsel Trueheart is

8    speaking.  Stop talking.  We behave appropriately here. If

9    you cannot behave appropriately, we will third call the

10   case.  As I have repeatedly told you, the case is being

11   reduced to a misdemeanor which means it is leaving this

12   part.  It is going to a misdemeanor part, understood?

13             THE DEFENDANT:  I still would like to address the

14   Court.

15             THE COURT:  Counsel Trueheart --

16             THE DEFENDANT:  If you permit me, it should take

17   me about two seconds.

18             THE COURT:  Counsel Trueheart is speaking.

19             Counsel Trueheart?

20             MR. TRUEHEART:  Yes, Your Honor.  I do have

21   another order of protection for the Court to issue if the

22   current one --

23             THE DEFENDANT:  Mister --

24             THE COURT:  Stop talking.  The current order of

25   protection is in effect until June 11th.

PROCEEDINGS                                    6

1              MR. TRUEHEART:  Thank you, Your Honor.

2              THE DEFENDANT:  Excuse me, the complaining

3       witness is --

4              THE COURT:  Ma'am, we are going to third call

5       your case if you don't stop talking. This is going to be

6       addressed in the misdemeanor part.

7              Counsel Harold --

8              COURT OFFICER:  Ma'am --

9              THE COURT:  Counsel Harold, I am going to deem

10      this an information.  Would you like a motion schedule?

11             MR. HAROLD:  Motion schedule, please.

12             THE DEFENDANT:  Excuse me, your complaining

13      witness is here unlawfully.  He is here in violation of a

14      visitor visa.  So I have been evicted from my home based on

15      false criminal charges.

16             THE COURT:  This is going to --

17             THE DEFENDANT:  You don't have jurisdiction

18      because your --

19             COURT OFFICER:  Okay, ma'am, enough.

20             THE COURT:  You need to stop talking or the

21      officers will take charge of you, do you understand?

22             Defense counsel, your motion will be March 26th

23      off calendar.  We'll put this on in Part B for response and

24      decision on -- how is April 16th, counselor?

25             MR. HAROLD:  That should be fine.

PROCEEDINGS                                    7

1                    THE DEFENDANT:  I can't do that date.

2                    THE COURT:  How is April 17th?

3                    THE DEFENDANT:  I can't do that either.

4                    THE COURT:   What week can you do?

5                    THE DEFENDANT:  Pardon me? I will do it about a

6        week later because --

7                    THE COURT:  How is April 24th?

8                    THE DEFENDANT:  Fine.

9                    THE COURT:  We will do April 24th.  Bail is

10       continued.  Have a good day.

11                   THE DEFENDANT:  I just informed you --

12                   COURT OFFICER:  April 24th.  Step out.

13    *   *   *   *   *   *   *   *   *   *   *   *   *   *   *   *

14   CERTIFIED TO BE A TRUE

15   AND ACCURATE TRANSCRIPT

16   OF THE ABOVE PROCEEDINGS

17

18                                   _____ C.D Graham

19                                   CAROLE D. GRAHAM
                                     OFFICIAL COURT REPORTER

20

21

22

23

24

25